ACCEPTED
04-14-00734-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/6/2015 6:02:12 PM
KEITH HOTTLE
CLERK

NO. 04-14-00734-CV

_____

IN THE

FOURTH COURT OF APPEALS

SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
4/6/2015 6:02:12 PM
KEITH E. HOTTLE
Clerk

_____

SANDRA SAKS, LEE NICK MCFADIN, III,
and MARGARET LANDEN SAKS

Appellants

vs.

BROADWAY COFFEEHOUSE, LLC and MARCUS ROGERS, AS
TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L

Appellees

_____

**BRIEF OF APPELLEES BROADWAY COFFEEHOUSE, LLC and MARCUS
ROGERS, AS TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L**

_____

**TO THE HONORABLE COURT OF APPEALS:**

NOW COME Appellees, BROADWAY COFFEEHOUSE, LLC and

MARCUS ROGERS, AS TRUSTEE FOR THE SAKS CHILDREN TRUST

A/K/A ATFL&L, and present their Brief of Appellees, and would respectfully

show the Court as follows:

# IDENTITY OF PARTIES AND COUNSEL

**Party:**

Landen Saks
Sandra Saks
Lee Nick McFadin, III

Appellants

Broadway Coffeehouse, LLC

Appellee

Marcus P. Rogers

Interim Trustee

**Counsel:**

Philip M. Ross
State Bar No. 17304200
ross_law@hotmail.com
1006 Holbrook Road
San Antonio, Texas  78218
Telephone:  (210) 326-2100

Paul T. Curl
State Bar No. 05255200
ptcurl@csg-law.com
Brittany M. Weil
State Bar No. 24051929
bmweil@csg-law.com
Herbert S. Hill
State Bar No. 24087722
hshill@csg-law.com
Curl Stahl Geis, P.C.
700  N.  St.  Mary's  Street,
Suite 1800
San Antonio, Texas  78205
Telephone:  (210) 226-2182
Telecopier:  (210) 226-1691

Royal Lea, III
State Bar No. 12069680
royal@binghamandlea.com
Bingham & Lea, P.C.
319 Maverick Street
San Antonio, Texas  78212
Telephone:  (210) 224-1819
Telecopier:  (210) 224-0141

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS...........................................................................iii

INDEX OF AUTHORITIES................................................................ vi

STATEMENT ON REFERENCES TO THE PARTIES AND THE
RECORD ...........................................................................................1

STATEMENT OF THE CASE ..............................................................2

STATEMENT REGARDING ORAL ARGUMENT.........................................5

ISSUES PRESENTED........................................................................6

STATEMENT OF FACTS ....................................................................7

    Purchase of the Property and Formation of the Partnership ..............7

    The Probate Suit Regarding the Trust .................................................9

    The Mediated Settlement Agreement .................................................9

    The Arbitration Award ........................................................................11

    Enforcement of the Arbitration Award .................................................12

    Appeal of the Judgment on the Arbitration Award ...........................13

SUMMARY OF THE ARGUMENT ............................................................14

ARGUMENT AND AUTHORITIES..........................................................16

    ISSUE NO. 1(a):  Do the Saks Parties' Issues Nos. 1(A)
    and (B) present anything for this Court's review?.............................17

ISSUE NO. 1(b):  Did the Saks Parties waive their arguments that (i) the summary judgment granting partition was in error because the Partnership Agreement prohibits withdrawal of capital; and (ii) the summary judgment winding up and terminating the Partnership was in error because there is no agreement to terminate the Partnership? ................................... 19

ISSUE NO. 1(c):   Was it necessary for the Trial Court to make findings of fact to support its partial summary judgment ordering partition of the Property by sale? ........................ 20

ISSUE NO.1(d):  Are there genuine issues of material fact as to: .... 22

    i)  whether a fair and equitable division of the Property cannot be made; ................................................................. 23

    ii)  whether the purpose of the Partnership is frustrated; ......... 26

    iii)  whether the Trust exists and has an interest in the Property; and ...................................................................... 31

    iv)  whether McFadin and Landen own any interest in the Property or the Partnership? ....................................... 34

ISSUE NO. 2(a):  Did the Trial Court abuse its discretion by awarding attorney's fees to Coffeehouse and the Trust? ................. 37

ISSUE NO. 2(b):  Did the Saks Parties waive any issue regarding failure to segregate attorney's fees? ............................... 50

ISSUE NO. 2(c):  Did the Trial Court err in awarding the full amount of attorney's fees requested by Coffeehouse and the Trust? ............................................................................................. 51

ISSUE NO. 3(a):  Is the Saks Parties' issue No. 3 regarding the amount of the supersedeas bond moot because it has been waived, and does this Court therefore lack jurisdiction? .......... 55

ISSUE NO. 3(b):  Did the Trial Court abuse its discretion in setting the amount of the supersedes bond? ................................... 59

PRAYER ......................................................................................... 61

CERTIFICATE OF COMPLIANCE ......................................................... 63

CERTIFICATE OF SERVICE ................................................................. 63

APPENDIX

# INDEX OF AUTHORITIES

**Cases**                                                                                                              Page

Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.,
    212 S.W.3d 665 (Tex. App.—Austin 2006, no pet.) ...................47-48

In re A.L.B.,
    56 S.W.3d 651 (Tex. App.—Waco 2001, no pet.) ...........................59

Amedisys, Inc. v. Kingwood Home Health Care, LLC,
    437 S.W.3d 507 (Tex. 2014)......................................................23

Approach Res. I, L.P. v. Clayton,
    360 S.W.3d 632 (Tex. App.—El Paso 2012, no pet.) ..................51-52

Barfield v. Holland,
    844 S.W.2d 759 (Tex. App.—Tyler 1992, writ denied) ....................46

In re Bass,
    113 S.W.3d 735, 738 (Tex. 2003, orig. proc.) ................................57

Beago v. Ceres,
    619 S.W.2d 293 (Tex. App.—Houston [1st Dist.] 1981, no writ).......30

Blankinship v. Brown,
    399 S.W.3d 303 (Tex. App.—Dallas 2013, pet. denied)...................17

Champion v. Robinson,
    392 S.W.3d 118 (Tex. App.—Texarkana 2012, pet denied).............24

Chappell v. Allen,
    414 S.W.3d 316 (Tex. App.—El Paso 2013, no pet.) ................. 18, 26

Cytogenix, Inc. v. Waldroff,
    213 S.W.3d 479 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ......48

Davis v. Merriman,
    No. 04-13-00518-CV, 2015 WL 1004357 (Tex. App.—San
    Antonio March 4, 2015, no pet. hist.) ......................................passim

In re Estate of Hernandez,
　　No. 04-14-00046-CV, 2014 WL 1713566 (Tex. App.—
　　San Antonio April 30, 2014, no pet.) ............................................59-60

In re Estate of Taylor,
　　305 S.W.3d 829 (Tex. App.—Texarkana 2010, no pet.)................... 17

Feldman v. KPMG LLP,
　　438 S.W.3d 678 (Tex. App.—Houston [1st Dist.] 2014,
　　no pet.) ....................................................................................41-42

Florey v. Estate of McConnell,
　　212 S.W.3d 439 (Tex. App.—Austin 2006, pet. denied)........ 39, 45-46

46933, Inc. v. Z & B Enterprises, Inc.,
　　899 S.W.2d 800 (Tex. App.—Amarillo 1995, writ denied) ................ 40

Friedman v. Atl. Funding Corp.,
　　936 S.W.2d 38 (Tex. App.—San Antonio 1996, no writ) .................. 20

Hoard Gainer Indus. Co., Ltd. v. Gollin,
　　No. 01-03-01320-CV, 2005 WL 1646116 (Tex. App.—
　　Houston [1st Dist.] July 14, 2005, no pet.) ...................................... 57

H.S.M. Acquisitions, Inc. v. West,
　　917 S.W.2d 872 (Tex. App.—Corpus Christi 1996, writ denied). 18, 26

Hollywood Park Humane Soc. v. Town of Hollywood Park,
　　261 S.W.3d 135 (Tex. App.—San Antonio 2008, no pet.) .................. 1

I-10 Colony, Inc. v. Chao Kuan Lee,
　　393 S.W.3d 467 (Tex. App.—Houston [14th Dist.] 2012,
　　pet denied)..............................................................................45-46

IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.,
　　938 S.W.2d 440 (Tex. 1997) .......................................................... 21

In Interest of an Unborn Child,
　　153 S.W.3d 559 (Tex. App.—Amarillo 1993, no writ)...................... 41

Jones Gonzalez, P.C. v. Trinh,
  340 S.W.3d 830 (Tex. App.—San Antonio 2011, no pet.) ................57

Morton v. Timarron Owners Ass'n., Inc.,
  No. 02-13-00409-CV, 2014 WL 2619189 (Tex. App.—
  Fort Worth June 12, 2014, no pet.) .................................................42

O'Farrill Avila v. Gonzalez,
  974 S.W.2d 237 (Tex. App.—San Antonio 1998, pet. denied) .........51

Penhollow Custom Homes, LLC v. Kim,
  320 S.W.3d 366 (Tex. App.—El Paso 2010, no pet.) .......................52

Provident Life and Acc. Ins. Co. v. Knott,
  128 S.W.3d 211, 215 (Tex. 2003) .........................................22-23, 31

Purvis Oil Corp. v. Hillin,
  890 S.W.2d 931 (Tex. App.—El Paso 1994, no writ) .......................42

Reagan v. NPOT Partners I, L.P.,
  No. 06-08-00071-CV, 2009 WL 763565 (Tex. App.—
  Texarkana March 25, 2009, pet rev. dism'd)...................................58

Rizkallah v. Conner,
  952 S.W.2d 580 (Tex. App.—Houston [1st Dist.] 1997, no writ).......34

Roberts v. Wilson,
  394 S.W.3d 45 (Tex. App.—El Paso 2012, no pet.) ....... 39, 42, 44, 49

Savell v. Savell,
  837 S.W.2d 836 (Tex. App.—Houston [14th Dist.] 1992, writ
  denied) ..............................................................................................30

Smith v. Reid,
  No. 04-13-00550-CV, 2014 WL 7339586 (Tex. App.—San
  Antonio Dec. 23, 2014, no pet.) ......................................................42

Southern Concrete Co. v. Metrotec Fin. Inc.,
  775 S.W.2d 446 (Tex. App.—Dallas 1989, no writ)..........................51

Strange v. Cont'l Cas. Co.,
   126 S.W.3d 676 (Tex. App.—Dallas 2004, pet. denied)................... 17

Tony Gullo Motors I, L.P. v. Chapa,
   212 S.W.3d 299, 313 (Tex. 2006) ............................................. 51, 55

Valadez v. Avitia,
   238 S.W.3d 843 (Tex. App.—El Paso 2007, no pet.) ................. 25, 28

Wheeler v. Phillips,
   03-10-00221-CV, 2011 WL 4011455 (Tex. App.—Austin
   Sept. 7, 2011, pet. denied)..................................................... 39, 49-50

Zurita v. SVH-1 Partners, Ltd.,
   No. 03-10-00650-CV, 2011 WL 6118573 (Tex. App.—
   Austin Dec. 8, 2011, pet. denied).............................................. 41-42

**Statutes**

TEX. BUS. ORG. CODE § 11.051.............................................................29-30

TEX. BUS. ORG. CODE § 11.057.............................................................29-30

TEX. BUS. ORG. CODE § 11.314.............................................................27-28

TEX. CIV. PRAC. & REM. CODE § 37.004 ................................................... 44

TEX. CIV. PRAC. & REM. CODE § 37.009 ....................................... 38-39, 41

TEX. CIV. PRAC. & REM. CODE § 51.012 ................................................... 58

TEX. GOV. CODE § 22.220 ........................................................................ 58

TEX. R. APP. P. 24.2 ................................................................................ 60

TEX. R. APP. P. 24.4 ....................................................................55-56, 58

TEX. R. APP. P. 25.1 ................................................................................ 58

TEX. R. APP. P. 26.1 ................................................................................ 59

TEX. R. CIV. P. 166a .......................................................... 1, 20, 23

TEX. R. CIV. P. 770 ...............................................................23-24

# STATEMENT ON REFERENCES TO THE PARTIES AND THE RECORD

**The Parties**.  Appellant Sandra Saks is referred to as "Sandra." Appellant Margaret Landen Saks is referred to as "Landen."  Appellant Lee Nick McFadin III is referred to as "McFadin."  Collectively, Sandra, Landen, and McFadin are referred to as the "Saks Parties."  Appellee Broadway Coffeehouse, LLC is referred to as "Coffeehouse."  Appellee Marcus Rogers, as Trustee for the Saks Children Trust a/k/a ATFL&L is referred to as the "Trust."

**The Clerk's Record**.  The two-volume Clerk's Record is cited as CR1 [page] and CR2 [page].  Key items from the Clerk's Record are included in the Appendix attached to this brief and referenced as Appendix, tab [number].

**The Reporter's Record**.  There are three Reporter's Records filed in this appeal.  The Reporter's Record from the August 19, 2014 hearing on Coffeehouse's Motion for Partial Summary Judgment was filed on October 22, 2014, but is not referenced herein, as it is not proper summary judgment evidence.  See TEX. R. CIV. P. 166a(c); Hollywood Park Humane Soc. v. Town of Hollywood Park, 261 S.W.3d 135, 139 n. 2 (Tex. App.—San Antonio 2008, no pet.)  The Reporter's Record from the October 31, 2014 hearing on the Saks Parties' Motion to Suspend and Supersede

1

Judgment and to Set the Amount of Supersedeas Bond was filed on November 14, 2014, and is cited as Nov. RR [page]:[line].  The Reporter's Record from the October 20, 2014 trial on the merits was filed on December 19, 2014, and is cited as Dec. RR [page]:[line].

## STATEMENT OF THE CASE

Some of the underlying circumstances of this case are already reported in this Court's opinion in Davis v. Merriman, No. 04-13-00518-CV, 2015 WL 1004357 (Tex. App.—San Antonio March 4, 2015, no pet. hist.), which involved a dispute over the Trust and its various properties.  At the center of this lawsuit is a property in which the Trust owns an interest, a commercial building located at 5321 Broadway, San Antonio, Texas, and its adjoining parking lot (the "Property"), more specifically described as follows:

> Lot Four (4), Block Thirty-Three (33), Alamo Heights, City of Alamo Heights, Situated in Bexar County, Texas, according to Plat thereof Recorded in Volume 105, Pages 29-296, Deed and Plat Records of Bexar County, Texas.

CR2 134; Appendix, tab 18.  The side of the Property facing Broadway is occupied by Starbucks, and the other side is occupied by Nix Health Care System.  Coffeehouse and the Trust are joint owners of the Property, and

are also joint owners of 5321 Broadway Partners (the "Partnership"), the entity which manages and holds equitable title to the Property.

Due to contentious litigation involving the Trust and the Saks Parties, and the Saks Parties' absurd persistence in making claims against the Property and Partnership, in spite of court orders rejecting their claims, Coffeehouse found it no longer practicable or desirable to be in business with the Trust. Coffeehouse filed this suit on October 10, 2013, seeking declaratory judgment to invalidate the Saks Parties' claims against the Property and the Partnership, to partition the Property, and to wind up and terminate the Partnership. CR1 1. Coffeehouse filed its First Amended Petition on June 9, 2014. CR1 84; Appendix, tab 1.

On August 19, 2014, the Trial Court (the Honorable Larry Noll) entered a Partial Summary Judgment in this case declaring that Coffeehouse and the Trust own the Property and the Partnership; declaring that the Saks Parties, as well as other parties, own no interest in the Property or the Partnership; declaring that certain assignments and deeds pertaining to the Property and the Partnership are void and of no force or effect; and ordering partition of the Property by sale, and the winding-up and termination of the Partnership. CR2 369; Appendix, tab 8.

On September 16, 2014, the Trust filed its Crossclaim in this case, joining in and asserting the same claims asserted by Coffeehouse against Sandra and McFadin. CR2 373.

On October 20, 2014, the parties appeared for non-jury trial on the sole issue of attorney's fees, and the Court entered a final Judgment, incorporating the previous Partial Summary Judgment. CR2 437; Appendix, tab 9. The Trial Court (the Honorable Antonia Arteaga) awarded attorney's fees to Coffeehouse and the Trust against the Saks Parties jointly and severally. CR2 437. Immediately after the Judgment was entered on October 20, 2014, the Saks Parties filed their Notice of Appeal. CR2 434.

Prior to trial, on October 15, 2014, the Saks Parties had filed a premature Motion to Suspend and Supersede Judgment and to Set the Amount of Supersedeas Bond. CR2 397. The day following the trial, on October 21, 2014, the Saks Parties filed an Amended Motion to Suspend and Supersede Judgment and to Set the Amount of Supersedeas Bond. CR2 444. Coffeehouse responded on October 31, 2014, and a hearing was held that same day. CR2 459. The Trial Court (the Honorable Antonia Arteaga) entered an Order dated October 31, 2014, setting the amount of the supersedeas bond at $170,237.76. CR2 457. On November 3, 2014,

4

the Saks Parties filed a Motion to Suspend the Judgment and to Review Order Setting the Amount of Supersedeas Bond in this Court, which was denied on November 7, 2014. Appendix, tabs 12 and 13. On November 17, 2014, the Saks Parties filed a Motion to Reconsider En Banc Motion to Suspend the Judgment and to Review Order Setting the Amount of Supersedeas Bond, which this Court also denied on November 21, 2014. Appendix, tabs 14 and 15.

## STATEMENT REGARDING ORAL ARGUMENT

Coffeehouse and the Trust request oral argument only if the Court grants oral argument to the Saks Parties. The Saks Parties have filed a disjointed and conclusory brief, which does not properly present the issues for this Court's review. The Saks Parties' Issue Nos. 1(A) and 1(B) are unpreserved arguments that are unsupported by citations to the record or proper legal authority. Such arguments are not properly before this Court and have been waived. The Saks Parties' Issue No. 3 is moot because it has already been decided by this Court, the Saks Parties failed to seek further review in the Supreme Court, and this Court lacks further jurisdiction to consider it. The only issue that is arguably before this Court is the Saks Parties' Issue No. 2 regarding whether the Trial Court abused its discretion

5

in awarding attorney's fees.  This issue is straightforward, and does not require oral argument.

## ISSUES PRESENTED

**ISSUE NO. 1(a):** Do the Saks Parties' Issues Nos. 1(A) and (B) present anything for this Court's review?

**ISSUE NO. 1(b):** Did the Saks Parties waive their arguments that (i) the summary judgment granting partition was in error because the Partnership Agreement prohibits withdrawal of capital; and (ii) the summary judgment winding up and terminating the Partnership was in error because there is no agreement to terminate the Partnership?

**ISSUE NO. 1(c):** Was it necessary for the Trial Court to make findings of fact to support its partial summary judgment ordering partition of the Property by sale?

**ISSUE NO. 1(d):** Are there genuine issues of material fact as to:

    i)    whether a fair and equitable division of the Property cannot be made;

    ii)    whether the purpose of the Partnership is frustrated;

    iii)    whether the Trust exists and has an interest in the Property; and

    iv)    whether McFadin and Landen own any interest in the Property or the Partnership?

6

**ISSUE NO. 2(a):** Did the Trial Court abuse its discretion by awarding attorney's fees to Coffeehouse and the Trust?

**ISSUE NO. 2(b):** Did the Saks Parties waive any issue regarding failure to segregate attorney's fees?

**ISSUE NO. 2(c):** Did the Trial Court err in awarding the full amount of attorney's fees requested by Coffeehouse and the Trust?

**ISSUE NO. 3(a):** Is the Saks Parties' Issue No. 3 regarding the amount of the supersedeas bond moot because it has been waived, and does this Court therefore lack jurisdiction?

**ISSUE NO. 3(b):** Did the Trial Court abuse its discretion in setting the amount of the supersedeas bond?

## STATEMENT OF FACTS

### Purchase of the Property and Formation of the Partnership

By Assumption Warranty Deed dated January 11, 1996, Guy Chipman, Jr. sold the Property to the Trust. CR1 153. Several days later, by Warranty Deed dated January 16, 1996, the Trust conveyed an undivided twenty-five percent (25%) interest in and to the Property to Perry T. Donop, Jr. ("Donop"). CR1 157.

On January 16, 1996, Donop and the Trust also entered into a Partnership Agreement by which the Partnership was formed. CR1 163; Appendix, tab 3. The stated purpose of the Partnership was to own,

7

operate, and manage the Property. CR1 163. Record title to the Property remained jointly in the name of Donop (an undivided 25% interest) and the Trust (an undivided 75% interest). Pursuant to Paragraph 5 of the Partnership Agreement, Donop and the TRUST transferred equitable title to the Property to the Partnership. CR1 163-164; Appendix, tab 3.

By Special Warranty Deed dated August 22, 2012, Donop conveyed his undivided 25% interest in and to the Property to Coffeehouse, of which Donop is Manager. CR1 170. On the same date, Donop executed an Assignment and Assumption of Partnership Interest, whereby he assigned all of his interest in the Partnership to Coffeehouse. CR1 169. Attached hereto as Appendix, tab 2, is a flow chart illustrating the Property's chain of title. CR1 320.

On or about September 6, 2012, Coffeehouse and Saks Broadway, LLC ("Saks Broadway") executed an unrecorded Agreement Confirming Interests in Partnership, which recited that the Trust had previously transferred all of its right, title and interest in and to the Property and the Partnership to Saks Broadway. However, no such transfer or conveyance from the Trust to Saks Broadway was ever executed, and Saks Broadway does not own any interest in the Property or the Partnership. CR1 160-161.

## The Probate Suit Regarding the Trust

On or about August 17, 2011, Lauren Saks Merriman ("Merriman") filed suit against her mother, Sandra, and Diane Flores ("Flores"), Sandra's sister, who was then Trustee of the Trust, in Cause No. 2011-PC-3466, in Bexar County Probate Court (the "Probate Suit"). CR1 174; See Davis, 2015 WL 1004357; Appendix, tab 7. In the Probate Suit, Merriman requested an accounting of the Trust and to remove Flores as Trustee, due to Flores' numerous breaches of fiduciary duty and mismanagement of Trust assets. CR1 174. On or about December 21, 2011, the day before a scheduled hearing to remove Flores as Trustee, Flores signed a document reciting that the Trust had been terminated. CR1 323. The next day, however, on December 22, 2011, the Probate Court removed Flores as Trustee and appointed Marcus Rogers as Interim Trustee of the Trust. CR1 183.

## The Mediated Settlement Agreement

The parties to the Probate Suit eventually mediated their claims, and entered into a Mediated Settlement Agreement (the "MSA") effective April 2, 2012. CR1 188; Appendix, tab 4. Because of Flores' attempted termination of the Trust and due to suspicions that Flores had fraudulently assigned interests in the Partnership to Sandra, the MSA included an

agreement by Sandra and Flores to transfer and assign any and all of their right, title, and interest in and to the Partnership back to the Trust. Sandra, Flores, Merriman, Landen (who is Sandra's other daughter), and the Trust (through its Interim Trustee, Marcus Rogers) all signed the MSA. CR1 188; Appendix, tab 4. The Probate Court approved the MSA on May 8, 2012. CR1 193.

Sandra, Landen, and Flores then failed to comply with the MSA. Instead, on or about August 15, 2012, Sandra filed of record two documents attached to an Affidavit: a document titled "Irrevocable Assignment of Partnership Interest," dated January 6, 1996, signed by Flores, purporting to assign 99% of the Trust's right, title and interest in the Partnership to Sandra (the "1996 Assignment"); and another document titled "Assignment of Interest in 5321 Broadway Partners," dated December 21, 2011, also signed by Flores, purporting to terminate the Trust and assign its 75% interest in the Partnership to Merriman and Landen (the "2011 Assignment"). CR1 321. These invalid documents were filed after the Probate Court had removed and replaced Flores as trustee of the Trust, and served no purpose except to thwart the MSA.

## The Arbitration Award

As of September 5, 2012, Sandra, Landen and Flores still had not complied with the MSA. The Probate Court then ordered Sandra, Landen, Merriman, and the Trust to mediate and arbitrate any disputes over the MSA, as required under the terms of the MSA. CR1 195. This second mediation was unsuccessful, so the matter was arbitrated by the mediator, Thomas J. Smith. On October 24, 2012, Mr. Smith, as Arbitrator, entered Findings and a Final Award (the "Arbitration Award"). CR1 200; Appendix, tab 5. The Arbitrator found that the properties described in the MSA, including the interest in the Partnership, were Trust property. The Arbitrator also held that Sandra's, Landen's, and any other party's failures to comply with the MSA's requirement to transfer their right, title and interest in the Trust property were not made in good faith or for just cause. The Arbitrator ordered Sandra, Landen and any other party to the MSA to execute the required documents necessary to effectuate the transfer, purpose, and intent of the MSA, which documents were attached to and incorporated by reference in the Arbitration Award. On May 7, 2013, the Probate Court confirmed the Arbitration Award, and entered it as a judgment of the Court. CR1 198.

Sixteen days after the Probate Court had entered the Arbitration Award as a judgment of the Court, on or about May 23, 2013, Sandra filed of record two more documents: a Deed dated April 21, 2012, by which she purported to convey all of her right, title, and interest in the Property to McFadin (the "McFadin Deed"); and a document titled "Transfer Conveyance Assignment of Interest in the 5321 Broadway Partners Agreement," by which she purported to assign all of her right, title and interest in the Partnership to McFadin (the "McFadin Assignment") (collectively, with the 1996 Assignment and the 2011 Assignment, the "Assignments"). CR1 333-343. At the time the above-described instruments were executed and filed of record, Sandra had no interest in the Property or the Partnership, but in any event, the McFadin Deed and McFadin Assignment were void and ineffective to transfer any interest in the Property or the Partnership because McFadin acquired any such interest subject to the Probate Suit, the MSA, and the final determination in the Arbitration Award.

**Enforcement of the Arbitration Award**

Despite being ordered by the Arbitrator and the Probate Court to execute the documents necessary to transfer any right, title, and interest in the Property and the Partnership to the Trust, Sandra and Landen still

12

continued to refuse to sign such conveyances. On September 17, 2013, the Probate Court entered an Order Granting Motion to Enforce, ordering Sandra and Landen to execute the required documents, including a Conveyance Agreement and Deed (the "Arbitration Deed") relating to the Property, and a Conveyance Agreement and Assignment (the "Arbitration Assignment") relating to the Partnership. CR1 278. When Sandra and Landen still refused to comply, the Court entered an Order in Aid of Enforcement of Judgment on November 14, 2013, which deemed by operation of law that Sandra and Landen had executed the Arbitration Deed and Arbitration Assignment transferring all right, title, and interest in the Property and the Partnership to the Trust, as well as the other required documents. CR1 281; Appendix, tab 6. This Order confirmed, once and for all, title to a 75% undivided interest in the Trust, with the remaining 25% undivided interest in Coffeehouse.

**Appeal of the Judgment on the Arbitration Award**

On August 2, 2013, Sandra and Landen appealed the Arbitration Award and the Order entering the Arbitration Award as a Judgment. On December 12, 2013, Sandra, Landen, and McFadin appealed the November 14, 2013 Order in Aid of Enforcement of Judgment. This Court consolidated the appeals and issued a Memorandum Opinion on March 4,

13

2015, affirming the judgment confirming the Arbitration Award and dismissing the appeal from the Order in Aid of Enforcement of Judgment for lack of jurisdiction.  See Davis, 2015 WL 1004357.  Appendix, tab 7.

## SUMMARY OF THE ARGUMENT

The Saks Parties failed to adequately brief their Issues Nos. 1(A) and 1(B); therefore, they have presented nothing for this Court's review and have waived their complaints on these issues.

The Saks Parties also failed to raise Issues Nos. 1(A) and 1(B) in their Responses to Coffeehouse's Motion for Partial Summary Judgment and Amended Motion for Partial Summary Judgment, and are presenting these complaints for the first time on appeal.  Thus, the Saks Parties have waived these issues.

It was not necessary for the Trial Court to make findings of fact to support its Order partitioning the Property by sale.  Even if the Saks Parties had requested findings of fact, it would have been improper for the Trial Court to make them.  Furthermore, the Trial Court did determine the shares of the joint owners in the Property in its Order Granting Partial Summary Judgment.

Even if the Saks Parties had not waived Issues Nos. 1(A) and 1(B), the Trial Court's Order Granting Partial Summary Judgment should be

14

affirmed because there are no genuine issues of material fact that (i) a fair and equitable division of the Property cannot be made; (ii) the purpose of the Partnership is frustrated; (iii) the Trust exists and owns an interest in the Property; and (iv) McFadin and Landen own no interest in the Property or the Partnership.

The Trial Court did not abuse its discretion in awarding attorney's fees to Coffeehouse and the Trust because they properly pleaded for declaratory relief under Section 37.001 et seq. of the Texas Civil Practice & Remedies Code (the "UDJA"), which relief was not duplicative of the other relief they sought, and the Trial Court was statutorily authorized to make the fee awards.

The Saks Parties have waived their argument regarding segregation of attorney's fees because they failed to file a Motion for New Trial or otherwise object in the Trial Court. Even if the issue had not been waived, the evidence shows that the attorney's fees of Coffeehouse and the Trust could not be segregated; therefore, the Trial Court's award should be affirmed.

The Saks Parties have already asked this Court to review the Order setting the amount of supersedeas bond. This Court refused to overturn or modify the Order, and the Saks Parties failed to file a petition for writ of

15

mandamus to the Supreme Court of Texas to further challenge the Order. Therefore, the Saks Parties' Issue No. 3 is moot and has been waived. This Court also lacks jurisdiction to consider this issue. Even if it were possible for the Saks Parties to further appeal the Order setting the amount of supersedeas bond, their Notice of Appeal for this Order was untimely. Finally, even if the Saks Parties' Issue No. 3 were properly before this Court, the Trial Court did not abuse its discretion in setting the amount of supersedeas bond, and its Order should be affirmed.

## ARGUMENT AND AUTHORITIES

This Court is already familiar with many of this case's underlying facts and arguments because this case arises out of the ongoing dispute between the Trust and the Saks Parties. See Davis, 2015 WL 1004357. Appendix, tab 7. Because of this dispute and the unreasonable and unpredictable behavior of the Saks Parties, Coffeehouse's abilities to deal with the Trust and to effectively manage the Property have been frustrated, and it is no longer practical for Coffeehouse to be in business with the Trust. Due the fraudulent instruments filed of record by the Saks Parties, Coffeehouse had no choice but to file this action seeking to cancel the invalid instruments and quiet the Saks Parties' claims, so that the Property could be sold and the Partnership terminated.

16

**ISSUE NO. 1(a): Do the Saks Parties' Issues Nos. 1(A) and (B) present anything for this Court's review?**

In <u>Davis</u>, this Court held that in attempting to raise several issues, Sandra and Landen failed to properly brief their arguments under Texas Rule of Appellate Procedure 38.1(i). 2015 WL 1004357 at *5. Similarly, the Saks Parties in this case have inadequately briefed Issue Nos. 1(A) and (B) so that nothing is presented to this Court for review.

Pursuant to Texas Rule of Appellate Procedure 38.1(i), an appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Nothing is presented for review if an appellate issue is unsupported by argument or citation to the record or by proper legal authority. <u>Davis</u>, 2015 WL 1004357 at *5; <u>Blankinship v. Brown</u>, 399 S.W.3d 303, 307 (Tex. App.—Dallas 2013, pet. denied). "Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint." <u>In re Estate of Taylor</u>, 305 S.W.3d 829, 836 (Tex. App.—Texarkana 2010, no pet.). "An appellate court has no duty to perform an independent review of the record and applicable law to determine whether the error complained of occurred." <u>Strange v. Cont'l Cas. Co.</u>, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied).

17

In briefing their Issue No. 1(A), in which they attempt to challenge the Order Granting Partial Summary Judgment, the Saks Parties make limited citations to the record, and fail to provide any legal authority to support their position. The Saks Parties' briefing of their Issue No. 1(B) does not include a single citation to either the record or supporting legal authority. Because the Saks Parties have failed to provide adequate support for their Issues No. 1(A) and (B) from either the record or the applicable law, they have presented nothing for this Court to review on these complaints.

Furthermore, on pages 14, 15, and 18 of their Brief, the Saks Parties cite to testimony and exhibits from the November 14, 2014, Reporter's Record of the hearing on their Amended Motion to Set Supersedeas Bond, which hearing was held after the Trial Court granted the Partial Summary Judgment, and which is not part of the summary judgment record. A review of a ruling granting a motion for summary judgment will be made only on the record upon which the trial court's ruling was based and only as it existed at the time the summary judgment was signed. Chappell v. Allen, 414 S.W.3d 316, 321 (Tex. App.—El Paso 2013, no pet.); H.S.M. Acquisitions, Inc. v. West, 917 S.W.2d 872, 878 (Tex. App.—Corpus Christi 1996, writ denied). Because the November 14, 2014, Reporter's Record of the hearing on the Saks Parties' Amended Motion to Set Supersedeas

18

Bond is not summary judgment evidence, any references to said Reporter's Record are improper and should be disregarded.

The Saks Parties fail to make adequate citations to the record or to appropriate legal authority, and cite to a portion of the record which is not proper summary judgment evidence. Therefore, the Saks Parties have presented nothing for this Court to review on their Issues Nos. 1(A) and (B), and the Court should find that the Saks Parties have waived these complaints.

**ISSUE NO. 1(b): Did the Saks Parties waive their arguments that (i) the summary judgment granting partition was in error because the Partnership Agreement prohibits withdrawal of capital; and (ii) the summary judgment winding up and terminating the Partnership was in error because there is no agreement to terminate the Partnership?**

The Saks Parties attempt to argue that the Partnership Agreement prohibits the withdrawal of capital, and, therefore, Coffeehouse lacked standing to request partition of the Property. The Saks Parties also try to claim that the winding-up and termination of the Partnership is in error because there is no agreement to terminate the Partnership. The Saks Parties failed to present these arguments to the Trial Court in their Responses to Coffeehouse's Motion for Partial Summary Judgment and

19

Amended Motion for Partial Summary Judgment, and are raising them for the first time in this appeal. CR1 350, 406; CR2 1, 152, 171, 187. Under Texas Rule of Civil Procedure 166a(c):

> Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.

The non-movant must expressly present to the trial court any issues or grounds for defeating the movant's entitlement to summary judgment. Friedman v. Atl. Funding Corp., 936 S.W.2d 38, 41-42 (Tex. App.—San Antonio 1996, no writ). Any issue not presented in the response to a summary judgment motion cannot be raised later on appeal. Id. Because the Saks Parties failed to present these issues to the Trial Court in their responses to Coffeehouse's motion for partial summary judgment, the court should find that these issues have been waived for this reason, as well.

**ISSUE NO. 1(c): Was it necessary for the Trial Court to make findings of fact to support its partial summary judgment ordering partition of the Property by sale?**

The Saks Parties claim that the Trial Court's Order Granting Partial Summary Judgment was in error because it failed to make findings that the Property could not be partitioned in kind, or determine the share of each of the joint owners in the Property. First, the Saks Parties did not request any

20

findings of fact, but even if they had, it would have been improper for the Trial Court to make findings of fact. "Findings of fact and conclusions of law have no place in a summary judgment proceeding." IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 441 (Tex. 1997). The reason for this is that for summary judgment to be rendered, there must be no genuine issue as to any material fact, and the legal grounds must be set forth in the motion and response. Id. If the trial court properly enters summary judgment, there are no facts to find, and the legal conclusions have already been presented in the motion and response. Id. "The trial court should not make, and an appellate court cannot consider, findings of fact in connection with a summary judgment." Id. Therefore, it was not necessary for the Trial Court to make any findings of fact with regard to partition of the Property.

Furthermore, the Trial Court did determine, in its Judgment, the share of each of the joint owners of the Property. In its Order Granting Partial Summary Judgment (which was incorporated into the final Judgment), the Court decreed that:

> BROADWAY COFFEEHOUSE, LLC, owns an undivided twenty-five (25%) percent interest, and that Defendant MARCUS ROGERS, AS INTERIM

TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L, A TEXAS TRUST, owns an undivided seventy-five (75%) percent interest, in the following real property and improvements (the "Property"):

> Lot Four (4), Block Thirty-Three (33), Alamo Heights, City of Alamo Heights, Situated in Bexar County, Texas, according to Plat thereof Recorded in Volume 105, Pages 29-296, Deed and Plat Records of Bexar County, Texas.

CR2 369; Appendix, tab 8. This is part of the Judgment, but the effect is the same. The Saks Parties' point is moot.

**ISSUE NO. 1(d): Are there genuine issues of material fact as to:**

> **i)** whether a fair and equitable division of the Property cannot be made;
>
> **ii)** whether the purpose of the Partnership is frustrated;
>
> **iii)** whether the Trust exists and has an interest in the Property; and
>
> **iv)** whether McFadin and Landen are owners of the Property?

A summary judgment is reviewed on appeal de novo. Provident Life and Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). Under

22

summary judgment review, all evidence favorable to the non-movant is taken as true, and the court indulges every reasonable inference and resolves any doubts in favor of the nonmovant. Id., at 215. Pursuant to Texas Rule of Civil Procedure 166a(c), the party moving for summary judgment must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Id., at 216. When a movant meets this burden, the burden then shifts to the non-movant to raise an issue of fact as to at least one the elements of the movant's claim. Amedisys, Inc. v. Kingwood Home Health Care, LLC, 437 S.W.3d 507, 511 (Tex. 2014).

### i. There is no genuine issue of material fact that a fair and equitable division of the Property cannot be made.

The Trial Court's Order Granting Partial Summary Judgment and final Judgment both order partition of the Property by sale. CR2 371, 439. In a suit for partition, the Court shall determine whether the property is incapable of division so that the Property must be sold. Pursuant to Texas Rule of Civil Procedure 770:

> Should the court be of the opinion that a fair and
> equitable division of the real estate, or any part
> thereof, cannot be made, it shall order a sale of so

23

much as is incapable of partition, which sale shall be for cash, or upon such other terms as the court may direct, and shall be made as under execution or by private or public sale through a receiver, if the court so order . . . .

"Incapable" of partition does not mean incapable in a physical sense, but rather the Court should focus on whether partition in kind is fair and equitable so that the property can be divided in kind without materially impairing its value. Champion v. Robinson, 392 S.W.3d 118, 123 (Tex. App.—Texarkana 2012, pet denied). The party seeking partition by sale bears the burden of proving a partition in kind would not be fair and equitable. Id.

Coffeehouse's summary judgment evidence shows that a partition in kind of the Property would not be fair and equitable. Attached to Coffeehouse's Motion for Partial Summary Judgment is the Affidavit of Perry Donop, Jr. ("Donop Affidavit I"), in which Donop describes the Property as a commercial building and adjacent parking lot, leased to retail and office tenants. CR1 161. The Property is a single platted lot. Appendix, tab 18. Donop explains that there is no way to divide the building or the land in a way that would not materially impair its value. CR1

24

161. Finally, Donop explains that the Property's value is dependent on the commercial improvements and its operation as a commercial retail and office building, and neither the improvements nor the land underneath the improvements can be partitioned in kind. CR1 161.

The Saks Parties fail to point to any specific evidence in the summary judgment record that would controvert the Donop Affidavit I. It is the Saks Parties' burden to discuss their assertions of error and properly cite to supporting evidence in the record. Valadez v. Avitia, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). An appellate court has no duty or right to perform an independent review of the record, which would improperly transform the court from neutral adjudicators to advocate for that party. Id. Because it is not this Court's duty to independently review the voluminous summary judgment record, the Saks Parties were required to identify any supporting evidence with proper citations to the summary judgment record, and by failing to do so, they have presented nothing for review. See Id.

The only evidence cited by the Saks Parties in support of this issue is from the November 14, 2014, Reporter's Record of the hearing on Appellants' Amended Motion to Set Supersedeas Bond. As explained above, the November 14, 2014, Reporter's Record is not part of the summary judgment record because it pertains to a separate proceeding

held on October 31, 2014, regarding the amount of the supersedeas bond, and was made well after the Court entered its Order granting Partial Summary Judgment on August 19, 2014. See Chappell, 414 S.W.3d at 321; H.S.M. Acquisitions, 917 S.W.2d at 878. Because the testimony and evidence presented during the hearing regarding the supersedeas bond is outside the summary judgment record, it is not within the scope of this Court's summary judgment review, and should be disregarded.

The evidence presented by Coffeehouse satisfies its burden to show that there is no genuine issue of material fact that a fair and equitable division of the Property cannot be made. CR1 161. The Saks Parties failed to identify or cite to any summary judgment evidence that would raise a fact question on this issue. See Chappell, 414 S.W.3d at 321 (Appellate court would not consider voluminous summary judgment record or matters presented at subsequent trial, but would limit scope of review to portions of summary judgment record to which proper citations were made). Therefore, the Order Granting Partial Summary Judgment and subsequent final Judgment ordering partition of the Property by sale should be affirmed.

### ii. There is no genuine issue of material fact that the purpose of the Partnership is frustrated.

The Trial Court's Order Granting Partial Summary Judgment and final Judgment also order that the Partnership be wound-up and terminated.

26

CR2 371, 439. Under [Section 11.314(1)(A)](#) of the Texas Business Organizations Code, a district court has jurisdiction to order the winding up and termination of a domestic partnership if the court determines that the economic purpose of the partnership is likely to be unreasonably frustrated. Appendix, tab 19. Coffeehouse requested partial summary judgment ordering the winding-up and termination of the Partnership on this basis, supported by the Donop Affidavit I, in which Mr. Donop stated that the economic purpose of the Partnership was frustrated by the ongoing Trust dispute, the accusations of Flores' mismanagement of the Trust, the litigiousness of the Saks Parties, and their refusal to comply with court orders and recognize the validity of the Trust. CR1 148-150, 161-162, 186-194, 198-199, 205-206, 245-261, 281-282, 321-324, 330-343; CR2 121-123.

The Saks Parties do not point to any summary judgment evidence to refute the Donop Affidavit I or the other evidence, do not make a single citation to the record on this issue, and provide no legal authority for their argument. Rather, the Saks Parties make conclusory and unsupported statements that "the economic purpose of the Partnership is not frustrated by any dispute between the ATFL&L and any other parties because ATFL&L is no longer an owner of any interest in the Property," and "there

27

are genuine issues of material fact . . . [as to] (4) whether the purpose of the Partnership is frustrated." Appellants Brief, at 19-20. The requirement that an appellant's brief contain a clear and concise argument, including appropriate citation to authority and to the record, is not satisfied by merely uttering brief conclusory statements unsupported by legal citations. Valadez, 238 S.W.3d at 845. Because the Saks Parties have raised no genuine issue of material fact, the Order Granting Partial Summary Judgment and final Judgment ordering winding-up and termination of the Partnership should be affirmed.

Furthermore, Coffeehouse asserted three other bases for winding-up and terminating the Partnership. Under Section 11.314(1)(B) of the Texas Business Organizations Code, a district court has jurisdiction to order the winding up and termination of a domestic partnership if the court determines that another partner has engaged in conduct relating to the partnership's business that makes it not reasonably practicable to carry on the business in partnership with that partner. Appendix, tab 19. Coffeehouse presented summary judgment evidence that this condition existed so that winding-up and termination of the Partnership was necessary. The Donop Affidavit I sets forth testimony explaining that because of the conflicts surrounding the Trust and the Saks Parties'

assertion of invalid and fraudulent claims to the Property and the Partnership, as well as their absolute refusal to recognize the existence of the Trust or comply with the Orders of the Probate Court, it is not reasonably practicable to carry on the business with the Trust. CR1 161-162, 186-194, 198-199, 205-206, 245-261, 281-282, 321-324, 330-343.

Furthermore, pursuant to Sections 11.051(4) and 11.057(c) of the Texas Business Organizations Code, an event requiring the winding up of a domestic general partnership includes:

(1) in a general partnership for a particular undertaking, the completion of the undertaking, unless otherwise provided by the partnership agreement; [and]

. . .

(3) the sale of all or substantially all of the property of the general partnership outside the ordinary course of business, unless otherwise provided by the partnership agreement.

TEX. BUS. ORG. CODE § 11.057(c); Appendix, tab 19. Coffeehouse showed the Trial Court that winding-up and termination of the Partnership was required due to such events. Pursuant to the Partnership Agreement, the purpose of the Partnership was to own, operate, and manage the Property,

29

which constituted all of the property of the Partnership. CR1 160, 163-164. Because Coffeehouse (1) owns an interest in the property and (2) has a right to present possession as a cotenant, it is entitled to partition the Property as a matter of law. CR1 159-160, 157-158, 170-172. See Savell v. Savell, 837 S.W.2d 836, 838 (Tex. App.—Houston [14th Dist.] 1992, writ denied); Beago v. Ceres, 619 S.W.2d 293, 294 (Tex. App.—Houston [1st Dist.] 1981, no writ) (holding that the right of a joint owner to partition real property is absolute). Coffeehouse established that partition by sale is necessary because a fair and equitable division of the Property cannot be made, and the Trial Court ordered partition of the Property by sale. CR1 161, CR2 371, 439. Such a sale would constitute an event requiring winding up the Partnership because it would: (1) complete the particular undertaking for which the Partnership was formed; and (2) constitute a sale of all of the property of the Partnership. As such, the winding up of the Partnership is required under Sections 11.051(4) and 11.057(c) of the Texas Business Organizations Code.

In their Brief, the Saks Parties have raised no issue regarding these other grounds for winding up and terminating the Partnership. The Trial Court did not specify the grounds for ordering the winding up and termination of the Partnership; therefore, the summary judgment must be

30

affirmed if any of the theories presented to the Trial Court and preserved for appellate review are meritorious. Provident, 128 S.W.3d at 217. Even if there had been a genuine issue of material fact regarding whether the purpose of the Partnership was frustrated, Coffeehouse has established the other three bases for winding-up and termination of the Partnership as a matter of law, and the Saks Parties have not disputed these grounds. Therefore, the Trial Court's ordering the winding-up and termination of the Partnership should be affirmed.

### iii. There is no genuine issue of material fact that the Trust exists and has an interest in the Property and the Partnership.

The Saks Parties present no specific issue on their contentions that the Trust was terminated and that they own interests in the Property. They do say as an unsupported conclusion buried in the body of their confusing Brief that there are questions of fact on these issues. But these are not issues they include in their statement of the issues in this appeal (see Appellants' Brief, at 3), and they entirely fail to present or support those unsupported conclusions with proper clarity or argument. The Saks Parties also fail to mention that these precise issues are now conclusively decided against them by this Court's opinion in Davis, 2015 WL 1004357. The Court should simply disregard what the Saks Parties say about the Trust

31

being terminated or their supposed ownership, because these statements do not support or relate to the issues they have identified in their statement of the issues and because these issues have already been decided in favor of the Trust and against the Saks Parties.

If this Court does entertain these issues, it should quickly reject the outrageous position that the Trust was terminated and owns no interest in the Property or the Partnership, despite the Probate Court's appointment of an interim trustee, the Arbitration Award carrying out the MSA and stating that the Property and Partnership are Trust property, the Probate Court's Orders enforcing the Arbitration Award, and Trial Court's Order Granting Partial Summary Judgment in this case declaring that the Trust owns 75% of the Property and the Partnership.  CR1 188, 193, 198, 200, 205, 278, 281; CR2 370; Appendix, tabs 4, 5, 6, 8 and 9.  Furthermore, in the Memorandum Opinion issued in Davis, this Court affirmed the Probate Court's judgment confirming the Arbitration Award, finding that, based on the MSA and the Arbitration Award which are premised on the notion that the Trust is in existence, the Trust was never terminated.  Davis, 2015 WL 1004357 at *3.  Appendix, tab 7.

Additionally, the Saks Parties point to no competent summary judgment evidence that the Trust no longer owns its 75% interest in the

Property and the Partnership. CR1 157, 163. The only evidence referred to by the Saks Parties is an Affidavit of Diana Flores, dated July 1, 2014, which they claim shows that Flores had absolute authority to execute the 1996 Assignment and the 2011 Assignment, by which Flores purported to terminate the Trust. The Saks Parties fail to indicate the page in the record where such Affidavit can be found, but it appears that Appellants are referring to the Affidavit attached to Flores' Response to Coffeehouse's Motion for Partial Summary Judgment. CR2 78-79. It should be noted that Flores withdrew her opposition to Coffeehouse's Motion for Partial Summary Judgment prior to the hearing, when she entered into a Rule 11 Agreement agreeing to disclaim and quitclaim any interest in the Property and the Partnership. CR2 365.

First, Flores' statements in the Affidavit that she terminated the Trust on December 21, 2011, and that she had authority to execute the above-mentioned Assignments by which she allegedly distributed the Trust's 75% interest in the Property and the Partnership, constitute legal conclusions. Coffeehouse objected to Flores' Affidavit on these bases in the Trial Court, but the Trial Court did not rule on those objections. CR2 357. Because an objection that an affidavit states a legal conclusion is an objection based on a substantive defect, the objection may be raised on appeal even if it was

never ruled on, or even raised, in the trial court.  <u>Rizkallah v. Conner</u>, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ).  Because the statements in Flores' Affidavit relied on by the Saks Parties are legal conclusions, they are improper summary judgment evidence and should be disregarded.  Additionally, the Assignments referred to by Flores in her Affidavit were invalidated by the MSA, the Arbitration Award, and the Probate Court Orders enforcing the Arbitration Award, by which Sandra, Landen, and Merriman conveyed any interest they may have had in the Property and the Partnership to the Trust.

Because the Saks Parties have presented no evidence creating a genuine issue of material fact as to whether the Trust exists and owns an interest in the Property and the Partnership, summary judgment on this issue must be affirmed.

### iv. There is no genuine issue of material fact that McFadin and Landen own no interest in the Property or the Partnership.

Landen does not own any interest in the Property or the Partnership because the Trust was not terminated, and she was deemed to have conveyed any interest she had in the Property and the Partnership to the Trust.  CR1 281; Appendix, tab 6.  McFadin owns no interest in the Property or the Partnership because he purports to have obtained his interest from Sandra, who never owned any interest in the Property, and

34

who also was deemed to have conveyed any interest she may have had in the Property and Partnership back to the Trust. CR1 281; Appendix, tab 6.

Coffeehouse presented summary judgment evidence that pursuant to the MSA, Sandra and Flores agreed to transfer and assign to the Trust all of their right, title, and interest in and to the Property and the Partnership, and the Probate Court approved the MSA. CR1 189. When the MSA was arbitrated, the arbitrator found:

4) Pursuant to order of the court, Marcus Rogers is the Interim Trustee of the Trust.

. . .

6) Sandra C. Saks, although settlor of the Trust, has no current interest in the Trust.

. . .

21) ¶3.b. of the MSA represents the Parties' agreement that the properties and interests identified in that paragraph were intended by the Parties to be assigned or conveyed to the Trust. The properties so identified are Trust property. ¶5 of the MSA provides the Parties would cooperate with one another in the execution of the necessary documents to effect the transfer of the

35

properties and interests identified in ¶3.b. to the Trust. The documents attached hereto as Exhibits 1 – 10 are in proper form and necessary to accomplish the transfer of the properties to the Trust as contemplated in the MSA.

. . .

22) The refusal of Sandra C. Saks, Landen Saks, and/or any other party who has failed to execute the necessary documents to effect a conveyance of the transfer of the title or interest of the properties listed in MSA ¶3.b. to the Trust was not made in good faith or for just cause. Each such party failing to cooperate shall be compelled to cooperate in order to effect the transfer, purposes and intents of the MSA.

CR1 201, 205-206; Appendix, tab 5. Because this Court has already affirmed the judgment confirming the Arbitration Award, the Saks Parties have already litigated and lost on this issue.

Moreover, the documents by which Landen and Sandra were deemed to have conveyed any Property and Partnership interests they may have had to the Trust, and which were incorporated into the Arbitration Award as a judgment of the Probate Court, specifically state that the 1996

36

Assignment and 2011 Assignment are now "canceled or void and of no further force or effect." CR1 256; Appendix, tab 5. Because Sandra had nothing to convey or assign to McFadin, the McFadin Assignment and the McFadin Deed are void and ineffective.

The Saks Parties point to no competent summary judgment evidence that would show that Landen or Sandra retained any interest in the Property or the Partnership, or that Sandra had any interest to convey to McFadin. The Saks Parties also fail to argue or offer any evidence that the purported conveyance and assignment to McFadin were not invalidated by the Probate Suit, the MSA, and the final determination in the Arbitration Award. Because the Saks Parties have raised no genuine issue of material fact on this issue, the summary judgment declaring that neither Landen nor McFadin own any interest in the Property or the Partnership must be affirmed.

> **ISSUE NO. 2(a): Did the Trial Court abuse its discretion by awarding attorney's fees to Coffeehouse and the Trust?**

Due to the Saks Parties' absurd persistence in their claims against the Trust and its properties, and their unceasing litigation in the face of conclusive court rulings, it was necessary for Coffeehouse and the Trust to request declaratory relief to invalidate the fraudulently filed instruments and

restore marketable title to the Property before partition of the Property or winding-up of the Partnership could be accomplished. Coffeehouse asked the Court to declare under the UDJA that Saks Broadway owns no interest in the Property or the Partnership, that the Assignments and Deed fraudulently filed by Sandra Saks are null and void, that Coffeehouse and the Trust are the only two partners of the Partnership, that the Partnership owns equitable title to the Property, and that Coffeehouse and the Trust own 25% and 75% of the Property respectively. CR1 91.

The Saks Parties have fought Coffeehouse and the Trust every step of the way, completely disregarding the Orders of the Probate Court, as well as the agreement and absolute right of Coffeehouse and the Trust to partition the Property and wind up the Partnership. As a result, Coffeehouse and the Trust also sought to recover their reasonable and necessary attorney's fees under Section 37.009 of the UDJA. CR1 93; Appendix, tab 1. The Trial Court granted Coffeehouse's requested declaratory relief in its Order Granting Partial Summary Judgment and incorporated such relief into the final Judgment, which also awarded attorney's fees to Coffeehouse and the Trust. CR2 369, 437; Appendix, tabs 8 and 9.

Section 37.009 of the UDJA provides:

In any proceeding under this chapter, the court may

award costs and reasonable and necessary

attorney's fees as are equitable and just.

Appendix, tab 10. Attorney's fees awarded pursuant to the UDJA are

reviewed under an abuse of discretion standard. Roberts v. Wilson, 394

S.W.3d 45, 55 (Tex. App.—El Paso 2012, no pet.); Florey v. Estate of

McConnell, 212 S.W.3d 439, 447 (Tex. App.—Austin 2006, pet. denied);

Wheeler v. Phillips, 03-10-00221-CV, 2011 WL 4011455, at *9 (Tex. App.—

Austin Sept. 7, 2011, pet. denied). Abuse of discretion occurs when a trial

court acts unreasonably or without reference to any guiding rules and

principles. Wheeler, 2011 WL 4011455, at *9.

The Saks Parties argue that because neither the Order Granting

Partial Summary Judgment nor the final Judgment expressly address the

requests for declaratory judgment, then the award of attorney's fees under

the UDJA was improper. However, the Order Granting Partial Summary

Judgment and the final Judgment clearly granted declaratory relief, even if

they did not expressly refer to the UDJA or use the words "declaratory

judgment." The final Judgment orders, adjudges, and decrees (1) that

Coffeehouse and the Trust own 25% and 75% undivided interests in the

Property, respectively; (2) that Coffeehouse and the Trust own 25% and

75% of the Partnership, respectively; (3) that the Partnership has equitable title to the Property; (4) that none of the other parties in the Trial Court, including the Saks Parties, own any interest in the Property or the Partnership; (5) and that the Assignments and Deed filed by Sandra Saks after the MSA was approved by the Probate Court and the Arbitration Award was entered as a Judgment, are void and of no force and effect. CR2 369, 437; Appendix, tabs 8 and 9.

The Saks Parties' argument that the Judgment does not mention "declaratory judgment," is merely an attack on the form of the Judgment. However, nothing in the record shows that the Saks Parties called this alleged defect to the attention of the Trial Court. Because the Saks Parties failed to object to the form of the Judgment or notify the Trial Court of the claimed error, the Saks Parties have waived any complaint of error to the form of the judgment. 46933, Inc. v. Z & B Enterprises, Inc., 899 S.W.2d 800, 808 (Tex. App.—Amarillo 1995, writ denied).

Furthermore, "under the liberal construction which must be given the declaratory judgment act, no particular form is necessary for the declaration of rights in a declaratory judgment action if, when construed together with the pleadings and any findings, the rights of the parties can be determined from the face of the judgment." 46933, Inc., 899 S.W.2d at 808. Because

40

the Trial Court's Judgment, when construed with the Coffeehouse and Trust pleadings requesting declaratory relief, determines the rights of the parties, the Judgment constitutes a declaration under the UDJA. See In Interest of an Unborn Child, 153 S.W.3d 559, 561 (Tex. App.—Amarillo 1993, no writ.) (holding that even though the trial court's order did not make a declaration, determination of law, or expressly grant any relief, because no particular form is prescribed for a declaration of rights in a declaratory judgment action, the word "finds" was construed to constitute a declaration based upon facts found from the evidence).

The Trial Court could have properly awarded attorney's fees to Coffeehouse and the Trust under the UDJA even if the requested declaratory relief had not been granted. Pursuant to Section 37.009 of the UDJA, "equitable and just" attorney's fees and costs may be awarded "in any proceeding under this chapter." The question, then, is whether the proceeding is a declaratory judgment action "under this chapter." Zurita v. SVH-1 Partners, Ltd., No. 03-10-00650-CV, 2011 WL 6118573, at *8 (Tex. App.—Austin Dec. 8, 2011, pet. denied). Under Section 37.009, it is within the trial court's discretion to award attorney's fees to the prevailing party, the nonprevailing party, or neither. Feldman v. KPMG LLP, 438 S.W.3d 678, 685 (Tex. App.—Houston [1st Dist.] 2014, no pet.); Zurita, 2011 WL

41

6118573 at *8.  Moreover, the statute does not require a judgment on the merits of the dispute as a prerequisite to a fee award.  Feldman, 438 S.W.3d at 685; Zurita, 2011 WL 6118573 at *8.  In an action under the UDJA, it is within the trial court's discretion to award attorney's fees to any party with pleadings requesting them, even if the party moving for attorney's fees failed to specify the statutory authority for such an award in its motion.  Roberts, 394 S.W.3d at 55; Purvis Oil Corp. v. Hillin, 890 S.W.2d 931, 939 (Tex. App.—El Paso 1994, no writ); Smith v. Reid, No. 04-13-00550-CV, 2014 WL 7339586, at *10 (Tex. App.—San Antonio Dec. 23, 2014, no pet.); Zurita, 2011 WL 6118573 at *8.

The Saks Parties contend that Coffeehouse and the Trust are not entitled to recover fees because they "did not claim an independent cause of action for declaratory judgment that was granted," citing as support Morton v. Timarron Owners Ass'n., Inc., No. 02-13-00409-CV, 2014 WL 2619189 (Tex. App.—Fort Worth June 12, 2014, no pet.)  Appellants' Brief, at 23.  This case is distinguishable because the request for declaratory judgment in Morton was a defensive counterclaim that mirrored the plaintiff's trademark infringement claim.  The appellate court held that the declaratory judgment counterclaim was not an independent claim for affirmative relief because it did not seek relief beyond what the defendant

42

would be entitled to upon disposition of the plaintiff's claims, and did not survive the plaintiff's nonsuit. Thus, the defendant was not entitled to attorney's fees under the UDJA. In this case, Coffeehouse and the Trust did specifically plead for affirmative declaratory judgment relief as an independent claim, separate and apart from the request for partition and winding-up of the Partnership, which relief was granted by the Trial Court's Order Granting Partial Summary Judgment and incorporated into the final Judgment. CR1 91, CR2 369, 437; Appendix, tabs 1, 8 and 9.

The Saks Parties also argue that Coffeehouse and the Trust improperly pleaded the claims for partition and winding-up of the partnership as a declaratory judgment action for the sole purpose of recovering attorney's fees. However, it was necessary for Appellees to include a request for declaratory relief due to the Saks Parties' vexatious insistence that they own interests in the Property and the Partnership despite the MSA, Arbitration Award, and Probate Court Orders providing otherwise. CR1 186-194, 198-199, 205-206, 245-261, 278, 281; Appendix, tabs 4, 5 and 6. Furthermore, in light of the Saks Parties' unreasonable and burdensome claims, the attorney's fees awarded against them are equitable and just.

The UDJA is intended to settle and provide relief from uncertainty and insecurity with respect to rights, and is to be liberally construed and administered. Roberts, 394 S.W.3d at 50. Pursuant to Section 37.004 of the UDJA:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Appendix, tab 10. That is exactly what Coffeehouse and the Trust requested and what the Court did—determine the validity of various instruments, including purported Assignments of Partnership interests and the McFadin Deed, in construction with the MSA, Arbitration Award, and Probate Court orders, and declare the rights and status of the parties thereunder. CR1 88-91.

44

The Saks Parties state that "a party may not artfully plead a title dispute as a declaratory judgment action," citing to I-10 Colony, Inc. v. Chao Kuan Lee, 393 S.W.3d 467, 475 (Tex. App.—Houston [14th Dist.] 2012, pet denied). The Saks Parties, however, have artfully left out an important part of the court's holding in I-10 Colony, which actually provides:

> Given the mandatory language in Property Code section 22.001 ("[a] trespass to try title action is *the* method of determining title") (emphasis added), a party may not artfully plead a title dispute as a declaratory judgment action just to obtain attorney's fees when that claim should have been brought as a trespass-to-try-title action.

A trespass-to-try-title lawsuit is an action to recover possession of land withheld from an owner with a right to immediate possession, and imposes unique pleading and proof requirements. I-10 Colony, 393 S.W.3d at 475; Florey, 212 S.W.3d at 449. Not all actions impacting title and possessory rights to property are necessarily trespass-to-try-title actions, and it is doubtful "that the legislature intended for the trespass-to-try title statute to displace or subsume every statutory or common law claim (e.g. suits to

45

rescind deeds) having such an impact." Id. This case cannot be properly called a trespass-to-try title action.

The Saks Parties also cite Barfield v. Holland, 844 S.W.2d 759, 771 (Tex. App.—Tyler 1992, writ denied), in support of their argument that it is improper to use the UDJA to settle a land title dispute and seek an award of attorney's fees. However, in Barfield, there was no question of "construction" or "validity" of the deeds by which the parties acquired their title, and, therefore, it was not the proper subject matter for a declaratory judgment. As in the I-10 Colony case, the court in Barfield found that the suit was an action for trespass-to-try-title. Barfield, 844 S.W.2d at 771. Also, in that case, there was no question of the ownership of a related partnership and the validity of assignments of interests in such partnership, as there is in this case.

This case is not a trespass-to-try-title action, and the Saks Parties do not argue that it should have properly been brought as one. There is no dispute between Coffeehouse and the Trust as to their ownership interests in the Property or the Partnership, or who is entitled to possession. This is a unique case in which it was necessary to invalidate instruments fraudulently filed by Sandra, and confirm that the Trust still exists as an owner of the Property and the Partnership, so that the Property could be

46

sold and the Partnership could be terminated. Furthermore, much of the requested declaratory relief has to do with voiding the Assignments of Partnership interests, and declaring the interests of its partners, which would not be the subject of a trespass-to-try-title or any other real property title claim. Therefore, the requests to invalidate the fraudulently filed Assignments and the McFadin Deed, and confirm ownership in the Property and the Partnership as a result of such determination, were properly asserted under the UDJA. Therefore, the Trial Court was statutorily authorized to award attorney's fees to Coffeehouse and the Trust.

The Saks Parties further claim that the Judgments in this case did not include any substantial relief that was not recoverable under the causes of action for partition of the Property and winding-up of the Partnership, but the cases cited by the Saks Parties are not on point. In Aaron Rents, Inc. V. Travis Cent. Appraisal Dist., 212 S.W.3d 665 (Tex. App.—Austin 2006, no pet.), the plaintiff appealed a property tax decision of the Travis County Appraisal Review Board to the district court. The appellate court held that the plaintiff could not use the UDJA solely to obtain attorney's fees because, when a statute provides an avenue for attacking an agency order, a declaratory judgment action will not lie to provide redundant remedies.

47

Id. at 669. Another case cited by the Saks Parties, Cytogenix, Inc. v. Waldroff, 213 S.W.3d 479 (Tex. App.—Houston [1st Dist.] 2006, no pet.), is a breach of contract case, in which both the plaintiff and defendant also pleaded for declaratory judgment. The court held that the plaintiffs were not entitled to attorney's fees under the UDJA because they did not recover any actual damages, and they could not use declaratory relief, identical to the breach of contract claim, to recover attorney's fees not otherwise available. Id. at 489-90. Similarly, the court held that, upon reversal of the judgment in favor of plaintiffs, the defendant was not entitled to attorney's fees under the UDJA because its claim for declaratory relief was nothing more than a suit in avoidance of a contract, and it did not recover any actual damages either. Id. at 490-91. These cases are not applicable or determinative of this case.

It is clear that the declaratory relief requested by Coffeehouse and the Trust is not redundant of the other claims. In addition to asking the Trial Court to partition the Property by sale and to wind-up and terminate the Partnership, Appellees also asked the Court to void the invalid instruments and thus declare that Appellants and other parties owned no interest in the Property or the Partnership. This relief is necessary and related to, but not duplicative of, the request for partition of the Property

48

and winding-up and termination of the Partnership. The relief requested in this case is similar to that requested in the Roberts and the Wheeler cases, which were suits for partition and declaratory relief in which the appellate courts affirmed attorney's fees awarded under the UDJA.

In Roberts, the plaintiff sought partition of real and personal property and a declaratory judgment relating to property inherited by her spouse, asking the Court to construe the wills and partition deed by which her spouse obtained his interest in the property in order to resolve the dispute about her ownership of these interests. 394 S.W.3d at 49. On summary judgment, the trial court granted the plaintiff's request for declaratory relief and ruled that she was entitled to attorney's fees. Id. at 48-49. Partition of the property was then ordered after a bench trial. Id. at 49. On appeal, the defendants argued that the plaintiff failed to establish statutory authority for a claim for attorney's fees, but the court of appeals held that because the plaintiff sought declaratory judgment pursuant to the UDJA, the trial court was statutorily authorized to award reasonable and necessary attorney's fees, in its discretion. Id. at 55.

At issue in the Wheeler case was real property originally owned by Ben Jones that was bequeathed to his four children, and then passed down to the children's heirs. 2011 WL 4011455 at *1. Through a series of

purchases, Wheeler obtained a large fractional undivided interest in the property from the heirs of Ben Jones' children. Id. Two of the Jones heirs filed suit against Wheeler and other known and unknown Jones heirs for partition of the property and to declare ownership interests, also seeking to recover the attorney's fees incurred for the common benefit of the joint owners. Id. at *2. The appellate court found that the trial court did not abuse its discretion in awarding attorney's fees under the UDJA, because, in addition to seeking a partition of the property, the plaintiffs also sought declaratory judgment construing the Jones will and certain deeds and other instruments, and determining the joint owners and their proportionate interests. Id. at *9-10.

Coffeehouse appropriately pleaded for declaratory relief as authorized under the UDJA, which relief was not redundant of its request for partition of the Property and winding-up and termination of the Partnership. The Trial Court was statutorily authorized to award attorney's fees to Coffeehouse and the Trust and did not abuse its discretion in doing so.

### ISSUE NO. 2(b): Did Appellants waive any issue regarding failure to segregate attorney's fees?

Appellants also argue that Coffeehouse and the Trust failed to segregate their attorney's fees under the UDJA from their other causes of

action and among the other parties, and therefore, the Trial Court's award was an abuse of discretion. However, Appellants have waived this issue. In a bench trial, "if the trial court awards a fee based upon evidence of services or time spent that should have been segregated but was not, the opposing party must object to the trial court's error by postjudgment motion in order to urge that error on appeal." O'Farrill Avila v. Gonzalez, 974 S.W.2d 237, 249 (Tex. App.—San Antonio 1998, pet. denied) (citing Southern Concrete Co. v. Metrotec Fin. Inc., 775 S.W.2d 446, 450 (Tex. App.—Dallas 1989, no writ)). Appellants filed no motion for new trial, nor did they make any other postjudgment objection regarding failure to segregate. Thus, they have failed to preserve this issue for appeal.

### ISSUE NO. 2(c): Did the Trial Court err in awarding the full amount of attorney's fees requested by Coffeehouse and the Trust?

The Trial Court did not err in awarding the full amount of fees requested by Coffeehouse and the Trust because the attorneys' discrete legal services advanced both the declaratory judgment claim and the suit for partition and winding-up of the Partnership. See Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313 (Tex. 2006). The need to segregate attorney's fees is a question of law, subject to de novo review. Tony Gullo, 212 S.W.3d at 312; Approach Res. I, L.P. v. Clayton, 360 S.W.3d 632, 641

51

(Tex. App.—El Paso 2012, no pet.); Penhollow Custom Homes, LLC v. Kim, 320 S.W.3d 366, 374 (Tex. App.—El Paso 2010, no pet.). In the Trial Court, Coffeehouse's designated expert on attorney's fees, attorney Paul T. Curl, testified as follows:

Q: And as I briefly addressed earlier, we did not segregate the fees in this case. So in your opinion would it have even been possible to segregate the fees and expenses incurred by Broadway Coffeehouse in pursuing its declaratory judgment action to declare the invalid deeds and other instruments void from the fees and expenses incurred by Broadway Coffeehouse in seeking partition of the property and termination of the partnership?

A: I don't think that would be reasonable or practical.

Q: And if you could explain why.

A: Sure. As a practical matter, virtually everything that we did was geared toward the declaratory judgment claim: Fixing ownership interest in the property and the partnership, declaring the deeds void, the other

instruments. And that was really key to this whole thing because the property could not be sold until that was done. And that was a problem with both these instruments clouding the title. So all -- everything -- virtually everything that we did advanced the declaratory judgment claim. And I don't think it would be fair or reasonable to segregate those out and those other -- the other claims. Even if the other claims had not been there, 95 percent or more of the services would still have been required.

Q: And against whom or against what defendants are we seeking an award of attorneys' fees today?

A: We are seeking an award of attorneys' fees against Sandra Saks, Lee Nick McFadin, III, and Landen Saks because they are the parties who had fought us tooth and nail on this case.

Q: Okay.

A: And again as to -- going back to your question about segregation, I don't think you could fairly

53

segregate as between the defendants because really they are the defendants who have caused the fight. The Trust was on our side from the word go. Lauren Saks was on our side once we found out that she had answered. She had filed a pro se answer that initially was not served on us. Diana Flores opposed us represented by Ron Shaw, but when we got to the summary judgment hearing, she folded her tent and approved the judgment. But even she was only making the same arguments basically adopting the same things that Sandra Saks and Lee Nick McFadin were arguing. So there is no question that the opponents were Saks, McFadin, and Landen Saks. And even if the other defendants had not been in the case, we would have been doing virtually the same amount of work. So I don't think we can segregate them out to the defendants.

Dec. RR 44:22-45:23.

The standard set forth in Tony Gullo does not require more precise proof for attorney's fees than for any other claims or expenses. 212 S.W.3d at 314. Based on Mr. Curl's testimony, the Trial Court properly determined that segregation of the requested attorney's fees was not necessary, and did not err in awarding the full amount of fees asked for at trial. See Tony Gullo, 212 S.W.3d at 314 (explaining that, for the trial court to determine that segregation of the contract and fraud claim fees was not necessary, an opinion would have sufficed stating that 95 percent of the attorney's drafting time would have been necessary even if there had been no fraud claim).

**ISSUE NO. 3(a): Is Appellants' Issue No. 3 regarding the amount of the supersedeas bond moot because it has been waived by Appellants, and does this Court therefore lack jurisdiction?**

The Saks Parties endeavor to challenge the Trial Court's Order setting the amount of the supersedeas bond as an abuse of discretion. CR2 457. Texas Rule of Appellate Procedure 24.4(a) prescribes the method for appellate review of the trial court's ruling on the amount of a supersedeas bond. Appendix, tab 16. That review is "by motion in the court of appeals with jurisdiction . . . over the appeal from the judgment in

the case." Id.  Any further appellate review after that motion is "by petition for writ of mandamus in the Supreme Court."  Id.

The Saks Parties filed the motion prescribed by Rule 24.4(a) in this Court on November 3, 2014.  Appendix, tab 12.  This Court denied that motion in an Order signed on November 7, 2014.  Appendix, tab 13.  The Saks Parties then filed a Motion to Reconsider En Banc Motion to Suspend the Judgment and to Review Order Setting the Amount of Supersedeas Bond on November 17, 2014.  Appendix, tab 14.  The Court denied that motion in an Order signed on November 21, 2014.  Appendix, tab 15.  The Saks Parties did not file a petition for writ of mandamus in the Supreme Court of Texas as Rule 24.4(a) directs for further review from either of this Court's Orders.

The Saks Parties present no new arguments on this issue in their Brief.  They offer no ground or argument relating to supersedeas on which the Court has not already ruled in its review of the supersedeas based on the Saks Parties' Motions under Rule 24.4.  The Saks Parties do not argue this Court erred when it denied their motions for review of the trial court's order setting the amount of security.  Nor do The Saks Parties offer any reason why this Court should reconsider its prior Orders.  The Saks Parties' Issue No. 3 challenges the Trial Court's Order setting the amount of the

supersedeas bond, but what the Trial Court did no longer matters. This Court has reviewed what the Trial Court did, and affirmed it.

Thus, the Saks Parties' Issue No. 3 is moot because it has already been reviewed and decided. An issue is moot when the controversy ceases to exist or if the trial court's actions cannot affect the parties' rights. Hoard Gainer Indus. Co., Ltd. v. Gollin, No. 01-03-01320-CV, 2005 WL 1646116, *1-2 (Tex. App.—Houston [1st Dist.] July 14, 2005, no pet.) So it is here with the amount of the supersedeas bond. Because the issue is moot, the Court lacks jurisdiction to decide this issue. Id. And because the Saks Parties did not seek review in the Supreme Court of this Court's Orders or even ask this Court to reconsider its Orders on this issue, the Saks Parties have waived any challenge to the amount for supersedeas. Review of a supersedeas amount is under an abuse of discretion standard, so it presents a question of law. Cf. In re Bass, 113 S.W.3d 735, 738 (Tex. 2003, orig. proc.) (abuse of discretion is error in application of legal principles). This Court has already decided that question of law by denying the Saks Parties' Motions; therefore the law of the case doctrine and the policies on which that doctrine is based prevent further challenge on this issue as well. See Jones Gonzalez, P.C. v. Trinh, 340 S.W.3d 830, 836 (Tex. App.—San Antonio 2011, no pet.).

Furthermore, there is no grant of jurisdiction or prescription of a method for review of orders on superseding judgments other than what is provided in Rule 24.4(a). A motion under Rule 24.4(a) is "[t]he proper method to seek review of a trial court's determination" on suspending enforcement of a judgment. Reagan v. NPOT Partners I, L.P., No. 06-08-00071-CV, 2009 WL 763565, at *7 (Tex. App.—Texarkana March 25, 2009, pet rev. dism'd). Thus, beyond mootness and waiver, Appellants' Issue No. 3 also fails for lack of jurisdiction on this basis as well. Appellants cite Appellate Rule of Procedure 25 as the basis for jurisdiction over their appeal. Appellants' Brief, at 2. Rule 25, however, is not a grant of jurisdiction. It provides the method for commencing an appeal when the Court has subject matter jurisdiction for an appeal. Most commonly, that jurisdiction is under Section 51.012 of the Texas Civil Practice and Remedies Code or Section 22.220 of the Texas Government Code. Those statutes provide this Court jurisdiction over appeals from final judgments, not orders on supersedeas bonds. Appellate courts generally lack jurisdiction over appeals from post-judgment orders on enforcing a judgment. Davis, 2015 WL 1004357 at *5. Following that rule, there is no jurisdiction (under Section 51.012 or Section 22.220) for an appeal from an order on suspending enforcement of a judgment.

Finally, this Court would not have jurisdiction over an appeal of the Order setting the amount of the supersedeas bond because the Saks Parties' Notice of Appeal of this Order was untimely. Pursuant to Texas Rule of Appellate Procedure 26.1, a notice of appeal must be filed within thirty days after the judgment is signed. Appendix, tab 16. The Trial Court's Order on the supersedeas bond was signed on October 31, 2014. CR 457; Appendix, tab 11. On February 20, 2015, 112 days later and on the same day that they filed their brief, the Saks Parties filed a Supplement to Notice of Appeal attempting to add the Order setting the amount of the supersedeas bond to this appeal. Appendix, tab 17. Because the Supplement to Notice of Appeal was filed almost four months after the Order was signed, the appeal was not timely perfected, and the appeal of the Order on the supersedeas bond must be dismissed. See In re A.L.B., 56 S.W.3d 651 (Tex. App.—Waco 2001, no pet.).

**ISSUE NO. 3(b): Did the Trial Court abuse its discretion in setting the amount of the supersedeas bond?**

Finally, if the Court does consider (or reconsider) the substance of the Saks Parties' Issue No. 3, the Court should reject it. Review of the amount of security for supersedeas is a test for abuse of discretion. In re Estate of Hernandez, No. 04-14-00046-CV, 2014 WL 1713566, at *2 (Tex.

App.—San Antonio April 30, 2014, no pet.)  The question for this Court is not whether it would have reached the same conclusion as the Trial Court, but whether the Trial Court acted without reference to any guiding rule or principle or acted arbitrarily or unreasonable.  Id.

The Trial Court did what Texas Rule of Appellate Procedure 24.2 prescribes.  To the extent the Judgment involves an interest in real property, Rule 24.2(a)(2)(A) applies, and directs the Trial Court to set an amount of security of at least the value of the property's rent or revenue. CR2 459; Appendix, tab 16.  The evidence of that monthly rent or revenue was undisputed, and the trial court multiplied the rent by a reasonable estimate of the time for disposing of Appellants' inevitable appeals.  Nov. 14 RR 11:4-19, 29:9-30:6, 50:8-51:20.

If the Judgment is not subject to Rule 24.2(a)(2)(A), then Rule 24.2(a)(2)(B) applies, and the Trial Court had discretion to set the necessary security in an amount the Trial Court decided would be necessary to protect Coffeehouse and the Trust from damage that an appeal might cause.  CR2 459; Nov. RR 21:9-25, 31:16, 32:9; Appendix, tab 16.  The Trial Court's Order, supported by the evidence, does just that, and the Trial Court did not abuse its discretion.  In either event, the Saks Parties' Issue No. 3 should be overruled.

## **PRAYER**

WHEREFORE, Appellees respectfully pray that the Trial Court's Judgment be affirmed and that the Order setting the amount of the supersedeas bond be affirmed, or that appeal of that Order be dismissed for lack of jurisdiction.

Respectfully Submitted,

CURL STAHL GEIS
A PROFESSIONAL CORPORATION
700 North St. Mary's Street, Suite 1800
San Antonio, Texas 78205
Telephone:   (210) 226-2182
Telecopier:   (210) 226-1691


BY:   /s/ Brittany M. Weil
      PAUL T. CURL
      State Bar No. 05255200
      ptcurl@csg-law.com
      BRITTANY M. WEIL
      State Bar No. 24051929
      bmweil@csg-law.com
      HERBERT S. HILL
      State Bar No. 24087722
      hshill@csg-law.com

ATTORNEYS FOR APPELLEE
BROADWAY COFFEEHOUSE, LLC

BINGHAM & LEA, PC
319 Maverick Street
San Antonio, Texas  78212
Telephone:  (210) 224-2894
Telecopier:  (210) 224-0141


BY: /s/ Royal Lea
    ROYAL LEA
    State Bar No. 12069680
    royal@binghamandlea.com

ATTORNEY FOR APPELLEE MARCUS
ROGERS, AS TRUSTEE FOR THE
SAKS CHILDREN TRUST A/K/A
ATFL&L

62

## CERTIFICATE OF COMPLIANCE

I certify that this Brief of Appellant contains 11,480 words (excluding the sections excepted under Texas Rule of Appellate Procedure 9.4(i)(1)).

      /s/ Brittany M. Weil
      BRITTANY M. WEIL


## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of April, 2015, a true and correct copy of the above and foregoing document was sent via electronic service through ProDoc and/or electronic mail, to:

Mr. Royal B. Lea, III
Bingham & Lea, P.C.
319 Maverick Street
San Antonio, Texas  78212
Telecopier: (210) 224-0141
Email: royal@binghamandlea.com

Mr. Philip M. Ross
1006 Holbrook Road
San Antonio, Texas  78218
Email: ross_law@hotmail.com

Ms. Lauren Saks Merriman
825 West Fulton Market, Unit 2
Chicago, Illinois  60607
Email: laurenmerriman@theblackbook-group.com

      /s/ Brittany M. Weil
      BRITTANY M. WEIL

APPENDIX

TAB 1

FILED
6/9/2014 2:23:28 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Maria Jackson

CAUSE NO. 2013-CI-17001

| | | |
|---|---|---|
| BROADWAY COFFEEHOUSE, LLC | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | |
| | § | |
| | § | |
| MARCUS ROGERS, AS TRUSTEE FOR | § | 73RD JUDICIAL DISTRICT |
| THE SAKS CHILDREN TRUST A/K/A | § | |
| ATFL&L, A TEXAS TRUST; SAKS | § | |
| BROADWAY, LLC; SANDRA C. SAKS | § | |
| A/K/A SANDRA GARZA DAVIS; DIANE | § | |
| M. FLORES A/K/A DIANA GARZA FLORES; | § | |
| LAUREN SAKS MERRIMAN A/K/A GLORIA | § | |
| LAUREN NICOLE SAKS;MARGARET | § | |
| LANDEN SAKS A/K/A LANDEN SAKS; LEE | § | |
| NICK McFADIN III; AND 5321 BROADWAY | § | |
| PARTNERS | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Plaintiff, BROADWAY COFFEEHOUSE, LLC ("COFFEEHOUSE"), and files this its Plaintiff's Original Petition, complaining herein of Defendants, MARCUS ROGERS, AS TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L, A TEXAS TRUST (the "TRUST"); SAKS BROADWAY, LLC ("SAKS BROADWAY"); SANDRA C. SAKS A/K/A SANDRA GARZA DAVIS ("SANDRA SAKS"); DIANE M. FLORES A/K/A DIANA GARZA FLORES ("FLORES"); LAUREN SAKS MERRIMAN A/K/A GLORIA LAUREN NICOLE SAKS ("MERRIMAN"); MARGARET LANDEN SAKS A/K/A LANDEN SAKS ("LANDEN SAKS"); LEE NICK McFADIN III ("McFADIN"); and 5321 BROADWAY PARTNERS (the "PARTNERSHIP"), and would respectfully show the Court as follows:

84

## Amount in Controversy and Discovery Level

I.

Plaintiff seeks monetary relief over $200,000.00 but not more than $1,000,000.00, and non-monetary relief.  The amount sought is within the jurisdictional limits of this court.

II.

Discovery in this case should be conducted pursuant to Texas Rule of Civil Procedure 190.3 ("Level 2").

## Parties and Venue

III.

COFFEEHOUSE is a limited liability company organized and existing under the laws of the State of Texas.

The TRUST is an irrevocable trust organized under the laws of the State of Texas, having its principal place of business in Bexar County, Texas, and has appeared herein.

SAKS BROADWAY is a limited liability company which has its principal place of business in Bexar County, Texas, and has appeared herein.

SANDRA SAKS is an individual residing in Bexar County, Texas, and has appeared herein.

FLORES is an individual residing in Bexar County, Texas, and has appeared herein.

MERRIMAN is an individual residing in Chicago, Illinois.  MERRIMAN has been served with process but has not appeared herein.

LANDEN SAKS is an individual residing in Charlottesville, Virginia, and has appeared herein.

2

McFADIN is an individual residing in Bexar County, Texas, and has appeared herein.

The PARTNERSHIP is a general partnership which has its principal place of business in Bexar County, Texas, and may be served with process by serving its managing partner, Marcus Rogers in his capacity as Trustee for the Saks Children Trust a/k/a ATFL&L, a Texas Trust, at 2135 E. Hildebrand, San Antonio, Texas 78209.

IV.

Venue is proper in Bexar County pursuant to Sections 15.002(a)(1), (2) and (3) of the Texas Civil Practice & Remedies Code.

## Background Facts

V.

By Assumption Warranty Deed dated January 11, 1996, recorded as Document Number 96-0008001 in the Official Public Records of Bexar County, Texas, Guy Chipman, Jr. sold to the TRUST certain real property located at 5321 Broadway, San Antonio, Texas (the "Property"), more specifically described as follows:

> Lot Four (4), Block Thirty-Three (33), Alamo Heights, City of
> Alamo Heights, Situated in Bexar County, Texas, according
> to Plat thereof Recorded in Volume 105, Pages 29-296, Deed
> and Plat Records of Bexar County, Texas.

A true and correct copy of such Assumption Warranty Deed is attached hereto as Exhibit "A". Several days later, by Warranty Deed dated January 16, 1996, recorded as Document Number 96-0008012 in Volume 6644, Page 1281 of the Official Public Records of Bexar County, the TRUST conveyed an undivided twenty-five percent (25%) interest in and to the Property to Perry T. Donop, Jr. ("Donop"). A true and correct copy of such Warranty Deed is attached hereto as Exhibit "B".

3

## VI.

On January 16, 1996, Donop and the TRUST also entered into a Partnership Agreement by which the PARTNERSHIP was formed. A true and correct copy of the Partnership Agreement is attached hereto as Exhibit "C". The stated purpose of the PARTNERSHIP was to own, operate and manage the Property. Record title to the Property remained jointly in the name of Donop (an undivided 25% interest) and the TRUST (an undivided 75% interest), although pursuant to Paragraph 5 of the Partnership Agreement, Donop and the TRUST transferred equitable title to the Property to the PARTNERSHIP.

## VII.

By Special Warranty Deed dated August 22, 2012, recorded as Document Number 20120162679 in the Official Public Records of Bexar County, Donop conveyed his undivided 25% interest in and to the Property to COFFEEHOUSE. A true and correct copy of such Special Warranty Deed is attached hereto as Exhibit "D". On the same date, Donop executed an Assignment and Assumption of Partnership Interest, whereby he assigned all of his interest in the PARTNERSHIP to COFFEEHOUSE. A true and correct copy of the Assignment and Assumption of Partnership Interest is attached hereto as Exhibit "E"

## VIII.

On or about September 6, 2012, COFFEEHOUSE and SAKS BROADWAY executed an unrecorded Agreement Confirming Interests in Partnership, which recited that the TRUST had previously transferred all of its right, title and interest in and to the Property and the Partnership to SAKS BROADWAY. However, no such transfer or

4

87

conveyance from the TRUST to SAKS BROADWAY was ever executed, and SAKS BROADWAY does not own any interest in the Property or the PARTNERSHIP.

IX.

On or about August 17, 2011, MERRIMAN filed suit against SANDRA SAKS and FLORES in Cause No. 2011-PC-3466 in Bexar County Probate Court (the "Probate Suit"), for an accounting of the TRUST and to remove FLORES as Trustee, due to FLORES' numerous breaches of fiduciary duty and mismanagement of TRUST assets. On or about December 21, 2011, the day before the hearing to remove FLORES as Trustee, FLORES purported to terminate the TRUST. However, on December 22, 2011, the Probate Court removed FLORES as Trustee and appointed MARCUS ROGERS as Interim Trustee of the TRUST.

X.

The parties to the Probate Suit eventually mediated their claims, and entered into a Mediated Settlement Agreement (the "MSA") effective April 2, 2012. Because of FLORES' purported termination of the TRUST and due to suspicions that FLORES had fraudulently assigned interests in the PARTNERSHIP to SANDRA SAKS, the MSA included an agreement by SANDRA SAKS and FLORES to transfer and assign any and all of their right, title, and interest in and to the PARTNERSHIP and its Property back to the TRUST. In addition to SANDRA SAKS and FLORES, the MSA was also signed by MERRIMAN, LANDEN SAKS and the TRUST. The Probate Court approved the MSA on May 8, 2012. However, SANDRA SAKS, LANDEN SAKS, and FLORES failed to comply with the MSA.

5

## XI.

On or about August 15, 2012, SANDRA SAKS filed of record two documents purportedly executed by FLORES, as Trustee of the TRUST: an Irrevocable Assignment of Partnership Interest dated January 6, 1996, purporting to assign 99 percent (99%) of the TRUST's right, title and interest in the PARTNERSHIP to SANDRA SAKS; and an Assignment of Interest in 5321 Broadway Partners dated December 21, 2011, the day prior to the hearing to remove FLORES as Trustee, purporting to terminate the TRUST and assign its seventy-five percent (75%) interest in the PARTNERSHIP to MERRIMAN and LANDEN SAKS. True and correct copies of these Assignments are attached hereto as Exhibit "F". FLORES had no authority to execute the above-described Assignments, which Assignments were ineffective to transfer any interest in the PARTNERSHIP or any title in and to the Property to SANDRA SAKS, MERRIMAN, or LANDEN SAKS.

## XII.

On or about September 5, 2012, when SANDRA SAKS, LANDEN SAKS and FLORES still had not complied with the MSA, the Probate Court ordered SANDRA SAKS, LANDEN SAKS, MERRIMAN, and the TRUST to attend mediation and arbitration to resolve the disputes over the MSA, as required under the terms of the MSA. A second mediation was unsuccessful and an arbitration was conducted. On or about October 24, 2012, the Arbitrator entered Findings and a Final Award (the "Arbitration Award"), which found that the property described in the MSA, including any interest in the PARTNERSHIP and its Property, are TRUST property. The Arbitration Award also held that the refusal of SANDRA SAKS, LANDEN SAKS and any other party to comply with the MSA's requirement to transfer their right, title and interest in the TRUST property was

6

not made in good faith or for just cause. The Arbitrator also ordered SANDRA SAKS, LANDEN SAKS and any other party to the MSA to execute the required documents necessary to effectuate the transfer, purposes and intents of the MSA. On or about May 7, 2013, the Probate Court confirmed the Arbitration Award, and entered it as a Final Judgment of the Court.

XIII.

Sixteen days after the Probate Court had entered the Arbitration Award as a judgment of the Court, on or about May 23, 2013, SANDRA SAKS filed of record two additional documents: a Transfer Conveyance Assignment of Interest in the 5321 Broadway Partners Agreement, by which she purported to assign all of her right, title and interest in the PARTNERSHIP to McFADIN; and a Deed, by which she purported to convey all of her right, title and interest in the Property to McFADIN. Both instruments are dated effective April 21, 2012, which is the day after the TRUST filed its Motion to Approve Settlement Agreement. True and correct copies of such Assignment and Deed are attached hereto as Exhibit "G". At the time the above-described instruments were executed and filed of record, SANDRA SAKS had no right, title, or interest in the PARTNERSHIP or the Property, and even had she had any such interest, such Assignment and Deed are void and ineffective to transfer any interest in the Property or the PARTNERSHIP because McFADIN acquired any such interest subject to the Probate Suit, the MSA, and the final determination in the Arbitration Award.

XIV.

Despite being ordered by the Arbitrator and the Probate Court to execute the documents necessary to transfer any right, title and interest in the PARTNERSHIP to the

7

TRUST, SANDRA SAKS and LANDEN SAKS continued to refuse to sign such conveyances. Finally, on November 14, 2013, the Court entered an Order in Aid of Enforcement of Judgment, which deems by operation of law that SANDRA SAKS and LANDEN SAKS have executed the required documents transferring all right, title and interest in the PARTNERSHIP and the Property to the TRUST.

## Claims for Relief

## Suit to Quiet Title

### XV.

Any interests asserted by SAKS BROADWAY, FLORES, SANDRA SAKS, LANDEN SAKS, MERRIMAN, and/or McFADIN in the Property are invalid and constitute a cloud on Plaintiff's title, which should be removed. Plaintiff requests that the Court quiet title to and grant exclusive title to the Property to Plaintiff and the TRUST.

## Declaratory Judgment

### XVI.

Pursuant to Section 37.001 et seq. of the Texas Civil Practice & Remedies Code, Plaintiff requests declaratory judgment that SAKS BROADWAY owns no interest in the Property or the PARTNERSHIP, and that the Assignments and Deed described in Paragraphs XI and XIII above are null and void. Plaintiff further requests declaratory judgment that COFFEEHOUSE and the TRUST are the only two partners of the PARTNERSHIP, that the PARTNERSHIP owns equitable title to the Property, that COFFEEHOUSE owns record title to an undivided 25% interest in the Property, and that the TRUST owns record title to an undivided 75% interest in the Property.

8

## Permanent Injunction

### XVII.

Plaintiff further requests that the Court issue an order permanently enjoining SAKS BROADWAY, SANDRA SAKS, FLORES, LANDEN SAKS, MERRIMAN, and/or McFADIN, and all persons claiming by, through, or under them, from asserting any claims to the PARTNERSHIP and the Property under the Assignments and Deed described in Paragraphs IX and X above, or any other prior instruments, whether filed of record or not. Unless such relief is provided, Plaintiff is concerned that such Defendants will continue to assert claims against the Property and the PARTNERSHIP, encumbering and casting a cloud on Plaintiff's enjoyment of the Property. Such conduct will cause irreparable harm to Plaintiff and Plaintiff's Property, for which Plaintiff has no adequate remedy at law.

## Suit for Termination and Winding-Up of the Partnership

### XVIII.

Plaintiff further seeks an order of the Court terminating and winding-up the PARTNERSHIP, pursuant to paragraphs 3 and 16 of the Partnership Agreement and the applicable provisions of the Texas Business Organizations Code.

## Partition

### XIX.

Plaintiff also seeks partition of the Property. Pursuant to Texas Rule of Civil Procedure 760, Plaintiff requests that the Court determine that the PARTNERSHIP owns equitable title to the Property, that Plaintiff owns records title to an undivided 25% interest in the Property, and that the TRUST owns record title to an undivided 75% interest in the

9

Property. The Property cannot be divided in kind; therefore, COFFEEHOUSE seeks an order of sale of the Property.

## Attorney's Fees and Costs

### XX.

Pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code and/or Texas Rule of Civil Procedure 778, Plaintiffs seek to recover their reasonable and necessary attorney's fees, including attorney's fees associated with any stage of appeal, and costs of court.

## Conditions Precedent

### XXI.

All conditions precedent to this action have been performed or have occurred.

WHEREFORE, COFFEEHOUSE respectfully requests that upon a final hearing or trial, it have the following relief:

1.  Judgment quieting title to the Property in Plaintiff, the TRUST and the Partnership.

2.  Declaratory judgment as requested herein.

3.  Injunctive relief as requested herein.

4.  Judgment ordering termination and winding-up of the Partnership

5.  Judgment ordering the partition and sale of the Property.

6.  Reasonable attorney's fees.

7.  Pre-judgment and post-judgment interest.

8.  Costs of suit.

9.  Such other and further relief to which Plaintiff may be justly entitled.

10

Respectfully submitted,

CURL & STAHL
A PROFESSIONAL CORPORATION
700 North St. Mary's Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 226-2182
Telecopier: (210) 226-1691

BY: *Brittany M. Weil*
PAUL T. CURL
State Bar No. 05255200
BRITTANY M. WEIL
State Bar No. 24051929

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of June, 2014, a true and correct copy of the above and foregoing document was served via the following:

Mr. Ronald J. Shaw
The Shaw Corporation                          VIA TELECOPIER
1100 N.W. Loop 410, Suite 700
San Antonio, Texas  78213
Telecopier: (210) 366-0805

Mr. Royal B. Lea, III
Bingham & Lea, P.C.                            VIA E-MAIL
319 Maverick Street
San Antonio, Texas  78212
Telecopier: (210) 224-0141

Mr. Philip M. Ross
1006 Holbrook Road                             VIA E-MAIL
San Antonio, Texas  78218

*Brittany M. Weil*
BRITTANY M. WEIL

11

96- 0008001

## ASSUMPTION WARRANTY DEED

THE STATE OF TEXAS          §

                                           KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF BEXAR          §

THAT GUY CHIPMAN, JR., ("Grantor"), of Bexar County, Texas,

    (i)    FOR AND IN CONSIDERATION of the sum of TEN AND NO/100 DOLLARS ($10.00) and other valuable consideration in hand paid by the Grantee herein named, the receipt of which is hereby acknowledged; and

    (ii)    THE FURTHER CONSIDERATION of the assumption of and agreement to pay by Grantee herein, all of the unpaid balance of principal and interest left owing and unpaid by Grantor and Grantee herein upon one certain Promissory Note secured by liens more particularly described as follows, to-wit:

> One certain Promissory Note dated August 27, 1984, in the original principal sum of One Hundred Fifty Thousand and No/100's Dollars ($150,000.00), executed by Guy Chipman, Jr., and payable to the order of Broadway National Bank, secured by a Deed of Trust, of even date therewith, recorded at Volume 3203, Page 1724, Real Property Records of Bexar County, Texas.

has GRANTED, SOLD AND CONVEYED, and by these presents does GRANT, SELL AND CONVEY unto the SAKS CHILDREN TRUST OR ATFL&L, a Texas trust ("Grantee"), whose address is 4040 Broadway, Suite 603, San Antonio, Texas 78209 the following-described real property in Bexar County, Texas, to-wit:

> Lot Four (4), Block Thirty-three (33), Alamo Heights, City of Alamo Heights, situated in Bexar County, Texas, according to plat thereof recorded in Volume 105, Pages 290-296, Deed and Plat Records of Bexar County, Texas (the "Property").

This conveyance is made and accepted subject to the following matters, which are exceptions from the warranty of title hereinafter provided:

1.    Standby fees, taxes and assessments by any taxing authority for the year 1996, and subsequent years, and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership.

2.    Covenants, conditions and restrictions as set forth in instruments recorded in Volume 437, Page 5, Volume 912, Page 510, and Volume 729, Page 605, Deed Records of Bexar County, Texas.

3.    The Deed of Trust described above securing the indebtedness herein assumed by Grantor.

EXHIBIT "A"

3.    The Deed of Trust described above securing the indebtedness herein assumed by Grantor.

It is expressly understood that Grantor has not made and does not make any representations or warranties, express or implied, as to the condition and state of repair of the Property, its quality, merchantability, suitability or fitness for any uses or purposes, quality, classification or value, nor with respect to any improvements, buildings, or structures situated on the Property. Grantee accepts the Property (including, but not limited to, all improvements located thereon) AS IS, WHERE IS, IN ITS PRESENT CONDITION AND STATE OF REPAIR, AND WITHOUT ANY REPRESENTATIONS, GUARANTEES, OR WARRANTIES, EXPRESS OR IMPLIED, AS TO ITS QUALITY, MERCHANTABILITY, COMPLIANCE WITH LAWS OR REGULATIONS, SUITABILITY OR FITNESS FOR GRANTEE'S INTENDED USE, OR FOR ANY USES OR PURPOSES WHATSOEVER, OR THAT THE PROPERTY HAS BEEN RENDERED FREE FROM ANY DEFECTS, HAZARDS, ENVIRONMENTAL CONTAMINATION, POLLUTION OR DANGEROUS CONDITIONS. GRANTEE HEREBY RELEASES AND AGREES TO INDEMNIFY GRANTOR, AND GRANTOR'S HEIRS AND ASSIGNS, FROM AND AGAINST ANY AND ALL COSTS, EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEY'S FEES, ATTORNEY'S DISBURSEMENTS AND COURT COSTS) DAMAGES, LOSSES, CLAIMS, CAUSES OF ACTION, LIABILITIES, LIENS, ENCUMBRANCES, PENALTIES, FINES, AND CHARGES, REGARDLESS OF WHETHER ANY OF SAID CLAIMS, CAUSES OF ACTION OR OTHER MATTERS ARE FOUNDED IN WHOLE OR IN PART UPON THE ALLEGED NEGLIGENCE OF GRANTOR, ARISING OR RESULTING OR PERTAINING IN ANY WAY TO THE EXISTENCE OF ANY HAZARDOUS SUBSTANCE OR HAZARDOUS WASTE (AS THOSE TERMS ARE DEFINED BY FEDERAL, STATE OR LOCAL ENVIRONMENTAL LAWS OR REGULATIONS) OR OTHER ENVIRONMENTAL CONTAMINATION OR POLLUTION EXISTING ON OR THAT IS ALLEGED TO HAVE EMANATED FROM THE PROPERTY.

TO HAVE AND TO HOLD the above described Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantee, Grantee's successors and assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, successors and assigns to warrant and forever defend all and singular the Property to Grantee and Grantee's successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, subject, however, as aforesaid.

EXECUTED this 11th day of January, 1996.

_____
GUY CHIPMAN, JR.

ASSUMPTION WARRANTY DEED WITH VENDOR'S LIEN
jd\chipman\assume.dec

Book
D   Vol   Page Page 2
06844   01237

ACCEPTED BY THE GRANTEE:

SAKS CHILDREN TRUST OR ATFL&L
A Texas trust

By:  _____
    DIANA M. FLORES, Trustee
    D.F.

STATE OF TEXAS            §

COUNTY OF BEXAR          §

This instrument was acknowledged before me on the 11TH day of January, 1996, by
GUY CHIPMAN, JR.

ALBERT W. HARTMAN III
Notary Public, State of Texas
My Commission Expires Feb. 22, 1997

_____
Notary Public, State of Texas

STATE OF TEXAS            §

COUNTY OF BEXAR          §

Book D  Volm 06644  Page 01238

This instrument was acknowledged before me on the 16TH day of January, 1996, by
Diana M. Flores, Trustee of the SAKS CHILDREN TRUST OR ATFL&L, a Texas trust,
on behalf of said trust.

ALBERT W. HARTMAN III
Notary Public, State of Texas
My Commission Expires Feb. 22, 1997

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:
Stewart Title Company
2961 Mossrock
San Antonio, Texas  78230
Attn:  Alice Titzman

ASSUMPTION WARRANTY DEED WITH VENDOR'S LIEN
jd\chipmun\assume.dee

Page 3

Book    Volm    Page
 D     06644   01239

Any provision herein which restricts the sale, rental, or use of the described
real property because of race is invalid and unenforceable under Federal law.
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on
the date and at the time stamped hereon by me and was duly RECORDED in
the Official Public Records of Real Property of Bexar County, Texas on

JAN 19 1996

COUNTY CLERK BEXAR COUNTY, TEXAS

Filed for Record in:
BEXAR COUNTY, TX
GERRY RICKHOFF, COUNTY CLERK

On  Jan 17 1996

   At  4:17pm

Receipt #:        19253B
Recording:         7.00
Doc/Mgmt :         6.00

Doc/Num  : 96- 0008001

Deputy -Betty Sepulveda

## WARRANTY DEED

96- 0008012

STATE OF TEXAS      §

                  §   KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF BEXAR    §

THAT ATFL&L, A TEXAS TRUST ("Grantor", whether one or more), of Bexar County, Texas, for and in consideration of the sum of TEN AND NO/100 DOLLARS and other good and valuable consideration to the undersigned paid by PERRY DONOP, ("Grantee", whether one or more), has GRANTED, SOLD AND CONVEYED, and by these presents does GRANT, SELL AND CONVEY unto PERRY DONOP, a one-quarter undivided interest in and to all of the following described real property in Bexar County, Texas (the "Property"), to-wit:

LOT FOUR (4), BLOCK THIRTY-THREE (33), ALAMO HEIGHTS, CITY OF ALAMO HEIGHTS, SITUATED IN BEXAR COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN VOLUME 105, PAGES 290-296, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto Grantee, Grantee's heirs, legal representatives, successors and assigns forever; and Grantor does hereby bind Grantor, Grantor's heirs, legal representatives and successors to WARRANT AND FOREVER DEFEND all and singular the Property unto Grantee, Grantee's heirs, legal representatives, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

This conveyance, the Property and all of Grantor's warranties are subject to any and all covenants, conditions, easements, reservations, rights-of-way, restrictions, oil and gas leases, mineral severances and other matters affecting the Property, only to the extent they are still in effect, as evidenced by instruments filed in the public records of Bexar County, Texas, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are still in effect, relating to the Property.

EXECUTED this 16 day of January, 1996.

ATFL&L, A TEXAS TRUST

By: _____

Name: _DIANA M FLORES_

Title: _Trustee_

## EXHIBIT "B"

STATE OF TEXAS                          §
                                        §
COUNTY OF BEXAR                         §

This instrument was acknowledged before me on the _16_ day of January, 1996, by
DIANA M. FLORES TRUSTEE   of ATFL&L, A TEXAS TRUST, who
subscribed his/her name in the capacities therein stated.

ALBERT W. HARTMAN III
Notary Public, State of Texas
My Commission Expires Feb. 22, 1997

Notary Public - State of Texas

AFTER RECORDING, RETURN TO:

PERRY DONOP
1000 E. Basse Road
San Antonio, Texas  78209

Book    Volm    Page
   D    06644   01282

JAN 19 1996

COUNTY CLERK BEXAR COUNTY, TEXAS

Filed for Record in:
BEXAR COUNTY, TX
GERRY RICKHOFF, COUNTY CLERK

On  Jan 17 1996

At  4:19pm

Receipt #:      192543
Recording:        5.00
Doc/Mgmt :        5.00

Doc/Num : 96- 0005012

Deputy -Betty Sepulveda

# PARTNERSHIP AGREEMENT

THE STATE OF TEXAS
COUNTY OF BEXAR

THIS PARTNERSHIP AGREEMENT is made this 16TH day of JANUARY, 1996, between PERRY DONOP of 1000 E. BASSE ROAD, SAN ANTONIO, BEXAR COUNTY, TEXAS 78209 and ATFL&L, A TEXAS TRUST of 4040 BROADWAY, SUITE 603, SAN ANTONIO, BEXAR COUNTY, TEXAS 78209 (the "Partners"). The Partners agree to form a partnership on the terms and conditions set forth in this Agreement.

## NAME

1.    The Partners shall operate under the name of 5321 Broadway Partners.

## PURPOSE

2.    The Partners voluntarily associate themselves together for the purpose of owning, operating and managing real property as agreed to between the partners and specifically, that certain real property located at 5321 Broadway, San Antonio, Bexar County, Texas, and more particularly described as follows (the "Property"):

LOT FOUR (4), BLOCK THIRTY-THREE (33), ALAMO HEIGHTS, CITY OF ALAMO HEIGHTS, SITUATED IN BEXAR COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN VOLUME 105, PAGES 290-296, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

## DURATION

3.    The partnership shall commence on the 16th day of January, 1996, and continue until dissolved by mutual agreement or terminated as provided in this Agreement.

## PLACE OF BUSINESS

4.    The principal place of business of the partnership shall be 5321 Broadway, San Antonio, Texas 78209, and/or such other place as may be mutually agreed on by the Partners.

## INITIAL CAPITAL

5.    Capital to the partnership shall consist of:

PERRY DONOP, a contribution of a 25% undivided interest in and to the Property

ATFL&L, a Texas trust, a contribution of a 75% undivided interest in and to the Property

Both parties each agree that record title shall remain in their respective names and that only equitable title for purposes of managing and operating the Property are hereby being contributed to the Partnership.

If from time to time after the initial contribution the partners shall determine that additional capital is required by the partnership or that the capital of the partnership should be increased, the additional capital required shall be contributed by the partners pro rata according to their initial contributions by deposit in a checking account in the name of the partnership.

## WITHDRAWAL OF CAPITAL

6. No partner shall withdraw any portion of the capital of the partnership without the express written consent of the other partners. If the capital account becomes impaired notwithstanding the foregoing prohibition, the partner causing the impairment shall promptly reimburse the partnership upon demand by the other partners.

Until the capital has been restored, that partner's subsequent partnership profits shall be credited first to the account restoration before they are distributed to that partner.

## PROFITS AND LOSSES

7. Any net profits or losses that may accrue to the partnership shall be distributed to or borne by the Partners pro rata according to their initial contributions.

## SALARIES AND DRAWINGS

8. No Partner shall receive any salary for services rendered to the partnership. The Partners shall have pro rata drawings in such amounts as may be agreed upon by the Partners.

## BOOKS OF ACCOUNT

9. At all times during the continuance of the partnership, the partners shall keep accurate books of account in which all matters relating to the partnership, including all income, expenditures, assets, and liabilities, shall be entered. The books shall be kept on a cash basis and shall be open to examination by either partner at any time.

## FISCAL YEAR

10. The fiscal year of the partnership shall end on the 31st day of December each year.

## ACCOUNTINGS

11. A complete accounting of the partnership affairs as of the close of business on the last day of December of each year shall be rendered to each partner within 45 days after the close of each year. On each such accounting being made, the net profits of the partnership shall be distributed to the partners as provided in this Agreement to the extent that cash is available for such distribution. Except as to manifest errors discovered within 60 days after its rendition, each such accounting shall be final and conclusive as to each partner. A partnership accounting will be prepared at partnership expense and K-1's shall be distributed to partners.

## TIME DEVOTED TO PARTNERSHIP

12. Each partner shall devote any necessary time and attention and use the utmost of their skills and ability to furtherance of the partnership business.

## MANAGEMENT AND AUTHORITY



13. The Trustee for ATFL&L shall be the managing partner of the partnership. ATFL&L shall have authority to bind the partnership in making contracts and incurring obligations in the name and on the credit of the partnership, provided that no partner shall incur any obligations in the name or on the credit of the partnership exceeding $ 1,500.00 without the express written consent of the other partner. Any obligation incurred in violation of this provision shall be charged to and collected from the individual partner incurring such obligation.

## NET PROFITS DEFINED

14. The term "net profits" as used in this Agreement shall mean the net profits of the partnership as determined by generally accepted accounting principles for each accounting period provided for in this Agreement.

## BUY-SELL ON DEATH OF PARTNER

15. The partnership shall not terminate upon the death of a partner

## DISSOLUTION

16. On dissolution of the partnership, the affairs of the partnership shall be wound up, the assets of the partnership liquidated, the debts paid, and the surplus divided among the partners pro rata according to their initial contributions.

## NOTICES

17. Any and all notices between the parties provided for or permitted under this Agreement or by law shall be in writing and shall be deemed duly served when personally delivered to a partner, or, in lieu of such personal service, when deposited in the United States mail, certified, postage prepaid, addressed to the

partner at the address of the principal place of business of the partnership or to such other place as may from time to time be specified in a notice given pursuant to this paragraph as the address for service of notice on the partner.

## CONSENTS AND AGREEMENTS

18. Any and all consents and agreements provided for or permitted by this Agreement shall be in writing and a signed copy of any such consent or agreement shall be filed and kept with the books of the partnership.

## SOLE AND ONLY AGREEMENT

19. This instrument contains the sole and only agreement of the parties relating to their partnership and correctly sets forth the rights, duties and obligations of each to the other in connection with the partnership as of its date. Any prior agreements, promises, negotiations, or representations not expressly set forth in this Agreement are of no force or effect.

## RIGHT OF FIRST REFUSAL

20. The Partnership grants to Perry Donop the right of refusal to purchase the Property on the terms and conditions contained herein. In the event Partnership receives an offer to purchase the Property on terms acceptable to ATFL&L as the managing partner (the "Offer"), the Partnership shall not consummate such sale without first having offered to sell the Property to Perry Donop as herein provided. Partnership shall deliver to Perry Donop a written notice of its receipt of the Offer (the "Notice"). The Notice shall contain a statement by Partnership that it has received the Offer together with a copy of the Offer. If Perry Donop desires to accept the offer made by Partnership as set forth in the Notice ("Partnership's Offer"), Perry Donop must give written notice of such acceptance to Partnership within seventy two hours after the Notice is received by Perry Donop. The acceptance shall include a contract executed by Perry Donop on the same terms as Partnership's Offer. The failure of Perry Donop to timely give such acceptance notice shall be deemed Perry Donop's election not to accept Partnership's Offer. In the event that Perry Donop does elect to accept Partnership's Offer, Partnership and Perry Donop shall enter into a written contract containing all of the terms of the Offer, which contract shall be closed as set forth therein. In the event Perry Donop does not elect to accept Partnership's Offer, Partnership may consummate such sale, on the terms and conditions and with the party or parties, and only on such terms and conditions and with the party or parties, set forth and named in the Offer. In the event Perry Donop does not elect to accept Partnership's Offer, and Partnership amends in any way the terms of the Offer (or any contract entered into in connection therewith) or does not consummate the sale of the Property in accordance with the terms of and to the party or parties named in the Offer, it must re-offer the Partnership's Property to Perry Donop, in accordance with the same procedure outlined above, before selling said Property pursuant to such amended Offer or pursuant to any new Offer.

# PROOF OF PAYMENT

21.    ATFL&L, a Texas trust, must show proof of payment on any notes secured by a lien on the Property to Perry Donop.

EXECUTED on this the 16th day of January, 1996.

ATFL&L, A TEXAS TRUST

BY:X _____

NAME: _____

TITLE: _____

_____

Perry Donop JR.

Lot Four (4), Block Thirty Three (33), Alamo Heights, City of Alamo Heights, situated in Bexar County, Texas according to plat thereof recorded in Volume 105, Pages 290-296, Deed and Plat Records of Bexar County.

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## SPECIAL WARRANTY DEED

**Date:**       August 22, 2012

**Grantor:**    Perry T. Donop, Jr., a single man

**Grantor's Mailing Address:**      1000 E. Basse Road, Suite 110
San Antonio, Texas, 78209

**Grantee:**    Broadway Coffeehouse, LLC, a Texas limited liability company

**Grantee's Mailing Address:**      1000 E. Basse Road, Suite 110
San Antonio, Texas, 78209

**Consideration:** Cash in the amount of $10.00 plus other good and valuable consideration.

**Property (including any improvements):**

An undivided twenty-five percent (25%) interest in and to: Lot Four (4), Block Thirty-three (33), Alamo Heights, City of Alamo Heights, situated in Bexar County, Texas, according to the plat thereof recorded in Volume 105, Pages 290-296, Deed and Plat Records of Bexar County, Texas.

**Reservations from Conveyance:**    None

**Exceptions to Conveyance and Warranty:** This conveyance is made and accepted subject to easements, conditions and restrictions of record to the extent they are still in effect.

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Grantee, Grantee's successors and assigns forever; and Grantor does hereby bind Grantor, Grantor's successors and assigns to WARRANT AND FOREVER DEFEND all and singular the Property unto the said Grantee, Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

When the context requires, singular nouns and pronouns include the plural.

Perry T. Donop, Jr.

Page 1 of 2

107                                **EXHIBIT "D"**

STATE OF TEXAS                    )

COUNTY OF BEXAR                   )

This instrument was acknowledged before me on August 22, 2012, by Perry T. Donop, Jr.


ROXE ANN JORDAN
MY COMMISSION EXPIRES
JANUARY 11, 2013

_____
Notary Public, State of Texas

After recording return to:

Broadway Coffeehouse, LLC
1000 E. Basse Road, Suite 110
San Antonio, Texas, 78209

Doc# 20120162679
# Pages 3
08/22/2012  4:36PM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $20.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
08/22/2012  4:36PM
COUNTY CLERK, BEXAR COUNTY TEXAS



## ASSIGNMENT AND ASSUMPTION OF PARTNERSHIP INTEREST

For value received, PERRY T. DONOP, JR. ("Assignor"), being the owner of an undivided twenty-five percent (25%) partnership interest of 5321 BROADWAY PARTNERS, a Texas general partnership (the "Partnership"), hereby transfers and assigns to BROADWAY COFFEEHOUSE, LLC, a Texas limited liability company ("Assignee"), Assignor's undivided twenty-five percent (25%) partnership interest.

By Assignee's signature below, Assignee hereby agrees to abide by all of the terms and conditions of the Partnership Agreement as it may be amended from time to time.

SIGNED and effective this _22_ day of August, 2012.

ASSIGNOR:

PERRY T. DONOP, JR.

ASSIGNEE:

BROADWAY COFFEEHOUSE, LLC

By: _____
PERRY T. DONOP, JR., Manager

EXHIBIT "E"

SCANNED

# ASSIGNMENT OF INTEREST IN THE 5321 BROADWAY PARTNERS A

## TEXAS GENERAL PARTNESHIP

## AFFIDAVIT OF SANDRA SAKS

| | |
|---|---|
| STATE OF TEXAS | § |
| COUNTY OF BEXAR | § |

PI2-20120157436-12

Before me the undersigned notary, on this day personally appeared SANDRA SAKS also known as Sandra Saks Davis a person known to me. After I administered an oath to her, upon her oath she said:

1. "My name is SANDRA SAKS. I am over eighteen years of age, and I am fully capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I the settlor of a Trust that is referred to as the Saks Family Trust. On or about December 21, 2011. I witnessed Diana Flores, the former Trustee of the Saks Family Trust, sign the attached instrument EXHIBIT 'A', entitled ASSIGNMENT OF INTEREST IN THE 5321 BROADWAY PARTNERS A TEXAS GENERAL PARTNERSHIP. The signing occurred at the Law Offices of Ronald Shaw in San Antonio, TX, and I was present to observe the signing of the instrument. Accordingly, I can affirm that the attached instrument that is being recorded in the Bexar County records is a true and accurate copy of the original instrument that I witnessed Diana Flores sign and Ronald J. Shaw notarize. The original was Hand Delivered to Lauren Saks c/o Jonathan Yedor Heinrichs De Gennaro, PC., 100 Northeast Loop 410, Suite 1075 San Antonio,Texas 78216. The current whereabouts of the original document is unknown.

1

_initials_

Book 15643   Page 525   12pgs

Further affiant sayeth naught."

SANDRA SAKS

SWORN TO and SUBSCRIBED before me on this 15 day of August 2012.

Notary Public
Printed Name: JESSE MARTINEZ JR
Commission Expires: 2-3-13

JESSE MARTINEZ, JR.
Notary Public, State of Texas
My Comm. Expires 02-03-2013

2

initials

## ASSIGNMENT OF INTEREST IN THE
## 5321 BROADWAY PARTNERS. A TEXAS GENERAL PARTNERSHIP

STATE OF TEXAS                                §

COUNTY OF BEXAR                         §

This Assignment of Interest in the 5321 Broadway Partners, a Texas General Partnership, ("Assignment") is made effective December 21, 2011, by the ATFL&L, A Texas Trust (the "Trust"), Assignor, to Lauren Saks and Landen Saks, Assignees, share and share alike, as part of the termination of the Trust.

WHEREAS, on or before January 6, 1996, the Trust acquired a seventy-five percent (75%) interest in the 5321 Broadway Partners, a Texas General Partnership, subject to the terms and conditions set forth in the Partnership Agreement between the Trust, and Perry Donop and any amendments thereto and the Agreement between Sandra C. Saks and Diana Flores, Trustee for the Trust;

WHEREAS, the Trust is being terminated effective December 21, 2011; and

WHEREAS, Lauren Saks and Landen Saks are the sole beneficiaries of the Trust.

NOW, THEREFORE, the Trust transfers, conveys, and assigns its seventy-five percent (75%) interest in the 5321 Broadway Partners, a Texas General Partnership, to Lauren Saks and Landen Saks, share and share alike, subject to the following:

1.      The terms and conditions set forth in the Partnership Agreement between the Trust, and Perry Donop, a copy of which is attached as Exhibit "A" to and incorporated into this Assignment in its entirety, and any amendments thereto; and

2.      The Agreement between Sandra C. Saks and the Trust, a copy of which is attached as Exhibit "B" to and incorporated into this Assignment in its entirety.

EXECUTED on December 21, 2011, by Diana Flores solely in her capacity as Trustee of ATFL&L, Assignor, and not individually and any and all liabilities in connection herewith are solely those of Assignor.

ATFL&L, A Texas Trust, Assignor

By: _____
Diana Flores, Trustee

STATE OF TEXAS                          §

COUNTY OF BEXAR                          §

      Before me, the undersigned Notary Public, on December 21, 2011, personally appeared Diana Flores, Trustee for ATFL&L, A Texas Trust, and acknowledged to me that she executed this Assignment of Interest in the 5321 Broadway Partners, a Texas General Partnership, for the purposes and consideration therein expressed, and in the capacity therein stated.



RONALD JAMES SHAW
MY COMMISSION EXPIRES
March 25, 2013

Ronald J. Shaw
Notary Public, State of Texas

My Commission Expires: _____

2

# PARTNERSHIP AGREEMENT

THE STATE OF TEXAS
COUNTY OF BEXAR

THIS PARTNERSHIP AGREEMENT is made this 16TH day of JANUARY, 1996, between PERRY DONOP of 1000 E. BASSE ROAD, SAN ANTONIO, BEXAR COUNTY, TEXAS 78209 and ATFL&L, A TEXAS TRUST of 4040 BROADWAY, SUITE 603, SAN ANTONIO, BEXAR COUNTY, TEXAS 78209 (the "Partners"). The Partners agree to form a partnership on the terms and conditions set forth in this Agreement.

## NAME

1. The Partners shall operate under the name of 5321 Broadway Partners.

## PURPOSE

2. The Partners voluntarily associate themselves together for the purpose of owning, operating and managing real property as agreed to between the partners and specifically, that certain real property located at 5321 Broadway, San Antonio, Bexar County, Texas, and more particularly described as follows (the "Property"):

LOT FOUR (4), BLOCK THIRTY-THREE (33), ALAMO HEIGHTS, CITY OF ALAMO HEIGHTS, SITUATED IN BEXAR COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN VOLUME 105, PAGES 290-296, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

## DURATION

3. The partnership shall commence on the 16th day of January, 1996, and continue until dissolved by mutual agreement or terminated as provided in this Agreement.

## PLACE OF BUSINESS

4. The principal place of business of the partnership shall be 5321 Broadway, San Antonio, Texas 78209, and/or such other place as may be mutually agreed on by the Partners.

## INITIAL CAPITAL

5. Capital to the partnership shall consist of:

PERRY DONOP, a contribution of a 25% undivided interest in and to the Property



EXHIBIT

A

Blumberg No. 5119

ATFL&E, a Texas trust, a contribution of a 75% undivided interest in and to the Property

Both parties each agree that record title shall remain in their respective names and that only equitable title for purposes of managing and operating the Property are hereby being contributed to the Partnership.

If from time to time after the initial contribution the partners shall determine that additional capital is required by the partnership or that the capital of the partnership should be increased, the additional capital required shall be contributed by the partners pro rata according to their initial contributions by deposit in a checking account in the name of the partnership.

## WITHDRAWAL OF CAPITAL

6. No partner shall withdraw any portion of the capital of the partnership without the express written consent of the other partners. If the capital account becomes impaired notwithstanding the foregoing prohibition, the partner causing the impairment shall promptly reimburse the partnership upon demand by the other partners.

Until the capital has been restored, that partner's subsequent partnership profits shall be credited first to the account restoration before they are distributed to that partner.

## PROFITS AND LOSSES

7. Any net profits or losses that may accrue to the partnership shall be distributed to or borne by the Partners pro rata according to their initial contributions.

## SALARIES AND DRAWINGS

8. No Partner shall receive any salary for services rendered to the partnership. The Partners shall have pro rata drawings in such amounts as may be agreed upon by the Partners.

## BOOKS OF ACCOUNT

9. At all times during the continuance of the partnership, the partners shall keep accurate books of account in which all matters relating to the partnership, including all income, expenditures, assets, and liabilities, shall be entered. The books shall be kept on a cash basis and shall be open to examination by either partner at any time.

## FISCAL YEAR

10. The fiscal year of the partnership shall end on the 31st day of December each year.

116

## ACCOUNTINGS

11. A complete accounting of the partnership affairs as of the close of business on the last day of December of each year shall be rendered to each partner within 45 days after the close of each year. On each such accounting being made, the net profits of the partnership shall be distributed to the partners as provided in this Agreement to the extent that cash is available for such distribution. Except as to manifest errors discovered within 60 days after its rendition, each such accounting shall be final and conclusive as to each partner. A partnership accounting will be prepared at partnership expense and K-1's shall be distributed to partners.

## TIME DEVOTED TO PARTNERSHIP

12. Each partner shall devote any necessary time and attention and use the utmost of their skills and ability to furtherance of the partnership business.

## MANAGEMENT AND AUTHORITY

13. The Trustee for ATFL&L shall be the managing partner of the partnership. ATFL&L shall have authority to bind the partnership in making contracts and incurring obligations in the name and on the credit of the partnership, provided that no partner shall incur any obligations in the name or on the credit of the partnership exceeding $ 1,500.00 without the express written consent of the other partner. Any obligation incurred in violation of this provision shall be charged to and collected from the individual partner incurring such obligation.

## NET PROFITS DEFINED

14. The term "net profits" as used in this Agreement shall mean the net profits of the partnership as determined by generally accepted accounting principles for each accounting period provided for in this Agreement.

## BUY-SELL ON DEATH OF PARTNER

15. The partnership shall not terminate upon the death of a partner

## DISSOLUTION

16. On dissolution of the partnership, the affairs of the partnership shall be wound up, the assets of the partnership liquidated, the debts paid, and the surplus divided among the partners pro rata according to their initial contributions.

## NOTICES

17. Any and all notices between the parties provided for or permitted under this Agreement or by law shall be in writing and shall be deemed duly served when personally delivered to a partner, or, in lieu of such personal service, when deposited in the United States mail, certified, postage prepaid, addressed to the

117

partner at the address of the principal place of business of the partnership or to such other place as may from time to time be specified in a notice given pursuant to this paragraph as the address for service of notice on the partner.

## CONSENTS AND AGREEMENTS

18. Any and all consents and agreements provided for or permitted by this Agreement shall be in writing and a signed copy of any such consent or agreement shall be filed and kept with the books of the partnership.

## SOLE AND ONLY AGREEMENT

19. This instrument contains the sole and only agreement of the parties relating to their partnership and correctly sets forth the rights, duties and obligations of each to the other in connection with the partnership as of its date. Any prior agreements, promises, negotiations, or representations not expressly set forth in this Agreement are of no force or effect.

## RIGHT OF FIRST REFUSAL

20. The Partnership grants to Perry Donop the right of refusal to purchase the Property on the terms and conditions contained herein. In the event Partnership receives an offer to purchase the Property on terms acceptable to ATFL&L as the managing partner (the "Offer"), the Partnership shall not consummate such sale without first having offered to sell the Property to Perry Donop as herein provided. Partnership shall deliver to Perry Donop a written notice of its receipt of the Offer (the "Notice"). The Notice shall contain a statement by Partnership that it has received the Offer together with a copy of the Offer. If Perry Donop desires to accept the offer made by Partnership as set forth in the Notice ("Partnership's Offer"), Perry Donop must give written notice of such acceptance to Partnership within seventy two hours after the Notice is received by Perry Donop. The acceptance shall include a contract executed by Perry Donop on the same terms as Partnership's Offer. The failure of Perry Donop to timely give such acceptance notice shall be deemed Perry Donop's election not to accept Partnership's Offer. In the event that Perry Donop does elect to accept Partnership's Offer, Partnership and Perry Donop shall enter into a written contract containing all of the terms of the Offer, which contract shall be closed as set forth therein. In the event Perry Donop does not elect to accept Partnership's Offer, Partnership may consummate such sale, on the terms and conditions and with the party or parties, and only on such terms and conditions and with the party or parties, set forth and named in the Offer. In the event Perry Donop does not elect to accept Partnership's Offer, and Partnership amends in any way the terms of the Offer (or any contract entered into in connection therewith) or does not consummate the sale of the Property in accordance with the terms of and to the party or parties named in the Offer, it must re-offer the Partnership's Property to Perry Donop, in accordance with the same procedure outlined above, before selling said Property pursuant to such amended Offer or pursuant to any new Offer.

118

21. ATFL&L, a Texas trust, must show proof of payment on any notes secured by a lien on the Property to Perry Donop.

EXECUTED on this the 16th day of January, 1996.

ATFL&L, A TEXAS TRUST

BY:_____

NAME:_____

TITLE:_____

_____
Perry Donop, Jr.

# IRREVOCABLE ASSIGNMENT OF PARTNERSHIP INTEREST

STATE OF TEXAS                    §

COUNTY OF TEXAS                   §

This Assignment of Partnership Interest and Agreement ("Agreement") is made and effective the 6TH day of January, 1996 by and between ATFL&L, aka The Saks Children Family Trust by Diane Flores, Trustee ("Assignor") for the purposes of transferring, conveying and assigning unto Sandra Davis or her nominee ("Assignee") the partnership interests hereinafter defined under the terms and conditions hereinafter set forth.

## WITNESSETH:

WHEREAS, "Assignor" and "Assignee" wish to enter into this Agreement to effect the transfer of a portion of the Partnership Interests of "Assignor" to "Assignee" effective immediately as governed by the terms of this Agreement; and

WHEREAS, Assignor is a Seventy Five (75%) percent Partner in 5321 Broadway Partners, which is or will be the owner of the property (the "Property") being specifically described on Exhibit "A", attached hereto and incorporated herein for all purposes;

NOW, THEREFORE ATFL&L aka The Saks Children Family Trust, a Texas Trust. Trust does hereby transfer, convey and assign to Sandra Davis, Ninety Nine (99%) percent of all its right, title and interest, whether real or personal, in the aforesaid Partnership, that is being a net transfer, conveyance and assignment of Seventy Four (74%) percent of the total ownership in the Partnership upon the following terms and conditions.

1.) Sandra Davis shall make available in advance the sum of at least Sixth Five Thousand Two Hundred Fifty and no/100 ($65,250.00) Dollars on behalf of ATFL&L aka The Saks Children Family Trust which will be required for the purchase of the "Property" by 5321 Broadway Partners.

2.) From the date of this Agreement, henceforth, although not specifically recited in the 5321 Broadway Partners Partnership Agreement, Sandra Davis shall be considered a beneficial and equitable owner, pursuant to the irrevocable interest conveyed herein, including all rights to distribution(s) of monies from the Partnership and Sandra Davis hereby agrees to be bound by the terms and conditions of the Partnership Agreement in its ownership interest.

EXHIBIT

B

1

3.) Notwithstanding any provisions herein to the contrary, any and all distributions of income, gained excess cash or other distributions by 5321 Broadway Partners to ATFL&L aka The Saks Children Family Trust shall be distributed first and applied to the return to Sandra Davis of the above stated amount of capital contribution and all other money by Sandra Davis paid to 5321 Broadway Partners in the future. Only after all money is paid back to Sandra Davis will the distributions by 5321 Partners be paid *pro rata* of their interest with 5321 Broadway Partners to Sandra Davis and ATFL&L aka The Saks Children Family Trust.

4.) ("Assignor") and ("Assignee") understand their representative ownership in the Partnership is personal property and shall be treated as such.

5.) The purpose of this Assignment is intended to form a partnership relationship between "Assignor" and "Assignee". This Assignment grants and divests in "Assignee" any title in and to the Property which "Assignor" may have by virtue of the Partnership or otherwise and "Assignor" agrees to consult with "Assignee" to approve, disapprove or participate in any decision making with respect to any aspect of the ownership, management, financing, leasing or development of the Property to the extent "Assignor" is granted these rights under the 5321 Broadway Partners Agreement.

6.) This Agreement shall be binding upon and inure to the benefit of the "Assignee" and "Assignor" and their respective heirs, executors and legal representatives, successor and assigns. Whenever this instrument is referenced or a party is made such reference shall be deemed to include a reference to the heirs, executors, legal representatives, successors and any permitted assigns of such party.

7.) All terms and condition above are hereby agreed to and in full effect. This Assignment contains the entire agreement between the parties hereto relative to the Assignment of the partnership interest covered herein. *January 6 1996*

ASSIGNOR:

By: _____

DIANA G. FLORES in her capacity as Trustee of ATFL&L, aka the Saks Children Family Trust, a Texas Trust

By: _____

2

# EXHIBIT A

## LEGAL DESCRIPTION

Tax Parcel Number: 04024-043-0011

That certain tract of land situated in the County of Bexar, State of Texas and more particularly described as Lot 4, Block 33, C.B. 4024, Alamo Heights subdivision.

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

**AUG 1 5 2012**

COUNTY CLERK BEXAR COUNTY, TEXAS

**RECORDER'S MEMORANDUM**
AT THE TIME OF RECORDATION, THIS INSTRUMENT WAS FOUND TO BE INADEQUATE FOR THE BEST PHOTOGRAPHIC REPRODUCTION BECAUSE OF ILLEGIBILITY, CARBON OR PHOTO COPY, DISCOLORED PAPER ETC.

Doc# 20120157436 Fees: $60.00
08/15/2012   4:34PM # Pages 12
Filed & Recorded in the Official
Public Records of  BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

122

SCANNED

## 5321 BROADWAY, TEXAS, BEXAR COUNTY, TEXAS
## TRANSFER CONVEYANCE ASSIGNMENT OF INTEREST IN
## THE 5321 BROADWAY PARTNERS AGREEMENT

STATE OF TEXAS       §

COUNTY OF BEXAR       §

PI2-20130103925-8

This Transfer Conveyance Assignment of rights, interest and title in the 5321 Broadway Partners, a Texas General Partnership, ("Assignment") is made effective April 21, 2012, by Sandra C. Saks to Lee Nick McFadin III.

NOW THEREFORE, Sandra C. Saks transfers, conveys, and assigns 100% of all of Sandra C. Saks' rights, title and interest in 5321 Broadway Partners, a Texas General Partnership, to Lee Nick McFadin III, 5321 Broadway Partners Agreement, a copy of which is attached as Exhibit "A" to and incorporated into this Assignment in its entirety, and any amendments thereto.

Subject property at 5321 Broadway and the property more particularly described in Exhibit "B".

Sandra C. Saks

Book 16124    Page 1562    8pgs

EXHIBIT "G"

# PARTNERSHIP AGREEMENT

THE STATE OF TEXAS
COUNTY OF BEXAR

THIS PARTNERSHIP AGREEMENT is made this 16TH day of JANUARY, 1996, between PERRY DONOP of 1000 E. BASSE ROAD, SAN ANTONIO, BEXAR COUNTY, TEXAS 78209 and ATFL&L, A TEXAS TRUST of 4040 BROADWAY, SUITE 603, SAN ANTONIO, BEXAR COUNTY, TEXAS 78209 (the "Partners"). The Partners agree to form a partnership on the terms and conditions set forth in this Agreement.

## NAME

1. The Partners shall operate under the name of 5321 Broadway Partners.

## PURPOSE

2. The Partners voluntarily associate themselves together for the purpose of owning, operating and managing real property as agreed to between the partners and specifically, that certain real property located at 5321 Broadway, San Antonio, Bexar County, Texas, and more particularly described as follows (the "Property"):

   LOT FOUR (4), BLOCK THIRTY-THREE (33), ALAMO HEIGHTS, CITY OF ALAMO HEIGHTS, SITUATED IN BEXAR COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN VOLUME 105, PAGES 290-296, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

## DURATION

3. The partnership shall commence on the 16th day of January, 1996, and continue until dissolved by mutual agreement or terminated as provided in this Agreement.

## PLACE OF BUSINESS

4. The principal place of business of the partnership shall be 5321 Broadway, San Antonio, Texas 78209, and/or such other place as may be mutually agreed on by the Partners.

## INITIAL CAPITAL

5. Capital to the partnership shall consist of:

   PERRY DONOP, a contribution of a 25% undivided interest in and to the Property

ATFL&L, a Texas trust, a contribution of a 75% undivided interest in and to the Property

Both parties each agree that record title shall remain in their respective names and that only equitable title for purposes of managing and operating the Property are hereby being contributed to the Partnership.

If from time to time after the initial contribution the partners shall determine that additional capital is required by the partnership or that the capital of the partnership should be increased, the additional capital required shall be contributed by the partners pro rata according to their initial contributions by deposit in a checking account in the name of the partnership.

## WITHDRAWAL OF CAPITAL

6. No partner shall withdraw any portion of the capital of the partnership without the express written consent of the other partners. If the capital account becomes impaired notwithstanding the foregoing prohibition, the partner causing the impairment shall promptly reimburse the partnership upon demand by the other partners.

Until the capital has been restored, that partner's subsequent partnership profits shall be credited first to the account restoration before they are distributed to that partner.

## PROFITS AND LOSSES

7. Any net profits or losses that may accrue to the partnership shall be distributed to or borne by the Partners pro rata according to their initial contributions.

## SALARIES AND DRAWINGS

8. No Partner shall receive any salary for services rendered to the partnership. The Partners shall have pro rata drawings in such amounts as may be agreed upon by the Partners.

## BOOKS OF ACCOUNT

9. At all times during the continuance of the partnership, the partners shall keep accurate books of account in which all matters relating to the partnership, including all income, expenditures, assets, and liabilities, shall be entered. The books shall be kept on a cash basis and shall be open to examination by either partner at any time.

## FISCAL YEAR

10. The fiscal year of the partnership shall end on the 31st day of December each year.

## ACCOUNTINGS

11. A complete accounting of the partnership affairs as of the close of business on the last day of December of each year shall be rendered to each partner within 45 days after the close of each year. On each such accounting being made, the net profits of the partnership shall be distributed to the partners as provided in this Agreement to the extent that cash is available for such distribution. Except as to manifest errors discovered within 60 days after its rendition, each such accounting shall be final and conclusive as to each partner. A partnership accounting will be prepared at partnership expense and K-1's shall be distributed to partners.

## TIME DEVOTED TO PARTNERSHIP

12. Each partner shall devote any necessary time and attention and use the utmost of their skills and ability to furtherance of the partnership business.

## MANAGEMENT AND AUTHORITY



13. The Trustee for ATFL&L shall be the managing partner of the partnership. ATFL&L shall have authority to bind the partnership in making contracts and incurring obligations in the name and on the credit of the partnership, provided that no partner shall incur any obligations in the name or on the credit of the partnership exceeding $ 1,500.00 without the express written consent of the other partner. Any obligation incurred in violation of this provision shall be charged to and collected from the individual partner incurring such obligation.

## NET PROFITS DEFINED

14. The term "net profits" as used in this Agreement shall mean the net profits of the partnership as determined by generally accepted accounting principles for each accounting period provided for in this Agreement.

## BUY-SELL ON DEATH OF PARTNER

15. The partnership shall not terminate upon the death of a partner

## DISSOLUTION

16. On dissolution of the partnership, the affairs of the partnership shall be wound up, the assets of the partnership liquidated, the debts paid, and the surplus divided among the partners pro rata according to their initial contributions.

## NOTICES

17. Any and all notices between the parties provided for or permitted under this Agreement or by law shall be in writing and shall be deemed duly served when personally delivered to a partner, or, in lieu of such personal service, when deposited in the United States mail, certified, postage prepaid, addressed to the

partner at the address of the principal place of business of the partnership or to such other place as may from time to time be specified in a notice given pursuant to this paragraph as the address for service of notice on the partner.

## CONSENTS AND AGREEMENTS

18. Any and all consents and agreements provided for or permitted by this Agreement shall be in writing and a signed copy of any such consent or agreement shall be filed and kept with the books of the partnership.

## SOLE AND ONLY AGREEMENT

19. This instrument contains the sole and only agreement of the parties relating to their partnership and correctly sets forth the rights, duties and obligations of each to the other in connection with the partnership as of its date. Any prior agreements, promises, negotiations, or representations not expressly set forth in this Agreement are of no force or effect.

## RIGHT OF FIRST REFUSAL

20. The Partnership grants to Perry Donop the right of refusal to purchase the Property on the terms and conditions contained herein. In the event Partnership receives an offer to purchase the Property on terms acceptable to ATFL&L as the managing partner (the "Offer"), the Partnership shall not consummate such sale without first having offered to sell the Property to Perry Donop as herein provided. Partnership shall deliver to Perry Donop a written notice of its receipt of the Offer (the "Notice"). The Notice shall contain a statement by Partnership that it has received the Offer together with a copy of the Offer. If Perry Donop desires to accept the offer made by Partnership as set forth in the Notice ("Partnership's Offer"), Perry Donop must give written notice of such acceptance to Partnership within seventy two hours after the Notice is received by Perry Donop. The acceptance shall include a contract executed by Perry Donop on the same terms as Partnership's Offer. The failure of Perry Donop to timely give such acceptance notice shall be deemed Perry Donop's election not to accept Partnership's Offer. In the event that Perry Donop does elect to accept Partnership's Offer, Partnership and Perry Donop shall enter into a written contract containing all of the terms of the Offer, which contract shall be closed as set forth therein. In the event Perry Donop does not elect to accept Partnership's Offer, Partnership may consummate such sale, on the terms and conditions and with the party or parties, and only on such terms and conditions and with the party or parties, set forth and named in the Offer. In the event Perry Donop does not elect to accept Partnership's Offer, and Partnership amends in any way the terms of the Offer (or any contract entered into in connection therewith) or does not consummate the sale of the Property in accordance with the terms of and to the party or parties named in the Offer, it must re-offer the Partnership's Property to Perry Donop, in accordance with the same procedure outlined above, before selling said Property pursuant to such amended Offer or pursuant to any new Offer.

## PROOF OF PAYMENT

21. ATFL&L, a Texas trust, must show proof of payment on any notes secured by a lien on the Property to Perry Donop.

EXECUTED on this the 16th day of January, 1996.

ATFL&L, A TEXAS TRUST

BY: _Diana Hows_

NAME: _____

TITLE: _Trustee_

_Perry Donop_

Perry Donop Jr.

Lot Four (4), Block Thirty Three (33), Alamo Heights, City of Alamo Heights, situated in Bexar County, Texas according to plat thereof recorded in Volume 105, Pages 290-296, Deed and Plat Records of Bexar County.

SCANNED

# DEED
## 5321 BROADWAY, SAN ANTONIO, TEXAS

EFFECTIVE DATE:      April 21, 2012

GRANTOR:          Sandra C. Saks

PI2-20130103922-3

GRANTEE:          Lee Nick McFadin III

CONSIDERATION:      For value received, Sandra C. Saks grants, conveys, assigns, deeds to Lee Nick McFadin III 100% of Sandra C. Saks' rights, interest, title to the following described property:

> All of the property and improvements lying in Bexar County, Texas commonly known as <u>5321 Broadway</u>, San Antonio, Texas and all the property commonly known as being more particularly described in Exhibit "A", which is attached to and incorporated into this Deed.

TO HAVE AND TO HOLD the Property in Exhibit "A" Lee Nick McFadin III and McFadin's successors and grants, conveys, assigns, deeds forever, and Sandra C. Saks does hereby bind Sandra C. Saks, Sandra C. Saks' successors and assigns, to warrant and forever defend, all and singular, the property in Exhibit "A" unto Lee Nick McFadin III and McFadin's heirs successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Sandra C. Saks, but not otherwise, but subject, however, as aforesaid.

_____
Sandra C. Saks

Book 16124   Page 1554   3pgs

Lot Four (4), Block Thirty Three (33), Alamo Heights, City of Alamo Heights, situated in Bexar County, Texas according to plat thereof recorded in Volume 105, Pages 290-296, Deed and Plat Records of Bexar County.

## AFFIDAVIT OF SANDRA C. SAKS

STATE OF TEXAS §

COUNT OF BEXAR §

Before me the undersigned notary, on this day personally appeared SANDRA C. SAKS also known as Sandra Saks a person known to me. After I administered an oath to her, upon her oath she said:

1. "My name is SANDRA C. SAKS. I am over eighteen years of age, and I am fully capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I Sandra C. Saks personally signed the attached instrument. The signing occurred in San Antonio, TX, Bexar County. Accordingly, I can affirm that the attached instrument that is being recorded in Kerr County records is a true and accurate copy of the original instrument that I signed.

Further affiant sayeth naught."

SANDRA C. SAKS

SWORN TO and SUBSCRIBED before me on this ___23___ day of ___May___ 2013.

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on

William D Peebles

Notary Public – State of Texas

**MAY 2 3 2013**

COUNTY CLERK BEXAR COUNTY, TEXAS



WILLIAM D PEEBLES
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 27, 2014

Doc# 20130103922 Fees: $24.00
05/23/2013   2:59PM # Pages 3
Filed & Recorded in the Official
Public Records of  BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

## AFFIDAVIT OF SANDRA C. SAKS

STATE OF TEXAS            §

COUNT OF BEXAR           §

Before me the undersigned notary, on this day personally appeared SANDRA C. SAKS also known as Sandra Saks a person known to me. After I administered an oath to her, upon her oath she said:

1. "My name is SANDRA C. SAKS. I am over eighteen years of age, and I am fully capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I Sandra C. Saks personally signed the attached instrument. The signing occurred in San Antonio, TX, Bexar County. Accordingly, I can affirm that the attached instrument that is being recorded in Bexar County records is a true and accurate copy of the original instrument that I signed.

Further affiant sayeth naught."

_____
SANDRA C. SAKS

SWORN TO and SUBSCRIBED before me on this ___23___ day of ___May___ 2013.

_____
Notary Public – State of Texas

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

## MAY 2 3 2013

COUNTY CLERK BEXAR COUNTY, TEXAS



WILLIAM D PEEBLES
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 27, 2014

Doc# 20130103925 Fees: $44.00
05/23/2013  2:59PM # Pages 8
Filed & Recorded in the Official
Public Records of BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

TAB 2



TAB 3

# PARTNERSHIP AGREEMENT

**THE STATE OF TEXAS**
**COUNTY OF BEXAR**

THIS PARTNERSHIP AGREEMENT is made this 16TH day of JANUARY, 1996, between PERRY DONOP of 1000 E. BASSE ROAD, SAN ANTONIO, BEXAR COUNTY, TEXAS 78209 and ATFL&L, A TEXAS TRUST of 4040 BROADWAY, SUITE 603, SAN ANTONIO, BEXAR COUNTY, TEXAS 78209 (the "Partners"). The Partners agree to form a partnership on the terms and conditions set forth in this Agreement.

## NAME

1. The Partners shall operate under the name of 5321 Broadway Partners.

## PURPOSE

2. The Partners voluntarily associate themselves together for the purpose of owning, operating and managing real property as agreed to between the partners and specifically, that certain real property located at 5321 Broadway, San Antonio, Bexar County, Texas, and more particularly described as follows (the "Property"):

   LOT FOUR (4), BLOCK THIRTY-THREE (33), ALAMO HEIGHTS, CITY OF ALAMO HEIGHTS, SITUATED IN BEXAR COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN VOLUME 105, PAGES 290-296, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

## DURATION

3. The partnership shall commence on the 16th day of January, 1996, and continue until dissolved by mutual agreement or terminated as provided in this Agreement.

## PLACE OF BUSINESS

4. The principal place of business of the partnership shall be 5321 Broadway, San Antonio, Texas 78209, and/or such other place as may be mutually agreed on by the Partners.

## INITIAL CAPITAL

5. Capital to the partnership shall consist of:

   PERRY DONOP, a contribution of a 25% undivided interest in and to the Property

*Exhibit "A"*
*For 5321 Broadway.*

**EXHIBIT "C-1"**

ATFL&L, a Texas trust, a contribution of a 75% undivided interest in and to the Property

Both parties each agree that record title shall remain in their respective names and that only equitable title for purposes of managing and operating the Property are hereby being contributed to the Partnership.

If from time to time after the initial contribution the partners shall determine that additional capital is required by the partnership or that the capital of the partnership should be increased, the additional capital required shall be contributed by the partners pro rata according to their initial contributions by deposit in a checking account in the name of the partnership.

## WITHDRAWAL OF CAPITAL

6. No partner shall withdraw any portion of the capital of the partnership without the express written consent of the other partners. If the capital account becomes impaired notwithstanding the foregoing prohibition, the partner causing the impairment shall promptly reimburse the partnership upon demand by the other partners.

Until the capital has been restored, that partner's subsequent partnership profits shall be credited first to the account restoration before they are distributed to that partner.

## PROFITS AND LOSSES

7. Any net profits or losses that may accrue to the partnership shall be distributed to or borne by the Partners pro rata according to their initial contributions.

## SALARIES AND DRAWINGS

8. No Partner shall receive any salary for services rendered to the partnership. The Partners shall have pro rata drawings in such amounts as may be agreed upon by the Partners.

## BOOKS OF ACCOUNT

9. At all times during the continuance of the partnership, the partners shall keep accurate books of account in which all matters relating to the partnership, including all income, expenditures, assets, and liabilities, shall be entered. The books shall be kept on a cash basis and shall be open to examination by either partner at any time.

## FISCAL YEAR

10. The fiscal year of the partnership shall end on the 31st day of December each year.

## ACCOUNTINGS

11. A complete accounting of the partnership affairs as of the close of business on the last day of December of each year shall be rendered to each partner within 45 days after the close of each year. On each such accounting being made, the net profits of the partnership shall be distributed to the partners as provided in this Agreement to the extent that cash is available for such distribution. Except as to manifest errors discovered within 60 days after its rendition, each such accounting shall be final and conclusive as to each partner. A partnership accounting will be prepared at partnership expense and K-1's shall be distributed to partners.

## TIME DEVOTED TO PARTNERSHIP

12. Each partner shall devote any necessary time and attention and use the utmost of their skills and ability to furtherance of the partnership business.

## MANAGEMENT AND AUTHORITY

13. The Trustee for ATFL&L shall be the managing partner of the partnership. ATFL&L shall have authority to bind the partnership in making contracts and incurring obligations in the name and on the credit of the partnership, provided that no partner shall incur any obligations in the name or on the credit of the partnership exceeding $ 1,500.00 without the express written consent of the other partner. Any obligation incurred in violation of this provision shall be charged to and collected from the individual partner incurring such obligation.

## NET PROFITS DEFINED

14. The term "net profits" as used in this Agreement shall mean the net profits of the partnership as determined by generally accepted accounting principles for each accounting period provided for in this Agreement.

## BUY-SELL ON DEATH OF PARTNER

15. The partnership shall not terminate upon the death of a partner

## DISSOLUTION

16. On dissolution of the partnership, the affairs of the partnership shall be wound up, the assets of the partnership liquidated, the debts paid, and the surplus divided among the partners pro rata according to their initial contributions.

## NOTICES

17. Any and all notices between the parties provided for or permitted under this Agreement or by law shall be in writing and shall be deemed duly served when personally delivered to a partner, or, in lieu of such personal service, when deposited in the United States mail, certified, postage prepaid, addressed to the

partner at the address of the principal place of business of the partnership or to such other place as may from time to time be specified in a notice given pursuant to this paragraph as the address for service of notice on the partner.

## CONSENTS AND AGREEMENTS

18. Any and all consents and agreements provided for or permitted by this Agreement shall be in writing and a signed copy of any such consent or agreement shall be filed and kept with the books of the partnership.

## SOLE AND ONLY AGREEMENT

19. This instrument contains the sole and only agreement of the parties relating to their partnership and correctly sets forth the rights, duties and obligations of each to the other in connection with the partnership as of its date. Any prior agreements, promises, negotiations, or representations not expressly set forth in this Agreement are of no force or effect.

## RIGHT OF FIRST REFUSAL

20. The Partnership grants to Perry Donop the right of refusal to purchase the Property on the terms and conditions contained herein. In the event Partnership receives an offer to purchase the Property on terms acceptable to ATFL&L as the managing partner (the "Offer"), the Partnership shall not consummate such sale without first having offered to sell the Property to Perry Donop as herein provided. Partnership shall deliver to Perry Donop a written notice of its receipt of the Offer (the "Notice"). The Notice shall contain a statement by Partnership that it has received the Offer together with a copy of the Offer. If Perry Donop desires to accept the offer made by Partnership as set forth in the Notice ("Partnership's Offer"), Perry Donop must give written notice of such acceptance to Partnership within seventy two hours after the Notice is received by Perry Donop. The acceptance shall include a contract executed by Perry Donop on the same terms as Partnership's Offer. The failure of Perry Donop to timely give such acceptance notice shall be deemed Perry Donop's election not to accept Partnership's Offer. In the event that Perry Donop does elect to accept Partnership's Offer, Partnership and Perry Donop shall enter into a written contract containing all of the terms of the Offer, which contract shall be closed as set forth therein. In the event Perry Donop does not elect to accept Partnership's Offer, Partnership may consummate such sale, on the terms and conditions and with the party or parties, and only on such terms and conditions and with the party or parties, set forth and named in the Offer. In the event Perry Donop does not elect to accept Partnership's Offer, and Partnership amends in any way the terms of the Offer (or any contract entered into in connection therewith) or does not consummate the sale of the Property in accordance with the terms of and to the party or parties named in the Offer, it must re-offer the Partnership's Property to Perry Donop, in accordance with the same procedure outlined above, before selling said Property pursuant to such amended Offer or pursuant to any new Offer.

## PROOF OF PAYMENT

21.    ATFL&L, a Texas trust, must show proof of payment on any notes secured by a lien on the Property to Perry Donop.

EXECUTED on this the 16th day of January, 1996.

ATFL&L, A TEXAS TRUST

BY:X _____

NAME: _____

TITLE: _____

_____

Perry Donop Jr.

Lot Four (4), Block Thirty Three (33), Alamo Heights, City of Alamo Heights, situated in Bexar County, Texas according to plat thereof recorded in Volume 105, Pages 290-296, Deed and Plat Records of Bexar County.

*Exhibit "B" for 5321 Broadway, San Antonio, Texas 78209 Bexar County*

TAB 4

No. 2011-PC-3466

| | | |
|---|---|---|
| LAUREN SAKS a/k/a GLORIA LAUREN NICOLE SAKS, Plaintiff | * * * | IN THE PROBATE COURT |
| V. | * * | NO. TWO, |
| DIANE M. FLORES AND SANDRA GARZA DAVIS f/k/a SANDRA C. SAKS, Defendants | * * * * | BEXAR COUNTY, TEXAS |

## MEDIATED SETTLEMENT AGREEMENT

The "Parties," LAUREN SAKS, a/k/a GLORIA LAUREN NICOLE SAKS, DIANA M. FLORES and SANDRA GARZA DAVIS, f/k/a SANDRA C. SAKS, hereto agree that all claims and controversies between them that are in any way related to the SAKS CHILDREN FAMILY TRUST or ATFL&L, and the trust assets in which they may have had an interest and/or the exercising of any fiduciary responsibility are all hereby settled in accordance with the following terms:

1. The Parties acknowledge that bona fide disputes and controversies exist between them, and they desire to compromise and settle all claims and causes of action of any kind whatsoever which the Parties may have arising out of the above described issues. It is further understood and agreed that this is a compromise of disputed claims, and nothing contained herein shall be construed as an admission of liability.

2. Each signatory warrants and represents that:

a. such person has the understanding of the issues involved, the information necessary to the decision to enter into this agreement and the authority to bind the Party or Parties for whom such person acts; and that

b. the claims, suits, rights, and/or interests which are the subject matter hereto are owned by the Party asserting same, have not been assigned, transferred or sold, and are free of any encumbrance.

Exhibit "A"

V02083P0202

3. The Parties further agree as follows:

a. 218 Treasure Way shall be listed for sale immediately. Sandra lives in the house rent-free for 90 days, paying only utilities and normal minor upkeep. $65,000 of sales proceeds payable to Sandra, the balance to the Trust.

b. Sandra and Diana shall transfer and assign to the Trust all of their right, title, and interest in and to: (a) 5321 Broadway Partners; (b) Dijon Plaza Joint Venture; (c) Sunset Partners; (d) 50% interest in 4.93 acre Nueces County property; (e) Hyatt Mountain Lodge, Beaver Creek, Condominium timeshare interest in Unit #234, week 11, located at 63 Avondale Lane, Avon, CO; (f) Hunt lot on Guadalupe River, ~~free and clear of all liens and taxes~~; (g) the Quarter House, New Orleans, Condominium Timeshare interest in Oak Ridge Park condominium No. 232, week 12, located at the Quarter House, 129 Rue Charles, New Orleans, LA; (h) Poste Montane Condominium Timeshare interest in Unit #301, weeks 28 and 29, and Unit #402, week 13, located at 76 Avondale Lane, Beaver Creek, CO; and (i) 218 Treasure Way, San Antonio, TX.

*free and clear of the $25,000 note, DF*

c. The Trust will be responsible for filing any necessary tax returns reflecting above ownership.

d. Mediated Settlement Agreement will be jointly submitted to the court for approval.

e. Sandra indemnifies Trust against federal income tax liability which accrued or might have accrued on or before December 31, 2011.

f. Sandra and Diana pay their respective legal fees.

g. The Trust pays fees and expenses of the Interim Trustee and Heinrichs & DeGennaro, P.C.

h. The parties understand and agree that this Mediated Settlement Agreement shall be irrevocable.

4. Except for the agreements set forth herein, the Parties hereby release, discharge, and forever hold the other harmless from any and all claims, counterclaims, demands, or suits, known or unknown, fixed or contingent, liquidated or unliquidated, whether or not asserted in the above case, as of this date, arising from or related to the events and transactions which are the subject matter of this cause, including, but not limited to, any and all claims for breach of fiduciary duty and/or conversion. This mutual release runs to the benefit of all attorneys, agents, employees, officers, directors, shareholders, partners, heirs, assigns, and legal representatives of the Parties hereto.

5. Counsel for the Parties shall deliver drafts of any further documents to be executed in connection with this settlement to counsel for the other Parties hereto within fifteen (15) days from the date hereof. The Parties and their counsel agree to cooperate with each other in the drafting and execution of such additional documents as are reasonably requested or required to implement the provisions and spirit of this Settlement Agreement, but notwithstanding such additional documents the Parties confirm that this is a written settlement agreement as contemplated by Section 154.071 of the Texas Civil Practice and Remedies Code.

6. This Settlement Agreement is made and performable in Bexar County, Texas, and shall be construed in accordance with the laws of the State of Texas.

7. If one or more disputes arise with regard to the interpretation and/or performance of this Agreement or any of its provisions, including the form of further documents to be executed, the Parties agree to further mediation in an attempt to resolve same with Thomas Smith, the Mediator, who facilitated this settlement. In the event a dispute arises between the Parties, it is hereby agreed that the dispute shall be referred to Thomas Smith, the Mediator herein, for arbitration in accordance with the applicable United States Arbitration and Mediation Rules of Arbitration. The arbitrator's decision shall be final and legally binding and judgment may be entered thereon. Each Party will be responsible for their share of the arbitration fees in accordance with the applicable Rules of Arbitration. In the event a Party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other Party is entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award.

8. Although the Mediator has provided a basic outline of this Settlement Agreement to the Parties' counsel as a courtesy to facilitate the final resolution of this dispute, the Parties and their counsel have thoroughly reviewed such outline and have, where necessary, modified it to conform to the requirements of their agreement. All signatories to this Settlement Agreement hereby release the Mediator from any and all responsibility arising from the drafting of this Settlement Agreement, and by signing this Settlement Agreement acknowledge that they, or their attorneys,

3

V02083P0204

have been advised by the mediator in writing that this Settlement Agreement should be independently reviewed by counsel before executing the agreement.

9. The Parties represent and warrant that: (i) they have carefully reviewed this Settlement Agreement; (ii) they have consulted with their attorneys concerning this Settlement Agreement; (iii) any questions that they have pertaining to this Settlement Agreement have been answered and fully explained by their attorneys; (iv) their decision to execute this Settlement Agreement was not based on any statement or representation, either written or oral made by any person or entity other than those statements contained in this Settlement Agreement, and specifically was not based on any statement or representation made by any opposing Party or its counsel; (v) this Settlement Agreement constitutes the entire agreement and understanding between the Parties; (vi) they have entered into this Settlement Agreement of their own free will; and (vii) all prior and contemporaneous agreements, understandings, representations and statements, whether written or oral, are merged herein.

10. This Mediated Settlement Agreement is subject to approval by the Probate Court of Bexar County, Texas.

AGREED, this 2nd day of April, 2012.

_____
LAUREN SAKS, a/k/a Gloria Lauren Nicole Saks, by A. Chris Heinrichs, Attorney

_____
LANDEN SAKS, by A. Chris Heinrichs as agent for Lauren Saks, a/k/a Gloria Lauren Nicole Saks, Landen Saks' attorney in fact

_____
Lauren Saks

_____
Landen Saks

_____
Sandra Garza Davis f/k/a Sandra C. Saks

_____
Diana M. Flores

4                                        V02083P0205

APPROVED AS TO FORM:

MARCUS P. ROGERS
State Bar No. 17179700
2135 E. Hildebrand
San Antonio, Texas 78209
(210) 736-2222
(210) 881-0200 FAX
INTERIM TRUSTEE FOR THE SAKS CHILDREN
FAMILY TRUST or ATFL&L

A. CHRIS HEINRICHS
State Bar No. 9382500
BARRETT SHIPP
State Bar No. 24060601
100 N.E. Loop 410, Suite 1075
San Antonio, Texas 78216
(210) 366-0900
(210) 366-0981 FAX
ATTORNEYS FOR LAUREN SAKS

RONALD J. SHAW
State Bar No. 18152300
7300 Blanco Road, Suite 610
San Antonio, Texas 78216
(210) 227-3737
(210) 366-0805 FAX
ATTORNEY FOR DIANA G. FLORES

ADAM CORTEZ
State Bar No. 4844650
~~214 Dwyer Avenue, Suite 210~~ 7744 Broadway, Suite 103
San Antonio, Texas ~~78204~~ 78209
(210) ~~270-2100~~ 828-8584
(210) ~~229-1555 FAX~~ 828-9001 FAX
ATTORNEY FOR SANDRA SAKS

5

V02083P0206     DF

TAB 5

## IN RE: ARBITRATION

SAKS CHILDREN FAMILY TRUST OR   §
ATFL&L   §
MEDIATED SETTLEMENT   §
AGREEMENT   §
OF APRIL 2, 2012   §

## ARBITRATOR'S FINDINGS AND FINAL AWARD

On October 18, 2012, an arbitration was conducted pursuant to the provisions of a Mediated Settlement Agreement dated April 2, 2012 ("the MSA") before Thomas J. Smith, Arbitrator ("the arbitrator") in the offices of Mr. Smith beginning at 9:45 am. Those present were: Lauren Saks Merriman, Petitioner in Arbitration; her husband, Jack Merriman; her attorneys, A. Chris Heinrichs, J. Barrett Shipp and Jonathan Yedor; and Marcus Rogers, Interim Trustee of the Saks Children Family Trust or ATFL&L. Sandra Garza Davis a/k/a Sandra C. Saks, Defendant and Respondent in Arbitration, although given proper notice and having personal notice, did not appear. Landen Saks, a necessary party and Respondent in Arbitration, although given proper notice, did not appear.

The arbitrator delayed the start of the arbitration for 15 minutes to give the missing parties an opportunity to appear. When they did not, the arbitration began. A record was not requested by any of the parties. All matters in controversy were submitted to the arbitrator for his resolution, findings, decision and award which follow herein below.

## ARBITRATOR'S FINDINGS:

The arbitrator makes the following findings of fact:

1)     The parties to the MSA are: Lauren Saks Merriman; Landen Saks; Diana G. Flores; Sandra Garza Davis f/k/a Sandra C. Saks; and Marcus Rogers, Interim

Arbitrator's Findings and Final Award                        Page 1 of 12

V02108P5842

**EXHIBIT A**

Trustee (whose authority to sign the MSA came from the Court's approval thereof by Order of May 8, 2012).

2) The arbitration relates to and arises out of the execution of the MSA. The mediation occurred on April 2, 2012 and was conducted before Thomas J. Smith, Mediator.

3) The MSA was entered into to resolve a lawsuit pending at the time of mediation, initially filed in Cause No. 2011-PC-3466, styled Lauren Saks a/k/a Gloria Lauren Nicole Saks, Plaintiff v. Diane M. Flores (sic) and Sandra Garza Davis f/k/a Sandra C. Saks, Defendants ("the Lawsuit"), which remains currently pending in the Probate Court No. 2 of Bexar County, Texas involving the Saks Children Family Trust or ATFL&L ("the Trust"), an inter vivos trust, created by Sandra Saks on or about January 1, 1991.

4) Pursuant to order of the court, Marcus Rogers is the Interim Trustee of the Trust.

5) Lauren Saks Merriman ("Lauren") and Landen Saks ("Landen") are the only current beneficiaries of the Trust. Lauren's children, Wesley Lucas Saks Merriman, born March 6, 2007, and Margaux Elaine Merriman, born May 9, 2012, are contingent beneficiaries of the Trust whose interests are more than adequately represented by Lauren in this proceeding.

6) Sandra C. Saks, although settlor of the Trust, has no current interest in the Trust.

7) The MSA contained the Parties' agreement that any dispute relating to (a) the interpretation of, (b) compelling performance of, and/or (c) determining the proper form of documents to be executed to effect the Parties' purposes and intent as expressed in the MSA would (i) first be subject to mediation to be

conducted by Thomas J. Smith, Mediator and (ii) if such mediation was unsuccessful, would be subject to arbitration by the arbitrator for resolution.

8) By order of court dated September 5, 2012, all Parties were ordered to mediate their disputes arising under the MSA and, if unsuccessful, arbitrate those disputes which arbitration was to be concluded no later than October 31, 2012.

9) The mediation was held on September 1, 2012 in the offices of Thomas J. Smith. Those present at the mediation were: Lauren Saks Merriman; her husband, Jack Merriman; her attorneys, A. Chris Heinrichs and J. Barrett Shipp; and the Interim Trustee, Marcus Rogers. Sandra Garza Davis a/k/a Sandra C. Saks, and Landen Saks, by and through her attorney, W. Randolph Davis, briefly appeared but did not meaningfully participate. The mediation was unsuccessful.

10) The court's order of September 5, 2012, and the inherent authority of the arbitrator gave the arbitrator the discretion to determine when the arbitration would take place. The arbitration date of October 18, 2012 at 9:30 am was selected by the arbitrator as the date most convenient to all Parties, taking into account the arbitrator's determination that Sandra C. Saks, individually, and Landen Saks, acting by and through her attorney of record, W. Randolph Davis, were acting both unreasonably and unresponsively in attempting to select an arbitration date.

11) All Parties to the MSA and involved in the arbitration were duly notified and aware of the court's order of September 5, 2012 and the arbitration date selected by the arbitrator both by (i) written communication sent from the office of the arbitrator and (ii) written responses prepared by all Parties including Sandra C.

V02108P5844

Saks and Landen Saks (through her attorney, W. Randolph Davis) (who both acknowledged the time and date selected for arbitration and expressed their refusal to attend). The refusal was found by the arbitrator to be arbitrary, unreasonable, and for purposes of unnecessary delay.

12) The arbitrator considered the evidence of the parties and the testimony of Lauren Saks Merriman, Marcus Rogers, A. Chris Heinrichs and the affidavit of Todd Avery.

13) Lauren Saks Merriman's Appendix containing 25 different documents: (a) are true and correct copies of the originals; (b) are relevant to the matters at hand before the arbitrator as set forth in Lauren Saks Merriman's Petition in Arbitration and (c) were admitted into evidence as Petitioner's Exhibits 1 – 25 in support of the requested relief and the arbitrator's award which follows.

14) The Interim Trustee's Exhibits "A," "B," and "C" to his Petition in Arbitration: (a) are true and correct copies of the originals; (b) are relevant to the matters at hand before the arbitrator as set forth in the Interim Trustee's Petition in Arbitration; and (c) were admitted into evidence as Interim Trustee's Exhibits "A," "B," and "C."

15) ¶7 of the MSA contains the Parties' agreement that any disputes "with regard to the interpretation and/or performance of [the MSA] or any of its provisions, including the form of further documents to be executed, ..." will be resolved pursuant to the dispute resolution process set forth therein. Included in ¶7 is the provision that, "...the dispute shall be referred to Thomas Smith, the mediator herein, for arbitration in accordance with the applicable United States Arbitration

V02108P5845

and Mediation Rules of Arbitration" ("the Rules"). The arbitrator finds that the Parties' selection of the Rules was an unintended consequence of the Parties' agreement; that inclusion of reference to the Rules was mere boilerplate language from a form that was being used; that the Parties did not intend to pay the fees and expenses associated with arbitrating their dispute through the United States Arbitration and Mediation Association; that no Party relied in good faith upon mediating the dispute pursuant to the Rules; and that Sandra C. Saks acknowledged in open court on October 17, 2012, that the selection of the Rules as part of the agreement to arbitrate was, indeed, mere boilerplate language. Accordingly, it is the finding of the arbitrator that the Rules were not intended by the Parties to apply to the resolution of any dispute relating to or arising out of the MSA and that the Rules will not apply.

16) The arbitrator further finds that the provisions in the Rules relating to discovery shall not apply for the same reasons stated above and for the further reason that no Party to the arbitration in any way sought to pursue discovery under the Rules. Finally, there was no need made known to the arbitrator for any Party to pursue discovery prior to the hearing.

17) ¶3.a. and ¶3.b. of the MSA were intended by the Parties to give Sandra C. Saks the right to occupy the residence at 218 Treasure Way, San Antonio, Texas ("the residence") up through and including June 30, 2012, following which she was to vacate the residence relinquishing possession to the Interim Trustee, Marcus Rogers, on or before July 1, 2012. It was not the intention of the Parties that Ms. Saks remain in the residence past June 30, 2012. Her refusal to timely vacate the

V02108P5846

premises is a failure to comply with the MSA. Any occupancy of the premises after June 30, 2012 constitutes a wrongful holdover.

18) Per the Parties' agreement at mediation, Marcus Rogers, Interim Trustee, acting by or on behalf of the Trust is entitled to immediate possession of the residence and was so as of July 1, 2012.

19) $2,750.00 is a fair and reasonable monthly rental value for the residence which should be paid by Sandra C. Saks for her continued and wrongful holdover of the residence since June 30, 2012. If such sum is not voluntarily paid, it is to be deducted from the $65,000 she is to be paid at the time the residence sells.

20) Sandra C. Saks is to vacate the residence in good condition and turn over possession to the Interim Trustee no later than December 1, 2012, including all keys, security codes, garage door openers and built in appliances. If she fails to vacate by December 1, 2012, $4,125 is a fair and reasonable monthly rental value for the residence which should be paid by Sandra C. Saks for her continued and wrongful holdover of the residence. If such sum is not voluntarily paid, it is to be deducted from the $65,000 she is to be paid at the time the residence sells.

21) ¶3.b. of the MSA represents the Parties' agreement that the properties and interests identified in that paragraph were intended by the Parties to be assigned or conveyed to the Trust. The properties so identified are Trust property. ¶5 of the MSA provides the Parties would cooperate with one another in the execution of the necessary documents to effect the transfer of the properties and interests identified in ¶3.b. to the Trust. The documents attached hereto as Exhibits 1 – 10

V02108P5347

are in proper form and necessary to accomplish the transfer of the properties to the Trust as contemplated in the MSA.

22) The refusal of Sandra C. Saks, Landen Saks, and/or any other party who has failed to execute the necessary documents to effect a conveyance of the transfer of the title or interest of the properties listed in MSA ¶3.b. to the Trust was not made in good faith or for just cause. Each such party failing to cooperate shall be compelled to cooperate in order to effect the transfer, purposes and intents of the MSA.

23) Sandra C. Saks agreed to indemnify the Trust against federal income tax liability which has accrued or that may accrue on or before December 31, 2011, but wrongfully refused to sign an Indemnity Agreement evidencing that undertaking.

24) The Indemnity Agreement prepared by the attorneys for Lauren Saks Merriman, Exhibit 21, fairly and fully reflects the indemnity undertaking and should be signed by Sandra C. Saks to effect the Parties' intent and purpose under the MSA.

25) The MSA provides for the payment of the fees and expenses of Heinrichs & De Gennaro, P.C. as part of the Parties' agreement. In this regard, the following findings apply:

   a) Landen granted her sister, Lauren, the authority to act on Landen's behalf in the Mediated Settlement Agreement which took place on April 2, 2012 under a Limited Special Power of Attorney, a true and correct copy of which is part of the arbitration record as Exhibit 5;

   b) Landen did not revoke the Power of Attorney prior to April 2, 2012 or prior to her actual written approval of the MSA as reflected in Exhibit 6;

V02108P5848

c) Landen is bound to the undertaking in the MSA;

d) Landen ratified the MSA by her subsequent written approval of it as shown in Exhibit 6; and

e) Landen's attempted revocation of her consent to the terms of the MSA conflicts with the terms of the MSA which specifically provides it is not revocable; thus, Landen is bound to the terms of the MSA.

26) The amount of attorney's fees and expenses to be paid to Heinrichs & De Gennaro, P.C. by the Trust through the date of the entry of a final judgment (incorporating the arbitrator's findings and award pursuant to Tex. Civ. Prac. Rem. Code § 171.087 and §171.092) is the sum of $285,000 which is both reasonable and necessarily incurred. Lauren testified that she believed the fees were fair, reasonable and were of great benefit to her and Landen as trust beneficiaries. [It is noted that the findings of Arbitrator relating to attorneys fees for Heinrichs & De Gennaro, P.C. are made without recommendation by, or opinion of, the Interim Trustee.]

27) The reasonable and necessary expenses incurred by Heinrichs & De Gennaro, P.C., through October 17, 2012, to be paid by the Trust as provided in the MSA is the sum of $12,358.85.

28) Further, in addition to the undertaking in the MSA, Landen derived a direct and significant benefit from the services provided by Heinrichs & De Gennaro, P.C. in the Trust of which she is an equal beneficiary by the Trust recovering approximately $2.5 million worth of property as the result of the efforts of Heinrichs & De Gennaro, P.C., thereby obligating the Trust, and Landen's

V02108P5849

interest therein, to pay for the services rendered under the Common Fund Doctrine.

29)     A reasonable and necessary attorney fee to be paid to Heinrichs & De Gennaro, P.C. by the Trust in the event of an appeal or appeals of this ruling and any judgment rendered thereon would be (i) the sum of $50,000.00 in the event of an appeal to the Court of Appeals and (ii) the additional sum of $50,000.00 in the event of the filing of a Petition for Review and/or Appeal to the Supreme Court of the State of Texas.

30)     The reasonable and necessary fees to be paid by the Trust to the Interim Trustee for services provided through October 18, 2012 is $98,812.50. The Trust is also to reimburse the Interim Trustee expenses reasonably and necessarily incurred in the performance of his duties as Trustee and in protecting the Trust property or interests in the amount of $31.49. The hourly rate of $250 requested by Interim Trustee through the date of the application to the Court for determination of Interim Trustees' fees and $200 per hour for time spent after that is fair and reasonable and is approved for payment.

31)     The Trust is to pay to the arbitrator an arbitrator's fee of $4,500.00. Sandra C. Saks is to reimburse the Trust for one-half (1/2) of such fees or $2,250.00. If such reimbursement is not voluntarily paid, it is to be deducted from the $65,000 she is to be paid at the time the residence sells.

## ARBITRATOR'S AWARD

Based on the foregoing findings, the evidence and the argument of counsel, I make the following awards necessary to:  (i) interpret the MSA; (ii) compel performance of its agreed

**Arbitrator's Findings and Final Award**                                    Page 9 of 12

V02108P5850

terms; and (iii) approve the proper form of documents required to be executed to complete the MSA and accomplish the purposes and intents of the Parties as they agreed and as reflected in the MSA:

1) I AWARD possession of 218 Treasure Way, San Antonio, Texas ("the residence"), to the Saks Children Family Trust or ATFL&L acting by and through its trustee, Marcus Rogers, Interim Trustee. Consistent with the award, I ORDER that Sandra C. Saks vacate the premises no later than December 1, 2012.

2) I further ORDER that Sandra C. Saks pay the sum of $2,750.00 per month for each month she has heldover possession of the residence from the Interim Trustee beginning July 1, 2012 through the earlier of December 1, 2012, or the date she vacates the residence and the residence is accepted by Marcus Rogers, Interim Trustee. If she does not vacate the residence on or before December 1, 2012, the monthly rental shall increase to $4,125.00 until she vacates the residence. Any sums representing an incomplete month shall be determined proportionately. I further ORDER that all sums to be paid by Sandra C. Saks for her holdover of the residence as ordered herein shall be offset against the $65,000 she is to be paid when the residence is sold if not otherwise voluntarily paid by Sandra C. Saks.

3) I ORDER that Sandra C. Saks, Landen Saks and any other party to the MSA execute any of the required documents of conveyance attached hereto as Exhibits 1 – 10, to be fully signed and completed no later than October 31, 2012.

4) I ORDER that Sandra C. Saks execute the Indemnification Agreement in the same form as provided in Exhibit 21, to be fully signed and completed no later than October 31, 2012.

V02108P5851

209

5) I further ORDER that those Parties required to execute the instruments of conveyance and the Indemnification do so at the offices of Marcus Rogers, 2135 E. Hildebrand Ave., San Antonio, Texas 78209 no later than October 31, 2012.

6) I further ORDER that the Saks Children Family Trust or ATFL&L pay attorney's fees to Heinrichs & De Gennaro, P.C. in the amount of $285,000.00 plus expenses of $12,358.85.00. I further ORDER that in the event any party to the litigation initiates an appeal of this arbitrator's decision or any judgment that may be rendered thereon, to the Court of Appeals, then the Trust shall pay to Heinrichs & De Gennaro, P.C. the additional sum of $50,000.00 if they successfully prosecute or defend such an appeal. I further ORDER that in the event any party filing opposition to this award, or any judgment that may be entered thereon, by initiating an appeal to the Supreme Court of the State of Texas, then in such an event, the Trust shall pay a further sum of $50.000.00 in attorney's fees to Heinrichs & De Gennaro, P.C.

7) I further ORDER that the Saks Children Family Trust or ATFL&L pay to the Interim Trustee for services provided through October 18, 2012 the amount of $98,812.50. I further ORDER that the Trust shall reimburse the Interim Trustee expenses reasonably and necessarily incurred in the performance of his duties as Trustee and in protecting the Trust property or interests in the amount of $31.49.

8) I further ORDER that the Saks Children's Trust or ATFL&L shall pay to the arbitrator an arbitrator's fee of $4,500. I further ORDER that Sandra C. Saks reimburse the Trust $2,250, which sum shall be offset against the $65,000 she is to be paid when the residence is sold if not voluntarily paid by Ms. Saks.

V02108P5852

Signed and entered this 24 day of October, 2012.


_____
Thomas J. Smith, Arbitrator

g:\clients\saks children family trust-lit-4446\arbitration\arbitrators findings and final award 10.18.12.doc

V02108P5853

# EXHIBIT 1

V02108P5854

NOTICE OF CONFIDENTIALITY RIGHTS:
IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY
OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE
IT IS FILED FOR RECORD IN THE PUBLIC RECORDS -- YOUR SOCIAL
SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## CONVEYANCE AGREEMENT and DEED

The parties to this agreement are Sandra Garza Davis f/k/a Sandra C. Saks a/k/a Sandy Saks ("Davis"), Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L ("ATFL&L"), Lauren Saks and Landen Saks (collectively, the "Parties"). The Parties desire, through this Conveyance Agreement and Deed, to correct, confirm and convey title to the following described property, known as 218 Treasure Way, San Antonio, Texas 78209 (the "Property"):

> Lot 7, Block 13, New City Block 12548, OAK PARK
> ESTATES SUBDIVISION-UNIT 4, City of San Antonio,
> Bexar County, Texas, according to map or plat thereof
> recorded in Volume 7500, Page 123, Deed and Plat
> Records of Bexar County, Texas.

## Recitals

WHEREAS, the Property was originally acquired by ATFL&L by Special Warranty Deed with Vendor's Lien, recorded under County Clerk's, Document No. 20040014358, Official Public Record of Real Property of Bexar County, on or about January 13, 2004.

WHEREAS, Diana G. Flores, in her capacity then as Trustee of ATFL&L, executed that certain Special Warranty Deed dated December 21, 2011 (the "December 2011 Conveyance"), recorded in Volume 15275, Page 1403, Official Public Record of Real Property of Bexar County, Texas, *purporting* to convey the Property to Lauren Saks and Landen Saks, as tenants in common.

WHEREAS, Lauren Saks and Landen Saks were not aware of the December 2011 Conveyance, never intended to accept or claim title to the Property under the December 2011 Conveyance and do not now accept or claim title to the Property under the December 2011 Conveyance.

WHEREAS, according to the December 2011 Conveyance, that conveyance of the Property was made subject to that certain Agreement to Affirm and Establish Ownership dated November 10, 2003, between ATFL&L and Davis (a/k/a Sandy Saks), a copy of which was attached as Exhibit "A" to and incorporated into the December 2011 Conveyance (the "November 2003 Agreement").

V02108P5855

WHEREAS, in the November 2003 Agreement, Diana G. Flores, in her capacity as Trustee of the ATFL&L, *purports* to deliver, transfer, affirm and confirm to Sandy Saks, a 99% undivided interest in the Property;

WHEREAS, the Property (among other things) is the subject of a Mediated Settlement Agreement dated April 2, 2012 (the "Settlement Agreement"), which was approved by Order dated May 8, 2012, in Cause No. 2011-PC-3466, *Lauren Saks a/k/a Gloria Lauren Nicole Saks, Plaintiff, v. Diane M. Flores and Sandra Garza Davis f/k/a Sandra C. Saks, Defendants*, in the Probate Court No. Two, Bexar County, Texas.

WHEREAS, pursuant to the Settlement Agreement, Davis has agreed to transfer, assign and convey to ATFL&L all of Davis' right, title and interest in and to the Property.

WHEREAS, ATFL&L desires to accept and confirm ownership of one hundred percent (100%) of the Property.

WHEREAS, Lauren Saks and Landen Saks desire to confirm and acknowledge that they have not owned and do not now own any interest in the Property.

## Conveyances

NOW, THEREFORE, in consideration of the covenants herein contained and the conveyances herein made and for the purpose of correcting, confirming and conveying title to the Property, it is hereby mutually COVENANTED, GRANTED, CONCLUDED AND AGREED, by and between the parties as follows:

1. Davis, for the purposes and consideration set forth above, has GRANTED, SOLD AND CONVEYED, and by these presents does GRANT, SELL AND CONVEY unto ATFL&L, the Property, TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto ATFL&L, its administrators and assigns forever. Davis does hereby bind Davis and her heirs, executors, administrators and assigns to WARRANT AND FOREVER DEFEND all and singular the said premises unto ATFL&L, its administrators and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. *Davis further covenants and agrees that neither Davis nor her heirs, executors, administrators, successors, or assigns shall have, claim or demand any right or title to the Property or any part of it pursuant to the November 2003 Agreement, which agreement Davis confirms and acknowledges is now canceled or void and of no further force or effect.*

VO2108P585b

2. Lauren Saks and Landen Saks, for the purposes and consideration set forth above, have **QUITCLAIMED**, and by these presents do **QUITCLAIM** unto ATFL&L, all of Lauren Saks' and Landen Saks' right, title and interest in and to the Property, TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto ATFL&L, its administrators and assigns forever. Neither Lauren Saks, nor her heirs, executors, administrators, successors, or assigns, shall have, claim or demand any right or title to the Property or any part of it. Likewise, neither Landen Saks, nor her heirs, executors, administrators, successors, or assigns, shall have, claim or demand any right or title to the Property or any part of it.

3. ATFL&L joins in this Conveyance Agreement and Deed for the purpose of correcting, confirming and conveying title to the Property and to *confirm and acknowledge* the resulting ownership by ATFL&L of one hundred percent (100%) of the Property.

These conveyances are made and accepted subject to any and all conditions, covenants, easements and restrictions, if any, relating to the Property, to the extent, and only to the extent, that the same may still be in force and effect, shown of record in the office of the County Clerk of Bexar County, Texas, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are in effect, relating to the Property.

EXECUTED as the date shown in each acknowledgement below, to be effective as of the 8th day of May, 2012.

*[MULTIPLE SIGNATURE PAGES ATTACHED]*

V 0 2 1 0 6 P 5 8 5 7

## SIGNATURE PAGE

### *(CONVEYANCE AGREEMENT and DEED)*

_____
**Sandra Garza Davis** f/k/a Sandra C. Saks
and a/k/a Sandy Saks


STATE OF TEXAS      §
                    §
COUNTY OF _____   §

This instrument was acknowledged before me on the ___ day of August, 2012, by **Sandra Garza Davis.**

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

V02108P5858

216

## SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and DEED)*

_____
Marcus Rogers, Interim Trustee of Saks
Children Family Trust a/k/a ATFL&L

STATE OF TEXAS     §
                    §
COUNTY OF BEXAR    §

This instrument was acknowledged before me on the _18_ day of ~~August,~~ October 2012, by Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L, on behalf of said trust.

ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

V02108P5859

## SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and DEED)*

_____
Lauren Saks

STATE OF TEXAS     §
                 §
COUNTY OF Bexar    §

This instrument was acknowledged before me on the 18 day of ~~August~~ October, 2012, by Lauren Saks.

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

[SEAL]

V02108P5860

## SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and DEED)*

_____
Landen Saks

STATE OF TEXAS     §
                      §
COUNTY OF _____ §

    This instrument was acknowledged before me on the ___ day of August, 2012, by Landen Saks.

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

AFTER RECORDING, PLEASE RETURN TO:

Law Offices of Marcus P. Rogers
2135 E. Hildebrand Ave.
San Antonio, Texas 78209

V02l08P58bl

# EXHIBIT 2

V02108P5862

> **NOTICE OF CONFIDENTIALITY RIGHTS:**
> **IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS -- YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## CONVEYANCE AGREEMENT and DEED

The parties to this agreement are Sandra Garza Davis f/k/a Sandra C. Saks a/k/a Sandy Saks ("Davis") and Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L ("ATFL&L") (jointly, the "Parties"). The Parties desire, through this Conveyance Agreement and Deed, to correct, confirm and convey title to the following described property in Nueces County, Texas (the "Nueces County Property"):

> a 50% undivided interest in and to 4.934 acres, more or less, of land in Nueces County, Texas, more particularly described in the attached Exhibit "A"; said 50% undivided interest in and to 4.934 acres being the same property conveyed to ATFL&L by General Warranty Deed dated effective May 28, 1995, executed and acknowledged December 17, 1997 and recorded October 9, 2000, under County Clerk's, Document No. 2000040884, Official Public Record of Real Property of Nueces County.

### Recitals

WHEREAS, as noted above, the Nueces County Property was previously acquired by ATFL&L by General Warranty Deed dated effective May 28, 1995, executed and acknowledged December 17, 1997 and recorded October 9, 2000, under County Clerk's, Document No. 2000040884, Official Public Record of Real Property of Nueces County (the "Original ATFL&L Deed").

WHEREAS, Diana G. Flores, in her capacity then as Trustee of ATFL&L, executed that certain unrecorded Agreement dated December 17, 1997, between ATFL&L and Davis (a/k/a Sandra Camela Garza Davis), acting individually and on behalf of Davis' related entity, Broadway/Saks, L.C., (the "December 1997 Agreement").

WHEREAS, while the Original ATFL&L Deed makes no reference to this December 1997 Agreement and the December 1997 Agreement is not recorded, according to the provisions of the December 1997 Agreement, the subsequent conveyance of the Property to ATFL&L pursuant to the Original ATFL&L Deed was made subject to the December 1997 Agreement.

WHEREAS, in the December 1997 Agreement, Davis, *purports* to retain a 99% interest in "all beneficial rights" to the Property.

V02108P5863

WHEREAS, the Nueces County Property (among other things) is the subject of a Mediated Settlement Agreement dated April 2, 2012 (the "Settlement Agreement"), which was approved by Order dated May 8, 2012, in Cause No. 2011-PC-3466, *Lauren Saks a/k/a Gloria Lauren Nicole Saks, Plaintiff, v. Diane M. Flores and Sandra Garza Davis f/k/a Sandra C. Saks, Defendants*, in the Probate Court No. Two, Bexar County, Texas.

WHEREAS, pursuant to the Settlement Agreement, Davis has agreed to transfer, assign and convey to ATFL&L all of Davis' right, title and interest in and to the Nueces County Property.

WHEREAS, in order to fully comply with the terms and conditions of the Settlement Agreement, Davis' related entity, Broadway/Saks, L.C., has agreed to join in this conveyance and transfer, assign and convey to ATFL&L all of its right, title and interest in and to the Nueces County Property.

WHEREAS, neither Davis nor Broadway/Saks, L.C., intend by this Agreement to convey an interest, if any, owned or claimed by Davis or Broadway/Saks, L.C., in the *remaining* 50% undivided interest in the real property described in Exhibit "A" that was *NOT* previously conveyed to ATFL&L by the Original ATFL&L Deed. Instead, their intention is simply to comply with the terms of the Settlement Agreement to correct, confirm and convey title to ATFL&L all of their right, title and interest in and to the Nueces County Property ONLY.

WHEREAS, ATFL&L desires to accept and confirm the conveyance of all of Davis' right, title and interest, if any, in and to the Nueces County Property.

<u>Conveyances</u>

NOW, THEREFORE, in consideration of the covenants herein contained and the conveyances herein made and for the purpose of correcting, confirming and conveying title to the Nueces County Property, it is hereby mutually COVENANTED, GRANTED, CONCLUDED AND AGREED, by and between the parties as follows:

1. Davis and Broadway/Saks, L.C., for the purposes and consideration set forth above, have **GRANTED, SOLD AND CONVEYED**, and by these presents do **GRANT, SELL AND CONVEY** unto ATFL&L, all right, title and interest of Davis and Broadway/Saks, L.C., in and to the Nueces County Property, TO HAVE AND TO HOLD the Nueces County Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto ATFL&L, its administrators and assigns forever, without express or implied warranty. All warranties that might arise by common law, as well as the warranties in Section 5.023 of the Texas Property Code (or its successor), are excluded. *Davis further covenants and agrees that neither Davis nor her heirs, executors, administrators, successors or assigns shall have, claim or demand any right or title to the*

*Property or any part of it pursuant to the December 1997 Agreement, which agreement Davis confirms and acknowledges is now canceled or void and of no further force or effect. Broadway/Saks, L.C., also further covenants and agrees that neither Broadway/Saks, L.C., nor its successors or assigns shall have, claim or demand any right or title to the Property or any part of it pursuant to the December 1997 Agreement, which agreement Broadway/Saks, L.C., confirms and acknowledges is now canceled or void and of no further force or effect.*

2.     ATFL&L joins in this Conveyance Agreement and Deed for the purpose of correcting, confirming and conveying title to the Nueces County Property and to *confirm and acknowledge* the resulting ownership by ATFL&L of all of the right, title and interest of Davis and Broadway/Saks, L.C., in and to the Nueces County Property.

These conveyances are made and accepted subject to any and all conditions, covenants, easements and restrictions, if any, relating to the Nueces County Property, to the extent, and only to the extent, that the same may still be in force and effect, shown of record in the office of the County Clerk of Nueces County, Texas, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are in effect, relating to the Nueces County Property.

EXECUTED as the date shown in each acknowledgement below, to be effective as of the 8ᵗʰ day of May, 2012.

*[MULTIPLE SIGNATURE PAGES ATTACHED]*

V02108P5865

## SIGNATURE PAGE

### (CONVEYANCE AGREEMENT and DEED)

_____
Sandra Garza Davis f/k/a Sandra C. Saks
and a/k/a Sandy Saks


Broadway/Saks L. C.

By: _____
Typed Name: _____
Title: _____


STATE OF TEXAS          §
                        §
COUNTY OF _____     §

    This instrument was acknowledged before me on the ___ day of August, 2012, by **Sandra Garza Davis.**

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____


STATE OF TEXAS          §
                        §
COUNTY OF _____     §

    This instrument was acknowledged before me on the ___ day of August, 2012, by _____, _____ Broadway/Saks L.C., a Texas limited liability company, on behalf of said limited liability company.

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____


V02108P58bb

224

## SIGNATURE PAGE

### (CONVEYANCE AGREEMENT and DEED)

_____
Marcus Rogers, Interim Trustee of Saks
Children Family Trust a/k/a ATFL&L

STATE OF TEXAS            §
                         §
COUNTY OF BEXAR          §

    This instrument was acknowledged before me on the _18_ day of ~~August~~ October, 2012, by Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L, on behalf of said trust.

_____
NOTARY PUBLIC, State of TEXAS

> ANGELINA MARIN
> MY COMMISSION EXPIRES
> July 15, 2013

My Commission Expires: _____

[SEAL]

AFTER RECORDING, PLEASE RETURN TO:

Law Offices of Marcus P. Rogers
2135 E. Hildebrand Ave.
San Antonio, Texas 78209

V02108P5867



Job# 31065-00-00
May 23, 1996

(512)854-3101

P.O. BOX 6355 • CORPUS CHRISTI, TEXAS 78466-6355

FAX (512)854-6001

State of Texas
County of Nueces;

## EXHIBIT A

Fieldnotes for 4,934 acres of land being a portion of lot 3, block 1, Teachers Credit Union Subdivision a map of which is recorded in Volume 42, pages 56 Map Records of Nueces County, Texas, a portion of lot 3A, block 1, Teachers Credit Union Subdivision a map of which is recorded in Volume 44, pages 63 Map Records of Nueces County, Texas and a portion of Lot 1 Section 4, Bohemian Colony Lands a map of which is recorded in Volume A, pages 48 Map Records of Nueces County, Texas and described by Metes and Bounds to wit as follows:

Commencing at a 5/8 inch iron rod found for the Northwest corner of said lot 3, Block 1 same point being on the Southwest boundary line of Trojan Drive (60 feet right-of-way width) same point being on the Northeast right-of-way line of Prescott Street (50 feet right-of-way width) and the POINT OF COMMENCEMENT;

THENCE South 61°33'30" East, along said Trojan Drive right-of-way, a distance of 422.71 feet to a 5/8 inch iron rod found for the Northwest corner of this tract and the POINT OF BEGINNING;

THENCE South 61°33'30" East, continuing along said Trojan Drive right-of-way, a distance of 504.62 feet for a drill hole found for a point on the Northwest right-of-way line of State Highway No. 358 and for the Northeast corner of this tract;

THENCE South 46°17'18" West, with said State Highway No. 358 right-of-way line, a distance of 1.62 feet to a 5/8 inch iron rod found for a corner of this tract;

THENCE South 45°20'18" West, with said State Highway No. 358 right-of-way line, a distance of 264.59 feet to a Texas D.O.T. concrete monument found for a corner of this tract;

THENCE South 46°27'24" West, with said State Highway No. 358 right-of-way line, a distance of 33.56 feet to a 5/8 inch iron rod found for the Southeast corner of this tract;

THENCE South 61°33'30" West, leaving said State Highway No. 358 right-of-way line, a distance of 707.64 feet to a 5/8 inch iron rod found for the Southwest corner of this tract;

THENCE North 28°26'30" East, a distance of 593.86 feet to the POINT OF BEGINNING and containing 4,934 acres (214,943 square feet) of land more or less;

Bearings for this description were based on the Northeast boundary line of said lot 3, block 1, Teachers Credit Union Subdivision.

URBAN ENGINEERING

Dan L. Urban R.P.L.S.

2725 SWANTNER DR. • CORPUS CHRISTI, TEXAS 78404

V02108P5868



V02108P5869

# EXHIBIT 3

V02108P5870

228

NOTICE OF CONFIDENTIALITY RIGHTS:
IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS -- YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## CONVEYANCE AGREEMENT and DEED

The parties to this agreement are Sandra Garza Davis f/k/a Sandra C. Saks a/k/a Sandy Saks ("Davis") and Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L ("ATFL&L") (jointly, the "Parties"). The Parties desire, through this Conveyance Agreement and Deed, to correct, confirm and convey title to following described property in Kerr, County, Texas (the "Kerr County Property"):

> that certain 1.48 acres of land, more or less, of land in Kerr County, Texas, more particularly described in the attached Exhibit "A"; said 1.48 acres of land being the same property conveyed to the Saks Trust (a/k/a ATFL&L) by General Warranty Deed dated August 4, 2006, recorded August 9, 2006, in Volume 1544, Page 283 of the Official Public Record of Real Property of Kerr County, Texas.

### Recitals

WHEREAS, as noted above, the Kerr County Property was previously acquired by ATFL&L a/k/a the Saks Trust by General Warranty Deed dated August 4, 2006, recorded August 9, 2006, in Volume 1544, Page 283 of the Official Public Record of Real Property of Kerr County, Texas. (the "Original ATFL&L Deed").

WHEREAS, the Kerr County Property (among other things) is the subject of a Mediated Settlement Agreement dated April 2, 2012 (the "Settlement Agreement"), which was approved by Order dated May 8, 2012, in Cause No. 2011-PC-3466, *Lauren Saks a/k/a Gloria Lauren Nicole Saks, Plaintiff, v. Diane M. Flores and Sandra Garza Davis f/k/a Sandra C. Saks, Defendants,* in the Probate Court No. Two, Bexar County, Texas.

WHEREAS, pursuant to the Settlement Agreement, Davis has agreed to confirm the Original ATFL&L Deed and transfer, assign and convey to ATFL&L all of Davis' right, title and interest in and to the Kerr County Property.

WHEREAS, ATFL&L desires to accept and confirm the conveyance of all of Davis' right, title and interest, if any, in and to the Kerr County Property.

V02108P587l

<u>Conveyances</u>

NOW, THEREFORE, in consideration of the covenants herein contained and the conveyances herein made and for the purpose of correcting, confirming and conveying title to the Kerr County Property, it is hereby mutually COVENANTED, GRANTED, CONCLUDED AND AGREED, by and between the parties as follows:

1. Davis, for the purposes and consideration set forth above, has GRANTED, SOLD AND CONVEYED, and by these presents does GRANT, SELL AND CONVEY unto ATFL&L, all of Davis' right, title and interest in and to the Kerr County Property, TO HAVE AND TO HOLD the Kerr County Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto ATFL&L, its administrators and assigns forever, without express or implied warranty. All warranties that might arise by common law, as well as the warranties in Section 5.023 of the Texas Property Code (or its successor), are excluded.

2. ATFL&L joins in this Conveyance Agreement and Deed for the purpose of correcting, confirming and conveying title to the Kerr County Property and to *confirm and acknowledge* the resulting ownership by ATFL&L of all of Davis' right, title and interest in and to the Kerr County Property,

These conveyances are made and accepted subject to any and all conditions, covenants, easements and restrictions, if any, relating to the Kerr County Property, to the extent, and only to the extent, that the same may still be in force and effect, shown of record in the office of the County Clerk of Kerr County, Texas, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are in effect, relating to the Kerr County Property.

EXECUTED as the date shown in each acknowledgement below, to be effective as of the 8th day of May, 2012.

*[MULTIPLE SIGNATURE PAGES ATTACHED]*

# SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and DEED)*

_____
Sandra Garza Davis f/k/a Sandra C. Saks
and a/k/a Sandy Saks

STATE OF TEXAS      §
                             §

COUNTY OF _____ §.

    This instrument was acknowledged before me on the ___ day of August, 2012, by **Sandra Garza Davis.**

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

V02108P5873

# SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and DEED)*

_____
Marcus Rogers, Interim Trustee of Saks
Children Family Trust a/k/a ATFL&L

STATE OF TEXAS      §
     §
COUNTY OF BEXAR      §

This instrument was acknowledged before me on the 18th day of ~~August~~ October, 2012, by Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L, on behalf of said trust.



NOTARY PUBLIC, State of TEXAS

ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

My Commission Expires: _____

[SEAL]

AFTER RECORDING, PLEASE RETURN TO:

Law Offices of Marcus P. Rogers
2135 E. Hildebrand Ave.
San Antonio, Texas 78209

V02108P5874

# Domingues & Assoc.

*Professional Land Surveying
Subdivision Design*  VOL. 1544 PAGE 0285

Re: description of 1.48 acres, Walter B. Hailey, Jr., south of Highway No. 39.

All that certain tract or parcel of land, lying and being situated in the County of Kerr, State of Texas; comprising 1.48 acres, more or less; being out of original Survey No. 1872, B. T. Brazel, Abstract No. 1057; being part of that 17.4 acre Schumacher Estate tract, which was conveyed to Henry Allen Schumacher, by deed dated April 19, 1967, of record in Volume 128, page 245, of the Deed Records of Kerr County, Texas; which was subsequently conveyed to Cy Young by deed recorded in Volume 145, page 73, of the Deed Records of Kerr County, Texas; and subsequently conveyed to Walter B. Hailey, Jr., by deed of record in Volume 214, page 427, of the Deed Records of Kerr County, Texas, and subject tract being more particularly described by metes and bounds, as follows, to wit:

BEGINNING at a 5/8" iron stake found marking the northwest corner of River Place Subdivision, according to replat recorded in Volume 6, page 135, of the Plat Records of Kerr County, Texas, and being in the south right of way line of Texas State Highway No. 39, a north line of said 17.4 acre tract;

THENCE with the west line of said River Place Subdivision, S.0°54'W., for a distance of 167.33 feet [platted N0°40'41"E 167.23] to a metal fence corner post, and continuing a direction of S.32°10'W., for a distance of 217.62 feet [platted N31°57'56"E 217.62] to the northeast bank of the Guadalupe River, the most westerly corner of said River Place Subdivision, in a southeast line of said 17.4 acre tract;

THENCE with the meanders, at every point of the northeast bank of said Guadalupe River, a southeast line of said 17.4 acre tract, a direction of N.53°02'W., for a distance of 283.3 feet [deed S53°16'E total 920.1] to the most westerly corner of said 17.4 acre tract, in the southeast right of way line of said Texas State Highway No. 39;

THENCE with a northwest line of said 17.4 acre tract, the southeast right of way line of said Texas State Highway No. 39, a direction of N.49°23'E., for a distance of 119.60 feet [deed S49°09'W 119.6] to a fence corner post located 60 feet from and normal to centerline station 1825+55.3, and continuing a direction of N.67°50'E., for a distance of 274.50 feet [deed S67°37'W total 341.0] to the place of beginning.

Bearings based on Global Positioning System grid north observation.

Surveyed on the ground and field notes prepared by, Charles B. Domingues, Registered Professional Land Surveyor No. 1713.
Sissy

Charles B. Domingues
Registered Professional Land Surveyor No. 1713        Job No. 5084
Only those prints containing the raised seal should be considered official and relied upon by the user.

## Domingues & Assoc.

609 Sidney Baker, Kerrville, Tx. 78028 > Tel. 830/895 6900 > Fax 830/896 6901



EXHIBIT
"A"

GLS 002815

**NOTICE OF CONFIDENTIALITY RIGHTS:**
**IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS -- YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## AGREEMENT and RELEASE OF LIEN

The parties to this agreement are Sandra Garza Davis f/k/a Sandra C. Saks a/k/a Sandy Saks d/b/a Schumacher Lender ("Davis") and Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L ("ATFL&L") (jointly, the "Parties"). The Parties desire, through this Agreement and Release of Lien, to correct, confirm and clear title to that certain 1.48 acres of land in Kerr, County, Texas, more particularly described in the attached Exhibit "A" (the "Kerr County Property").

### Recitals

WHEREAS, the Kerr County Property (among other things) is the subject of a Mediated Settlement Agreement dated April 2, 2012 (the "Settlement Agreement"), which was approved by Order dated May 8, 2012, in Cause No. 2011-PC-3466, *Lauren Saks a/k/a Gloria Lauren Nicole Saks, Plaintiff, v. Diane M. Flores and Sandra Garza Davis f/k/a Sandra C. Saks, Defendants*, in the Probate Court No. Two, Bexar County, Texas.

WHEREAS, pursuant to the Settlement Agreement, Davis has agreed to transfer, assign and convey to ATFL&L all of Davis' right, title and interest in and to the Kerr County Property, *free and clear of the liens described below.*

WHEREAS, ATFL&L desires to accept and confirm the release of any and all liens held by Davis and/or Schumacher Lender *purported* to encumber the Kerr County Property.

### Release of Lien

Holder of *purported* Note and Lien:   Davis d/b/a Schumacher Lender

*Purported* Note

Date:        August 4, 2006

Original principal amount:    One Hundred Twenty Five Thousand and No/100 Dollars ($125,000.00)

V02108P5877

Borrower: Diana Flores, trustee of the Saks Trust

Lender: Schumacher Lender

Note and Lien Are Described in the Following Documents:

- Vendor's Lien retained in Warranty Deed With Vendor's Lien dated August 4, 2006, from Hart McCormick, Jr. and Louise McCormick, husband and wife, to Diana Flores, trustee of the Saks Trust, recorded in Volume 1544, Page 283, of the Official Public Records of Real Property of Kerr County, Texas
- Deed of Trust dated August 4, 2006, to Richard J. Karam, Trustee, recorded in Volume 1544, Page 287, of the Official Public Records of Real Property of Kerr County, Texas

Property (including any improvements):

All that certain 1.48 tract or parcel of land, lying and being situated in the County of Kerr, State of Texas, and being more particularly described in the attached Exhibit A.

Holder of Note and Lien is the owner and holder of the Note and Lien described above.

Holder of Note and Lien acknowledges that the Note has been fully and finally satisfied and discharged and releases the Property from the Lien and from all liens held by Holder of Note and Lien, without regard to how they were created or evidenced.

When the context requires, singular nouns and pronouns include the plural.

EXECUTED as the date shown in each acknowledgement below, to be effective as of the 8th day of May, 2012.

*[MULTIPLE SIGNATURE PAGES ATTACHED]*

V02108P5878

235

## SIGNATURE PAGE

### *(AGREEMENT and RELEASE OF LIEN)*

Sandra Garza Davis f/k/a Sandra C. Saks
and a/k/a Sandy Saks d/b/a Schumacher
Lender

STATE OF TEXAS      §
                            §
COUNTY OF _____ §

This instrument was acknowledged before me on the ___ day of August, 2012, by **Sandra Garza Davis d/b/a Schumacher Lender.**

NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

V02108P5879

236

<u>SIGNATURE PAGE</u>

*(AGREEMENT and RELEASE OF LIEN)*

_____
Marcus Rogers, Interim Trustee of Saks
Children Family Trust a/k/a ATFL&L

STATE OF TEXAS        §
                      §
COUNTY OF BEXAR       §

This instrument was acknowledged before me on the 18 day of ~~August~~ October, 2012, by Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L, on behalf of said trust.

_____
NOTARY PUBLIC, State of TEXAS



ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

[SEAL]

My Commission Expires: _____

AFTER RECORDING, PLEASE RETURN TO:

Law Offices of Marcus P. Rogers
2135 E. Hildebrand Ave.
San Antonio, Texas 78209

V02108P5880

# Domingues & Assoc.

## Professional Land Surveying
### Subdivision Design

Re: description of 1.48 acres, Walter B. Hailey, Jr., south of Highway No. 39.

All that certain tract or parcel of land, lying and being situated in the County of Kerr, State of Texas; comprising 1.48 acres, more or less; being out of original Survey No. 1872, E. T. Brazel, Abstract No. 1057; being part of that 17.4 acre Schumacher Estate tract, which was conveyed to Henry Allen Schumacher, by deed dated April 19, 1967, of record in Volume 128, page 245, of the Deed Records of Kerr County, Texas; which was subsequently conveyed to Cy Young by deed recorded in Volume 145, page 73, of the Deed Records of Kerr County, Texas; and subsequently conveyed to Walter B. Hailey, Jr., by deed of record in Volume 214, page 427, of the Deed Records of Kerr County, Texas, and subject tract being more particularly described by metes and bounds, as follows, to wit:

BEGINNING at a 5/8" iron stake found marking the northwest corner of River Place Subdivision, according to replat recorded in Volume 6, page 135, of the Plat Records of Kerr County, Texas, and being in the south right of way line of Texas State Highway No. 39, a north line of said 17.4 acre tract;

THENCE with the west line of said River Place Subdivision, S.0°54'W., for a distance of 167.33 feet [platted N0°40'41"E 167.23] to a metal fence corner post, and continuing a direction of S.32°10'W., for a distance of 217.62 feet [platted N31°57'56"E 217.62] to the northeast bank of the Guadalupe River, the most westerly corner of said River Place Subdivision, in a southeast line of said 17.4 acre tract;

THENCE with the meanders, at every point of the northeast bank of said Guadalupe River, a southeast line of said 17.4 acre tract, a direction of N.53°02'W., for a distance of 283.3 feet [deed S53°16'E total 920.1] to the most westerly corner of said 17.4 acre tract, in the southeast right of way line of said Texas State Highway No. 39;

THENCE with a northwest line of said 17.4 acre tract, the southeast right of way line of said Texas State Highway No. 39, a direction of N.49°23'E., for a distance of 119.60 feet [deed S49°09'W 119.6] to a fence corner post located 60 feet from and normal to centerline station 1825+55.3, and continuing a direction of N.67°50'E., for a distance of 274.50 feet [deed S67°37'W total 341.0] to the place of beginning.

Bearings based on Global Positioning System grid north observation.

Surveyed on the ground and field notes prepared by, Charles B. Domingues, Registered Professional Land Surveyor No. 1713.
Sissy

Charles B. Domingues
Registered Professional Land Surveyor No. 1713          Job No. 5084
Only those prints containing the raised seal should be considered official and relied upon by the user.

## Domingues & Assoc.

609 Sidney Baker, Kerrville, Tx. 78028 > Tel. 830/896 6900 > Fax 830/896 6901



EXHIBIT
"A"

GLS 002790

V02108P5881

# EXHIBIT 6

V02108P5882

## CONVEYANCE AGREEMENT and ASSIGNMENT

The parties to this agreement are Sandra Garza Davis f/k/a Sandra C. Saks a/k/a Sandy Saks ("Davis"), Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L ("ATFL&L"), Lauren Saks and Landen Saks (jointly, the "Parties"). The Parties desire, through this Conveyance Agreement and Assignment, to correct, confirm and assign the ownership interest in the following described partnership:

ATFL&L, Boulder Investments, Inc. and Gitmel, L.L.C. executed that certain Joint Venture Agreement dated May 10, 1996 (the "Dijon Partnership Agreement"), forming Dijon Plaza Joint Venture (the "Dijon Partnership"), which was formed to own that certain real property in Bexar County, Texas described as Three tracts of land located in San Antonio, Bexar County, Texas, more particularly described in the attached Exhibit "A".

### Recitals

WHEREAS, pursuant to the original terms of the Dijon Partnership Agreement, ATFL&L has a 35% ownership interest in the Dijon Partnership (the "ATFL&L Partnership Interest");

WHEREAS, Diana G. Flores, in her capacity then as Trustee of ATFL&L, executed that certain Assignment of Interest dated December 21, 2011 (the "December 2011 Assignment"), *purporting* to convey the entire ATFL&L Partnership Interest to Lauren Saks and Landen Saks, as tenants in common.

WHEREAS, Lauren Saks and Landen Saks were not aware of the December 2011 Assignment, never intended to accept or claim title to the ATFL&L Partnership Interest under the December 2011 Assignment and do not now accept or claim title to the ATFL&L Partnership Interest under the December 2011 Assignment.

WHEREAS, according to the December 2011 Assignment, that assignment of the ATFL&L Partnership Interest was made subject to that certain Irrevocable Assignment of Partnership Interest dated May 7, 1996, between ATFL&L and Davis, a copy of which was attached as Exhibit "B" to and incorporated into the December 2011 Assignment (the "Davis Assignment").

WHEREAS, in the Davis Assignment, Diana G. Flores, in her capacity as Trustee of the ATFL&L, *purports* to deliver, transfer, affirm and confirm to Davis, a 99% undivided interest in the ATFL&L Partnership Interest;

WHEREAS, the Dijon Partnership (among other things) is the subject of a Mediated Settlement Agreement dated April 2, 2012 (the "Settlement Agreement"), which was approved by Order dated May 8, 2012, in Cause No. 2011-PC-3466, *Lauren Saks a/k/a Gloria Lauren Nicole Saks, Plaintiff, v. Diane M. Flores and Sandra Garza Davis f/k/a Sandra C. Saks, Defendants*, in the Probate Court No. Two, Bexar County, Texas.

WHEREAS, pursuant to the Settlement Agreement, Davis has agreed to transfer, assign and convey to ATFL&L all of Davis' right, title and interest in and to the Dijon Partnership and the ATFL&L Partnership Interest.

WHEREAS, ATFL&L desires to accept and confirm ownership of the entire ATFL&L Partnership Interest.

WHEREAS, Lauren Saks and Landen Saks desire to confirm and acknowledge that they have not owned and do not now own any interest in the Dijon Partnership or the ATFL&L Partnership Interest.

## Assignment

NOW, THEREFORE, in consideration of the covenants herein contained and the assignment herein made and for the purpose of correcting, confirming and assigning title to the Dijon Partnership and the ATFL&L Partnership Interest, it is hereby mutually COVENANTED, GRANTED, CONCLUDED AND AGREED, by and among the Parties as follows:

1. Davis, for the purposes and consideration set forth above, has GRANTED, SOLD AND ASSIGNED, and by these presents does GRANT, SELL AND ASSIGN unto ATFL&L, all of Davis' right, title and interest in and to the Dijon Partnership and the ATFL&L Partnership Interest, TO HAVE AND TO HOLD any such interest in the Dijon Partnership and the ATFL&L Partnership Interest, together with all and singular the rights and appurtenances thereto in anywise belonging unto ATFL&L, its administrators and assigns forever. *Davis further covenants and agrees that neither Davis nor her heirs, executors, administrators, successors, or assigns shall have, claim or demand any right or title to the Dijon Partnership or the ATFL&L Partnership Interest or any part thereof pursuant to the Davis Assignment, which assignment Davis confirms and acknowledges is now canceled or void and of no further force or effect.*

2. Lauren Saks and Landen Saks, for the purposes and consideration set forth above, have QUITCLAIMED, and by these presents do QUITCLAIM unto ATFL&L, all of Lauren Saks' and Landen Saks' right, title and interest in and to the Dijon Partnership and the ATFL&L Partnership Interest, TO HAVE AND TO HOLD any such interest in the Dijon Partnership and the ATFL&L Partnership Interest, together with all and singular the rights and appurtenances thereto in anywise belonging unto ATFL&L, its administrators and assigns forever. Neither Lauren Saks, nor her heirs, executors, administrators, successors, or assigns, shall have, claim or demand any right or title to the Dijon Partnership or the ATFL&L Partnership Interest or any part thereof. Likewise, neither Landen Saks, nor her heirs, executors, administrators, successors, or assigns, shall have, claim or demand any right or title to the Dijon Partnership or the ATFL&L Partnership Interest or any part thereof.

3. ATFL&L joins in this Conveyance Agreement and Assignment for the purpose of correcting, confirming and accepting title to the Dijon Partnership and the ATFL&L Partnership Interest and to *confirm and acknowledge* the resulting ownership by ATFL&L of all of Davis' right, title and interest in and to the Dijon Partnership and the ATFL&L Partnership Interest.

EXECUTED as the date shown in each acknowledgement below, to be effective as of the 8th day of May, 2012.

*[MULTIPLE SIGNATURE PAGES ATTACHED]*

# SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and ASSIGNMENT)*

_____
Sandra Garza Davis f/k/a Sandra C. Saks
and a/k/a Sandy Saks

STATE OF TEXAS      §
                               §

COUNTY OF _____ §

This instrument was acknowledged before me on the ___ day of August, 2012, by **Sandra Garza Davis.**

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

<u>SIGNATURE PAGE</u>

*(CONVEYANCE AGREEMENT and ASSIGNMENT)*



Marcus Rogers, Interim Trustee of Saks
Children Family Trust a/k/a ATFL&L

STATE OF TEXAS      §

                         §

COUNTY OF BEXAR    §

This instrument was acknowledged before me on the *18th* day of ~~August,~~ *October* 2012, by Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L, on behalf of said trust.

ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

# EXHIBIT 5

V02108P5888

**NOTICE OF CONFIDENTIALITY RIGHTS:**
**IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY**
**OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE**
**IT IS FILED FOR RECORD IN THE PUBLIC RECORDS -- YOUR SOCIAL**
**SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## CONVEYANCE AGREEMENT and DEED

The parties to this agreement are Sandra Garza Davis f/k/a Sandra C. Saks a/k/a Sandy Saks ("Davis") and Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L ("ATFL&L") (jointly, the "Parties"). The Parties desire, through this Conveyance Agreement and Deed, to correct, confirm and convey title to the following described properties (the "Bexar County Properties"):

Lot Four (4), Block Thirty Three (33), Alamo Heights, City of Alamo Heights, situated in Bexar County, Texas, according to plat thereof recorded in Volume 105, Pages 290-296, Deed and Plat Records of Bexar County, Texas (the "Broadway Property").

Three tracts of land located in San Antonio, Bexar County, Texas, more particularly described in the attached Exhibit "A" (the "Dijon Plaza Property").

Lot 58, New City Block 11883, Olmos Park Heights, City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 980, Pages 29, Deed and Plat Records of Bexar County, Texas (the "Sunset Property").

### Recitals

WHEREAS, the Bexar County Properties (among other things) are the subject of a Mediated Settlement Agreement dated April 2, 2012 (the "Settlement Agreement"), which was approved by Order dated May 8, 2012, in Cause No. 2011-PC-3466, *Lauren Saks a/k/a Gloria Lauren Nicole Saks, Plaintiff, v. Diane M. Flores and Sandra Garza Davis f/k/a Sandra C. Saks, Defendants*, in the Probate Court No. Two, Bexar County, Texas.

WHEREAS, pursuant to the Settlement Agreement, Davis has agreed to transfer, assign and convey to ATFL&L all of Davis' right, title and interest in and to the Bexar County Properties.

WHEREAS, ATFL&L desires to accept and confirm the conveyance of all of Davis' right, title and interest, if any, in and to the Bexar County Properties.

## Conveyances

NOW, THEREFORE, in consideration of the covenants herein contained and the conveyances herein made and for the purpose of correcting, confirming and conveying title to the Bexar County Properties, it is hereby mutually COVENANTED, GRANTED, CONCLUDED AND AGREED, by and between the parties as follows:

1. Davis, for the purposes and consideration set forth above, has GRANTED, SOLD AND CONVEYED, and by these presents does GRANT, SELL AND CONVEY unto ATFL&L, all of Davis' right, title and interest in and to the Bexar County Properties, TO HAVE AND TO HOLD the Bexar County Properties, together with all and singular the rights and appurtenances thereto in anywise belonging unto ATFL&L, its administrators and assigns forever, without express or implied warranty. All warranties that might arise by common law, as well as the warranties in Section 5.023 of the Texas Property Code (or its successor), are excluded.

2. ATFL&L joins in this Conveyance Agreement and Deed for the purpose of correcting, confirming and conveying title to the Bexar County Properties and to *confirm and acknowledge* the resulting ownership by ATFL&L of all of Davis' right, title and interest in and to the Bexar County Properties,

These conveyances are made and accepted subject to any and all conditions, covenants, easements and restrictions, if any, relating to the Bexar County Properties, to the extent, and only to the extent, that the same may still be in force and effect, shown of record in the office of the County Clerk of Bexar County, Texas, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are in effect, relating to the Bexar County Properties.

EXECUTED as the date shown in each acknowledgement below, to be effective as of the 8th day of May, 2012.

*[MULTIPLE SIGNATURE PAGES ATTACHED]*

247

## SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and DEED)*

_____
Sandra Garza Davis f/k/a Sandra C. Saks
and a/k/a Sandy Saks


STATE OF TEXAS            §
                          §
COUNTY OF _____       §

This instrument was acknowledged before me on the ___ day of August, 2012, by Sandra Garza Davis.

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

V02108P5891

# SIGNATURE PAGE

## (CONVEYANCE AGREEMENT and DEED)

_____

Marcus Rogers, Interim Trustee of Saks
Children Family Trust a/k/a ATFL&L

STATE OF TEXAS       §
                         §

COUNTY OF BEXAR     §

This instrument was acknowledged before me on the 18th day of October, 2012, by Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L, on behalf of said trust.



NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

[SEAL]

AFTER RECORDING, PLEASE RETURN TO:

Law Offices of Marcus P. Rogers
2135 E. Hildebrand Ave.
San Antonio, Texas 78209

V02108P5892

# SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and ASSIGNMENT)*



Lauren Saks

STATE OF TEXAS §
§
COUNTY OF Bexar §

   This instrument was acknowledged before me on the _18_ day of October, August, 2012, by Lauren Saks.

ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

V02108P5893

## <u>SIGNATURE PAGE</u>

*(CONVEYANCE AGREEMENT and ASSIGNMENT)*

_____
Landen Saks

STATE OF TEXAS     §
                               §
COUNTY OF _____ §

    This instrument was acknowledged before me on the ___ day of August, 2012, by **Landen Saks.**

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

# Exhibit "A"

*(DIjon Plaza Tract)*

## PROPERTY

Tract 1:

Lot Thirty-Five (35), NCB 11928, lying and being situated within the corporate limits of the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 6600, Page 237, Deed and Plat Records of Bexar County, Texas.

Tract 2:

0.478 acres of land out of Lot Number Thirty-Two (32), NCB 11928, Knibbe Subdivision, Unit No. 3, lying within the corporate limits of the City of San Antonio, in Bexar County, Texas, according to plat of record at Volume 5300, Page 275, Plat Records of Bexar County, Texas, said 0.478 acres described by metes and bounds as follows:

BEGINNING at a point for the Southeast corner of this tract, said point being 35.50 feet West and N. 00° 09' 00" E. 12.5 feet from the Southeast corner of Lot 32, NCB 11928, said point being also the Southwest corner of Lot 35, NCB 11928, as recorded in the Plat Records of Bexar County, Texas, at Volume 6600, Page 237;

THENCE with the south line of this tract and with a line parallel to and 12.5 feet north of Nottingham Road, West a distance of 135.00 feet to a point for the Southwest corner of this tract;

THENCE N. 00° 09' 00" E., a distance of 154.10 feet to a point for the Northwest corner of this tract;

THENCE East a distance of 135.00 feet to a point for the Northeast corner of this tract, said point being the Northwest corner of Lot 35, NCB 11928;

THENCE with the East line of this tract and the West line of said Lot 35, S. 00° 09' 00" W., a distance of 154.10 feet to the POINT OF BEGINNING of this tract, this tract containing 0.478 acres of land, more or less.

Tract 3:

Being a Tract of land containing 0.038 acres and being a 12.5' wide and 135.0' long strip of land out of the southeast corner of Lot 32, N.C.B. 11928, Knibbe Subdivision, Unit 3, as recorded in Vol. 5300, Pg. 275 of the official plat records of Bexar County, Texas, said Tract being located on the north right-of-way line of Nottingham Road in San Antonio, Bexar County, Texas, and being more particularly described as follows:

BEGINNING at a set 1/2" iron pin at the southeast corner of the herein described Tract, said corner being on the north line of Nottingham Road and the south line of Lot 32;

# Exhibit "A"

*(Dijon Plaza Tract)*

THENCE N. 90-00-00W. along said north line of Nottingham Road and south line of Lot 32, a distance of 135.00' to a found 1/2" iron pin at the southwest corner of this Tract;

THENCE N. 00-09-00E., leaving the north line of Nottingham Road and south line of Lot 32, a distance of 12.50" to a found 1/2" iron pin at the northwest corner of this Tract;

THENCE N. 90-00-00E. a distance of 135.00' to a found "X" in concrete curb at the northeast corner of this Tract and the southwest corner of Lot 35, as shown on the plat of Knibbe Subdivision as recorded in Vol. 6600, Pg. 237 of said deed records;

THENCE S.00-09-00W. a distance of 12.50' to the point of BEGINNING.

# EXHIBIT 7

V02108P5897

## CONVEYANCE AGREEMENT and ASSIGNMENT

The parties to this agreement are Sandra Garza Davis f/k/a Sandra C. Saks a/k/a Sandy Saks ("Davis"), Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L ("ATFL&L"), Lauren Saks and Landen Saks (jointly, the "Parties"). The Parties desire, through this Conveyance Agreement and Assignment, to correct, confirm and assign the ownership interest in the following described partnership:

> ATFL&L and Perry Donop executed that certain Partnership Agreement dated January 16, 1996 (the "Broadway Partnership Agreement"), forming 5321 Broadway Partners, a Texas General Partnership (the "Broadway Partnership"), which was formed to manage that certain real property in Bexar County, Texas, described as Lot Four (4), Block Thirty Three (33), Alamo Heights, City of Alamo Heights, situated in Bexar County, Texas, according to plat thereof recorded in Volume 105, Pages 290-296, Deed and Plat Records of Bexar County, Texas.

### Recitals

WHEREAS, pursuant to the original terms of the Broadway Partnership Agreement, ATFL&L has a 75% ownership interest in the Broadway Partnership (the "ATFL&L Partnership Interest");

WHEREAS, Diana G. Flores, in her capacity then as Trustee of ATFL&L, executed that certain Assignment of Interest dated December 21, 2011 (the "December 2011 Assignment"), *purporting* to convey the entire ATFL&L Partnership Interest to Lauren Saks and Landen Saks, as tenants in common.

WHEREAS, Lauren Saks and Landen Saks were not aware of the December 2011 Assignment, never intended to accept or claim title to the ATFL&L Partnership Interest under the December 2011 Assignment and do not now accept or claim title to the ATFL&L Partnership Interest under the December 2011 Assignment.

WHEREAS, according to the December 2011 Assignment, that assignment of the ATFL&L Partnership Interest was made subject to that certain Irrevocable Assignment of Partnership Interest dated January 6, 1996, between ATFL&L and Davis, a copy of which was attached as Exhibit "B" to and incorporated into the December 2011 Assignment (the "Davis Assignment").

WHEREAS, in the Davis Assignment, Diana G. Flores, in her capacity as Trustee of the ATFL&L, *purports* to deliver, transfer, affirm and confirm to Davis, a 99% undivided interest in the ATFL&L Partnership Interest;

WHEREAS, the Broadway Partnership (among other things) is the subject of a Mediated Settlement Agreement dated April 2, 2012 (the "Settlement Agreement"), which was approved by Order dated May 8, 2012, in Cause No. 2011-PC-3466, *Lauren Saks a/k/a Gloria Lauren Nicole Saks, Plaintiff, v. Diane M. Flores and Sandra Garza Davis f/k/a Sandra C. Saks, Defendants*, in the Probate Court No. Two, Bexar County, Texas.

WHEREAS, pursuant to the Settlement Agreement, Davis has agreed to transfer, assign and convey to ATFL&L all of Davis' right, title and interest in and to the Broadway Partnership and the ATFL&L Partnership Interest.

WHEREAS, ATFL&L desires to accept and confirm ownership of the entire ATFL&L Partnership Interest.

WHEREAS, Lauren Saks and Landen Saks desire to confirm and acknowledge that they have not owned and do not now own any interest in the Broadway Partnership or the ATFL&L Partnership Interest.

## Assignment

NOW, THEREFORE, in consideration of the covenants herein contained and the assignment herein made and for the purpose of correcting, confirming and assigning title to the Broadway Partnership and the ATFL&L Partnership Interest, it is hereby mutually COVENANTED, GRANTED, CONCLUDED AND AGREED, by and among the Parties as follows:

1. Davis, for the purposes and consideration set forth above, has GRANTED, SOLD AND ASSIGNED, and by these presents does GRANT; SELL AND ASSIGN unto ATFL&L, all of Davis' right, title and interest in and to the Broadway Partnership and the ATFL&L Partnership Interest, TO HAVE AND TO HOLD any such interest in the Broadway Partnership and the ATFL&L Partnership Interest, together with all and singular the rights and appurtenances thereto in anywise belonging unto ATFL&L, its administrators and assigns forever. *Davis further covenants and agrees that neither Davis nor her heirs, executors, administrators, successors, or assigns shall have, claim or demand any right or title to the Broadway Partnership or the ATFL&L Partnership Interest or any part thereof pursuant to the Davis Assignment, which assignment Davis confirms and acknowledges is now canceled or void and of no further force or effect.*

2. Lauren Saks and Landen Saks, for the purposes and consideration set forth above, have **QUITCLAIMED**, and by these presents do **QUITCLAIM** unto ATFL&L, all of Lauren Saks' and Landen Saks' right, title and interest in and to the Broadway Partnership and the ATFL&L Partnership Interest, TO HAVE AND TO HOLD any such interest in the Broadway Partnership and the ATFL&L Partnership Interest, together with all and singular the rights and appurtenances thereto in anywise belonging unto ATFL&L, its administrators and assigns forever. Neither Lauren Saks, nor her heirs, executors, administrators, successors, or assigns, shall have, claim or demand any right or title to the Broadway Partnership or the ATFL&L Partnership Interest or any part thereof. Likewise, neither Landen Saks, nor her heirs, executors, administrators, successors, or assigns, shall have, claim or demand any right or title to the Broadway Partnership or the ATFL&L Partnership Interest or any part thereof.

3. ATFL&L joins in this Conveyance Agreement and Assignment for the purpose of correcting, confirming and accepting title to the Broadway Partnership and the ATFL&L Partnership Interest and to *confirm and acknowledge* the resulting ownership by ATFL&L of all of Davis' right, title and interest in and to the Broadway Partnership and the ATFL&L Partnership Interest.

EXECUTED as the date shown in each acknowledgement below, to be effective as of the 8th day of May, 2012.

*[MULTIPLE SIGNATURE PAGES ATTACHED]*

V021028P5000

# SIGNATURE PAGE

## (CONVEYANCE AGREEMENT and ASSIGNMENT)

Sandra Garza Davis f/k/a Sandra C. Saks
and a/k/a Sandy Saks

STATE OF TEXAS §
§
COUNTY OF _____ §

This instrument was acknowledged before me on the ___ day of August, 2012, by Sandra Garza Davis.

NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

V02108P5901

## SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and ASSIGNMENT)*

_____
Marcus Rogers, Interim Trustee of Saks
Children Family Trust a/k/a ATFL&L


STATE OF TEXAS    §
          §
COUNTY OF BEXAR   §

This instrument was acknowledged before me on the 18 day of ~~August,~~ October 2012, by Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L, on behalf of said trust.

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

[SEAL]

## SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and ASSIGNMENT)*



Lauren Saks

STATE OF TEXAS      §
                    §
COUNTY OF Bexar     §

This instrument was acknowledged before me on the 18 day of ~~August~~ October, 2012, by Lauren Saks.

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

[SEAL]

## SIGNATURE PAGE

### *(CONVEYANCE AGREEMENT and ASSIGNMENT)*

_____
Landen Saks


STATE OF TEXAS         §
                       §
COUNTY OF _____    §

    This instrument was acknowledged before me on the ___ day of August, 2012, by Landen Saks.

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

V02108P5904

# EXHIBIT 8

V02108P5905

## CONVEYANCE AGREEMENT and ASSIGNMENT

The parties to this agreement are Sandra Garza Davis f/k/a Sandra C. Saks a/k/a Sandy Saks ("Davis"), Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L ("ATFL&L"), Lauren Saks and Landen Saks (jointly, the "Parties"). The Parties desire, through this Conveyance Agreement and Assignment, to correct, confirm and assign the ownership interest in the following described partnership:

ATFL&L, Harry Drought and McCain-Luhn, L.L.C., executed that certain Partnership Agreement dated January 6, 1998 (the "Sunset Partnership Agreement"), forming The Sunset Partners, a Texas General Partnership (the "Sunset Partnership"), which was formed to manage that certain real property in Bexar County, Texas, described as Lot 58, New City Block 11883, Olmos Park Heights, City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 980, Pages 29, Deed and Plat Records of Bexar County, Texas.

## Recitals

WHEREAS, pursuant to the original terms of the Sunset Partnership Agreement, ATFL&L has a 40% ownership interest in the Sunset Partnership (the "ATFL&L Partnership Interest");

WHEREAS, Diana G. Flores, in her capacity then as Trustee of ATFL&L, executed that certain Assignment of Interest dated December 21, 2011 (the "December 2011 Assignment"), *purporting* to convey the entire ATFL&L Partnership Interest to Lauren Saks and Landen Saks, as tenants in common.

WHEREAS, Lauren Saks and Landen Saks were not aware of the December 2011 Assignment, never intended to accept or claim title to the ATFL&L Partnership Interest under the December 2011 Assignment and do not now accept or claim title to the ATFL&L Partnership Interest under the December 2011 Assignment.

WHEREAS, according to the December 2011 Assignment, that assignment of the ATFL&L Partnership Interest was made subject to that certain Assignment of Partnership Interest dated January 6, 1998, between ATFL&L and Davis, a copy of which was attached as Exhibit "B" to and incorporated into the December 2011 Assignment (the "Davis Assignment").

WHEREAS, in the Davis Assignment, Diana G. Flores, in her capacity as Trustee of the ATFL&L, *purports* to deliver, transfer, affirm and confirm to Davis, a 99% undivided interest in the ATFL&L Partnership Interest;

WHEREAS, the Sunset Partnership (among other things) is the subject of a Mediated Settlement Agreement dated April 2, 2012 (the "Settlement Agreement"), which was approved by Order dated May 8, 2012, in Cause No. 2011-PC-3466, *Lauren Saks a/k/a Gloria Lauren Nicole Saks, Plaintiff, v. Diane M. Flores and Sandra Garza Davis f/k/a Sandra C. Saks, Defendants*, in the Probate Court No. Two, Bexar County, Texas.

WHEREAS, pursuant to the Settlement Agreement, Davis has agreed to transfer, assign and convey to ATFL&L all of Davis' right, title and interest in and to the Sunset Partnership and the ATFL&L Partnership Interest.

WHEREAS, ATFL&L desires to accept and confirm ownership of the entire ATFL&L Partnership Interest.

WHEREAS, Lauren Saks and Landen Saks desire to confirm and acknowledge that they have not owned and do not now own any interest in the Sunset Partnership or the ATFL&L Partnership Interest.

## Assignment

NOW, THEREFORE, in consideration of the covenants herein contained and the assignment herein made and for the purpose of correcting, confirming and assigning title to the Sunset Partnership and the ATFL&L Partnership Interest, it is hereby mutually COVENANTED, GRANTED, CONCLUDED AND AGREED, by and among the Parties as follows:

1. Davis, for the purposes and consideration set forth above, has GRANTED, SOLD AND ASSIGNED, and by these presents does GRANT, SELL AND ASSIGN unto ATFL&L, all of Davis' right, title and interest in and to the Sunset Partnership and the ATFL&L Partnership Interest, TO HAVE AND TO HOLD any such interest in the Sunset Partnership and the ATFL&L Partnership Interest, together with all and singular the rights and appurtenances thereto in anywise belonging unto ATFL&L, its administrators and assigns forever. *Davis further covenants and agrees that neither Davis nor her heirs, executors, administrators, successors, or assigns shall have, claim or demand any right or title to the Sunset Partnership or the ATFL&L Partnership Interest or any part thereof pursuant to the Davis Assignment, which assignment Davis confirms and acknowledges is now canceled or void and of no further force or effect.*

V02108P5907

2. Lauren Saks and Landen Saks, for the purposes and consideration set forth above, have **QUITCLAIMED**, and by these presents do **QUITCLAIM** unto ATFL&L, all of Lauren Saks' and Landen Saks' right, title and interest in and to the Sunset Partnership and the ATFL&L Partnership Interest, TO HAVE AND TO HOLD any such interest in the Sunset Partnership and the ATFL&L Partnership Interest, together with all and singular the rights and appurtenances thereto in anywise belonging unto ATFL&L, its administrators and assigns forever. Neither Lauren Saks, nor her heirs, executors, administrators, successors, or assigns, shall have, claim or demand any right or title to the Sunset Partnership or the ATFL&L Partnership Interest or any part thereof. Likewise, neither Landen Saks, nor her heirs, executors, administrators, successors, or assigns, shall have, claim or demand any right or title to the Sunset Partnership or the ATFL&L Partnership Interest or any part thereof.

3. ATFL&L joins in this Conveyance Agreement and Assignment for the purpose of correcting, confirming and accepting title to the Sunset Partnership and the ATFL&L Partnership Interest and to *confirm and acknowledge* the resulting ownership by ATFL&L of all of Davis' right, title and interest in and to the Sunset Partnership and the ATFL&L Partnership Interest.

EXECUTED as the date shown in each acknowledgement below, to be effective as of the 8th day of May, 2012.

*[MULTIPLE SIGNATURE PAGES ATTACHED]*

V02108P5908

## SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and ASSIGNMENT)*

_____
Sandra Garza Davis f/k/a Sandra C. Saks
and a/k/a Sandy Saks

STATE OF TEXAS      §
                      §
COUNTY OF _____ §

    This instrument was acknowledged before me on the ___ day of August, 2012, by Sandra Garza Davis.

_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

V02l08P5909

<u>SIGNATURE PAGE</u>

*(CONVEYANCE AGREEMENT and ASSIGNMENT)*

_____
Marcus Rogers, Interim Trustee of Saks
Children Family Trust a/k/a ATFL&L

STATE OF TEXAS      §
                         §
COUNTY OF BEXAR    §

This instrument was acknowledged before me on the 18th day of October, 2012, by Marcus Rogers, Interim Trustee of Saks Children Family Trust a/k/a ATFL&L, on behalf of said trust.



_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

[SEAL]

<u>SIGNATURE PAGE</u>

*(CONVEYANCE AGREEMENT and ASSIGNMENT)*

Lauren Saks

STATE OF TEXAS §

COUNTY OF Bexar §

This instrument was acknowledged before me on the 18th day of August, October 2012, by Lauren Saks.

ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

## SIGNATURE PAGE

*(CONVEYANCE AGREEMENT and ASSIGNMENT)*


_____
Landen Saks


STATE OF TEXAS     §
                             §
COUNTY OF _____ §

This instrument was acknowledged before me on the ___ day of August, 2012, by Landen Saks.


_____
NOTARY PUBLIC, State of TEXAS

My Commission Expires: _____

[SEAL]

# EXHIBIT 9

V02108P5913

## WARRANTY DEED

THIS DEED, made effective the 14th day of June, 2012 between SANDY SAKS, (formerly known as SANDY SAKS DAVIS) of the County of Bexar, State of Texas, ("Grantor") and the Saks Children Family Trust, whose address is 2135 E. Hildebrand, San Antonio, Bexar County, Texas 78209 ("Grantee").

WITNESS, that the Grantor, for and in consideration of the sum of Ten ($10.00) Dollars the receipt and sufficiency of which is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell, convey and confirm unto the Grantee, its heirs and assigns forever, all the real property, together with its improvements, if any, situated lying and being in Eagle County and State of Colorado, described as follows:

All Grantor's undivided interest in Unit 234, Week 11 of the Mountain Lodge, A Condominium, according to the Declaration of Condominium of Mountain Lodge, a condominium Recorded November 9, 1998, Reception No. 675479, as amended and supplemented from time to time, and according to the map for Mountain Lodge, A Condominium Recorded November 9, 1998, Reception No. 675478 as amended and supplemented from time to time, all in the Office of the Clerk and Recorder of Eagle County, Colorado together with the perpetual use of fixed week 11 in such Unit 234 in accordance with the Declaration of Condominium of Mountain Lodge, a condominium, and in accordance with the resort documents.

TOGETHER with all and singular and hereditaments and appurtenances thereto belonging or in anywise appertaining and the reversion and reversions, reminder and reminders, rents, issues and profits thereof; and all the estate, right, title, interest, claim and demand whatsoever of the Grantor, either in law or equity of, in and to the above bargained premises, with the hereditaments and appurtenances.

TO HAVE AND TO HOLD the said premises above bargained and described with appurtenances, unto the Grantee, its heirs and assigns forever. The Grantor, for herself, her heirs and personal representatives, does covenant, grant, bargain and agree to and with the Grantee(s), its heirs and assigns, that at the time of the ensealing and delivery of these presents, he is well seized of the premises above conveyed, has good, sure, perfect, absolute and indefeasible estate of inheritance, in law, in fee simple, and has good right, full power and lawful authority to grant, bargain, sell and convey the same in manner and form as aforesaid, and that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments, encumbrances and restrictions of whatever kind or nature soever, EXCEPT GENERAL TAXES AND ASSESSMENTS FOR THE YEAR 2012, PREVIOUS AND SUBSEQUENT YEARS AND SUBJECT TO EASEMENTS, RESERVATIONS, RESTRICTIONS, COVENANTS AND RIGHT OF WAY OF RECORD, IF ANY.

The Grantor shall and will WARRANT AND FOREVER DEFEND the above bargained premises in the quiet and peaceable possession of the Grantee, its heirs and assigns, against all and every person of person lawfully claiming the whole or part thereof. The

V02108P5914

271

singular shall include the plural and the plural the singular, and the use of any gender shall be applicable to all genders.

IN WITNESS WHEREOF, signed this _____ day of June, 2012.

GRANTOR:

_____

SANDY SAKS, formerly known as
SANDY SAKS DAVIS

STATE OF TEXAS

COUNTY OF BEXAR

The forgoing instrument was acknowledged by, <u>SANDY SAKS,</u> formerly known as SANDY SAKS DAVIS, before me on the ____ day of _____, 2012.

_____

Notary Public

After Recording Return To:

Marcus P. Rogers, Interim Trustee
The Saks Children Family Trust
2135 E. Hildebrand
San Antonio, Texas  78209

V02108P5915

# EXHIBIT 10

V02108P5916

UNITED STATES OF AMERICA                    *   ACT OF SALE
                                                BY
STATE OF LOUISIANA                          *   SANDY SAKS and/or
                                                Saks Children Family Fund
PARISH OF ORLEANS                           *   Sandy Camela Saks, Trustee
                                                TO:
                                                MARCUS P. ROGERS, Interim
                                                Trustee of the Saks Children Family
                                                Trust or ATFL&L

BE IT KNOWN that on the ____ day of the month of _____ in the year of our Lord Two
Thousand Twelve (2012) and in the presence of the undersigned witnesses:

PERSONALLY CAME AND APPEARED:

SANDY SAKS and/or Saks Children Family Fund, Sandy Camela Saks, Trustee, of San
Antonio, Bexar County, Texas, residing at 218 Treasure Way, San Antonio, Texas 78209, herein
referred to as Vendor;

Who declares that she does by these presents grant, convey, transfer, assign, set over, abandon
and deliver, with all legal warranties and will full substitution and subrogation in and to all the
rights and actions of warranty which she has or may have against all preceding owners and
vendors unto:

The SAKS CHILDREN FAMILY TRUST or ATFL&L by Marcus P. Rogers, Interim Trustee,
organized in Texas, Federal ID Number 74-6414431 established January 1, 1991, and their
successors. The SAKS CHILDREN FAMILY TRUST or ATFL&L has a mailing address of
2135 E. Hildebrand, San Antonio, Texas 78209, (hereinafter, whether one or more, referred to as
"Purchaser"); here present, accepting and purchasing for Purchaser, Purchaser's heirs, successors
and assigns, and acknowledging due delivery and possession thereof, all and singular the
following described property, to-wit:

An undivided 1.923% interest in Unit No. 232 of the QUARTER HOUSE 1 CONDOMINIUMS,
Municipal No. 126 Exchange Place, City of New Orleans, Parish of Orleans, State of Louisiana,
and the right to occupy said Unit during Unit Week No. 12, together with all other rights and
appurtenances thereunto appertaining, including with respect to such Unit, and undivided interest
in and all other rights with respect to the "Common Elements" and "Limited Common Elements"
all as provided in the First Amended and Restated Timeshare and Condominium Plan Creating
and Establishing the Quarter House 1 Condominiums (The Amended Declaration) dated
September 15, 1995, including the Survey Plat of the Condominium property by Gilbert, Kelly &
Courturia, Surveyors and Engineers, dated September 12, 1995, filed under N.A. #95-41872 and
registered under instrument No. 111257, of the Conveyance Records of Orleans Parish,
Louisiana (the "Property"), the property being the same property conveyed to Vendor by Cash
Sale deed dated October 10, 1999 recorded as document no. 2000-11036.

V02108P5917

TO HAVE AND TO HOLD the above described property unto Purchaser, Purchaser's heirs, successors and assigns forever.

Vendor and Purchaser each declare that the property conveyed hereby does not constitute the family home or principal residence of Vendor or Purchaser.

Purchaser agrees that the beneficial use and enjoyment of the within conveyed unit shall be available to Purchaser only during the Unit Week indicated above and Purchaser and Purchaser's heirs, successors and assigns shall be subject to the provisions of the First Amended and Restated Timeshare and Condominium Declaration Creating and Establishing the Quarter House 1 Condominiums, concerning timeshare units. This provision shall be deemed to be a covenant running with the title to the Unit.

This sale is made and accepted for an in consideration of the price and sum of TEN AND NO/100 DOLLARS ($10.00) and for other good and valuable consideration, which Purchaser has well and truly paid, in ready and current money to Vendor, who hereby acknowledges the receipt thereof and grants full acquittance and discharge therefore.

Vendor declares and warrants that all City, Parish and State Taxes, up to and including the taxes due for the current year have been paid. Payment of the taxes for the succeeding years will be paid by the Quarter House 1 Owner's Association, Inc. or shall otherwise be assumed by Purchaser.

The customary certificates of the Register of Conveyances, recorder of Mortgages and Tax Offices in and for the Parish of Orleans are hereby waived by all parties to this act, and the undersigned parties acknowledge said waiver, and release and relieve the Notary and the Surety in said Notary's official bond of any liability thereunder.

THE CONDOMINIUM IN WHICH PURCHASER'S UNIT OR UNIT WEEK IS LOCATED IS AN EXISTING BUILDING WHICH IS A PARTIALLY RENOVATED BUILDING, BUT IS NOT A NEW BUILDING. PURCHASER HAS INSPECTED SAID UNIT TOGETHER WITH ALL OF THE COMMON ELEMENTS LOCATED IN SAID BUILDINGS AND ACCEPTS SAME IN THEIR EXISTING CONDITIONS AND ACKNOWLEDGES THAT PURCHASER HAS BEEN INFORMED THAT SAID BUILDING IS NOT A NEW BUILDING. THE CONDOMINIUM UNIT AND ITS APPURTENANT COMMON ELEMENTS ARE SOLD ON AN "AS IS" BASIS, WITHOUT ANY WARRANTY WHATSOEVER, EITHER EXPRESSED OR IMPLIED, AGAINST PATENT OR LATENT DEFECTS OR VICES. THIS WAIVER IS MADE WITH SPECIFIC INTENT TO WAIVE ANY AND ALL RIGHTS TO PROCEED AGAINST VENDOR IN REDHIBITION OR QUANTI MINORIS FOR RETURN OR REDUCTION OF THE PURCHASE PRICE, EXPENSES OF THIS SALE, INTEREST, DAMAGES, OR OTHERWISE.

WITHIN THE UNIT SOLD ARE APPLIANCES AND FIXTURES (A PART OF THE COMMON ELEMENTS) IN THE UNIT. AS TO THESE ITEMS, AND AS TO ANY OTHER CONSUMER PRODUCTS (AS THAT TERM MAY BE DEFINED UNDER APPLICABLE

V02108P5918

FEDERAL LAWS) WHICH MAY BE CONTAINED IN THE UNIT, VENDOR NEITHER MAKES NOR ADOPTS ANY WARRANTY OF ANY NATURE REGARDING SUCH APPLIANCES, FIXTURES AND OTHER CONSUMER PRODUCTS, EXCEPT AS HEREINAFTER SPECIFICALLY SET FORTH THE ONLY WARRANTIES MADE WITH RESPECT TO SUCH APPLIANCES, FIXTURES AND CONSUMER PRODUCTS ARE THOSE, IF ANY, OF THE MANUFACTURER AND/OR OTHER SUPPLIER AND, WITH RESPECT TO THE FIXTURES, APPLIANCES AND OTHER MECHANICAL EQUIPMENT SITUATED WITHIN OR SERVING EXCLUSIVELY THE UNIT OR WEEK CONVEYED HEREIN.

IN WITNESS WHEREOF, the parties hereto have caused this Act of Sale with Disclaimer of Warranty to be executed on the date first written in the presence of the undersigned competent witnesses who have hereunto signed their names with the said parties.

WITNESSES:

Vendor:

_____

_____

_____
SANDY SAKS and/or Saks Children Family Fund

_____
SANDY CAMELA SAKS, Trustee

Purchaser:

_____
Marcus P. Rogers, Interim Trustee of the Saks Children Family Trust or ATFL&L

STATE OF TEXAS

COUNTY OF BEXAR

SUBSCRIBED AND SWORN TO BEFORE ME, by the said Sandy Saks and/or Saks Children Family Fund, and Sandy Camela Saks, Trustee, on the _____ day of _____ 2012.

_____
Notary Public State of Texas

V02108P5919

276

STATE OF TEXAS

COUNTY OF BEXAR

SUBSCRIBED AND SWORN TO BEFORE ME, by the said Marcus P. Rogers, Interim Trustee of the Saks Children Family Trust or ATFL&L on the _18_ day of _October_, 2012.

ANGELINA MARIN
MY COMMISSION EXPIRES
July 15, 2013

Notary Public State of Texas

V02108P5920

TAB 6

NO. 2011-PC-3466

| | | |
|---|---|---|
| LAUREN SAKS a/k/a GLORIA LAUREN NICOLE SAKS, Plaintiff | § § § § | IN THE PROBATE COURT |
| V. | § § | NO. 1 |
| DIANE M. FLORES AND SANDRA GARZA DAVIS, f/k/a SANDRA C. SAKS, Defendant | § § § § § | BEXAR COUNTY, TEXAS |

## ORDER IN AID OF ENFORCEMENT OF JUDGMENT

*August 16, 2013 and September 17, 2013 and October 21, 2013*

On ~~the date below~~, the Court called for hearing the Motion/Application of Trustee, *for Order Enforcing judgment and on* Marcus P. Rogers, Court-appointed Interim Trustee, Lauren Saks appeared before the Court *October 21, 2013 the* through her counsel of record. The Court-appointed *Interim* Trustee, Marcus Rogers, appeared before *Court called* the Court in person and through his counsel of record. Landen Saks appeared before the Court *for hearing Trustee a* though her counsel of record. Sandra Saks appeared before the Court in person. Nick Lee *Motion to Enforce* McFadin did not appear before the Court in person or through counsel. *Judgment and Order to Execute Conveyance Documents and for Contempt*

Sandra Saks and Landen Saks have failed to comply with the Arbitration Award and this Court's Judgment confirming that Award signed on May 7, 2013, by failing to execute the documents they were required to execute under the Award. Those documents are described in paragraph 21 of the Award and are Exhibits 1-10 to the Award. True and correct copies of each of those documents is attached and incorporated into this Order. The Court ordered Sandra Saks and Landen Saks to execute those documents on August 16 and September 17, 2013. Neither Sandra Saks nor Landen Saks has executed any of those documents as the Court ordered. A reasonable time for them to comply with the Court's orders to execute the documents has passed, and they have failed to comply with the Court's orders.

**EXHIBIT "E-8"**

It is, therefore, **ORDERED, ADJUDGED, AND DECREED** that it is hereby deemed by operation of law that Sandra Saks and Landen Saks have executed the following documents attached to and incorporated into this Order as if they had complied with the Arbitration Award: *[handwritten notations]*

1. Conveyance Agreement and Deed V ○2108 P5859 - 5861 *[handwritten]*

2. Conveyance Agreement and Deed V ○2108 P5862 - 5869 *[handwritten]*

3. Conveyance Agreement and Deed V ○2108 P5870 - 5875 *[handwritten]*

4. Agreement and Release of Lien V ○2108 P5876 - 5881 *[handwritten]*

5. Conveyance Agreement and Deed V ○2108 P5883 - 5896 *[handwritten]*

6. Conveyance Agreement and Assignment V ○2108 P5882 - 5887 *[handwritten]*

7. Conveyance Agreement and Assignment V ○2108 P5897 - 5904 *[handwritten]*

8. Conveyance Agreement and Assignment V ○2108 P5905 - 5912 *[handwritten]*

9. Warranty Deed V ○2108 P5913 - 5915 *[handwritten]*

10. Act of Sale by Sandy Saks to Marcus P. Rogers V ○2108 P5916 - 5920 *[handwritten]*

**IT IS SO ORDERED, ADJUDGED, AND DECREED** *as of November 5th, 2013 and* *[handwritten]* *October 21st, 2013 but 14th*

Signed on ____November 5th____, 2013.

FILED

NOV 1 4 2013

GERARD RICKHOFF
CLERK PROBATE CO.
BY: _____
DEPUTY

_____
HONORABLE POLLY JACKSON-SPENCER
Presiding Judge

---

ORDER IN AID OF ENFORCEMENT OF JUDGMENT
Page 2 of 2

282

TAB 7



# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00518-CV

Sandra Garza **DAVIS** f/k/a Sandra C. Saks and Landen Saks,
Appellants

v.

Lauren Saks **MERRIMAN** and Marcus P. Rogers, Interim Trustee,
Appellees

No. 04-13-00875-CV

Sandra **SAKS**, Margaret Landen Saks, and Lee Nick McFadin III
Appellants

v.

Lauren **SAKS** a/k/a Gloria Lauren Nicole Saks and Marcus P. Rogers, Interim Trustee,
Appellees

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2011-PC-3466
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Rebeca C. Martinez, Justice
                Jason Pulliam, Justice

Delivered and Filed:  March 4, 2015

AFFIRMED IN PART, DISMISSED FOR LACK OF JURISDICTION IN PART

In these consolidated appeals, the appellants, Margaret Landen Saks and her mother,

Sandra C. Saks, challenge a judgment confirming an arbitration award and an order in aid of

enforcement of judgment. The appellees, Lauren Saks and Marcus P. Rogers, urge us to affirm the judgment confirming the arbitration award and to dismiss for lack of jurisdiction the appeal from the order in aid of enforcement of judgment. We affirm the judgment confirming the arbitration award, but dismiss for lack of jurisdiction the appeal from the order in aid of enforcement of judgment.

BACKGROUND

These appeals arise from disputes concerning an inter vivos trust. In 1991, Sandra created the trust for the benefit of her children, "Gloria Lauren Nicole Saks ['Lauren'] and Margaret Landen Saks Merriman ['Landen'] and any other children later born or legally adopted . . . by Sandra Saks ['Sandra']." In accordance with the terms of the trust agreement, Sandra's sister, Diane Flores, was appointed trustee. Lauren and Landen are the trust's sole beneficiaries.

In August 2011, Lauren filed suit against Flores, the trustee, and Sandra, the settlor, in a statutory probate court in Bexar County, Texas. The suit, which alleged breaches of fiduciary duty and failures to comply with the trust agreement, sought an accounting and a constructive trust. Lauren also sought Flores's removal as trustee. On December 28, 2011, the probate court appointed Marcus P. Rogers as interim trustee. Thereafter, Rogers submitted a report to the probate court in which he concluded that any attempt by Flores to terminate the trust was ineffective.

On April 2, 2012, the parties entered into a mediated settlement agreement ("MSA"). The MSA required the parties to resolve future disputes by mediation and arbitration. Specifically, the MSA provided,

> If one or more disputes arise with regard to the interpretation and/or performance of this Agreement or any of its provisions, including the form of further documents to be executed, the Parties agree to further mediation in an attempt to resolve same with Thomas Smith, the Mediator[] who facilitated this settlement. In the event a dispute arises between the Parties, it is hereby agreed that the dispute shall be referred to Thomas Smith, the Mediator herein, for arbitration in accordance with the applicable United States Arbitration and Mediation Rules of Arbitration. The

arbitrator's decision shall be final and legally binding and judgment may be entered thereon . . . .

On May 8, 2012, the probate court signed an order approving the MSA and authorizing Rogers, the interim trustee, to sign the MSA. However, the order approving the MSA did not dismiss the claims in the underlying suit.

On August 21, 2012, Lauren filed a motion to compel arbitration, claiming that matters regarding the interpretation and performance of the MSA remained unresolved. On September 4, 2012, the probate court, in accordance with the MSA, ordered Sandra, Lauren, Landen, and Rogers to attend mediation and, if necessary, arbitration. The arbitration took place on October 18, 2012. The arbitrator's award ordered Sandra and Flores to execute certain documents conveying to the trust all of their rights, title, and interest in certain property "no later than October 31, 2012."

Sandra filed a motion asking the probate court to vacate the arbitrator's award. The motion was denied. Landen did not ask the probate court to vacate the arbitrator's award.

On May 7, 2013, the probate court signed a final judgment confirming the arbitrator's award. The probate court incorporated the arbitration award into its judgment and entered it as a judgment of the court. The arbitration award ordered Sandra and Landen to execute certain conveyance documents. Sandra and Landen appealed the judgment confirming the arbitrator's award. This appeal was docketed in this court as appellate cause number 04-13-00518-CV.

On November 14, 2013, the trial court signed an order titled, "Order in Aid of Enforcement of Judgment." In this order, the probate court found that Sandra and Landen had failed to comply with the arbitration award and the judgment confirming the arbitration award by failing to execute the conveyance documents as previously ordered, and deemed the documents executed. Sandra and Landen appealed this order. The latter appeal was docketed in this court as appellate cause number 04-13-00875-CV.

**JUDGMENT CONFIRMING THE ARBITRATION AWARD**

An arbitration award is given the same effect as a judgment of last resort and is conclusive as to all matters of fact and law. *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *Stieren v. McBroom*, 103 S.W.3d 602, 605 (Tex. App.—San Antonio 2003, pet. denied). We review the trial court's judgment confirming an arbitration award de novo. *Corr. Products Co., Ltd. v. Gaiser Precast Constr.*, 394 S.W.3d 818, 823-24 (Tex. App.—El Paso 2013, no pet.); *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 262 (Tex. App.—San Antonio 2003, pet. denied). In conducting this review, we indulge all reasonable presumptions in favor of upholding the arbitration award. *Gaiser Precast Constr.*, 394 S.W.3d at 824; *GJR Mgmt. Holdings*, 126 S.W.3d at 262. "Because Texas law favors arbitration, judicial review of an arbitration award is extraordinarily narrow." *E. Texas Salt Water Disposal Co., Inc. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010).

No one disputes that the arbitration agreement in this case is governed by the Texas Arbitration Act ("TAA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. 171.001-.098 (West 2011). The TAA requires a trial court to confirm an arbitration award upon a party's application unless a party offers grounds for vacating, modifying, or correcting the award. *Callahan & Assoc. v. Orangefield Indep. Sch. Dist.*, 92 S.W.3d 841, 844 (Tex. 2002) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 171.087 (West 2011)). When no grounds for vacating the award are presented, the trial court "on application of a party, shall confirm the award." TEX. CIV. PRAC. & REM. CODE § 171.087.

Bexar County Probate Courts Nos. 1 and 2 are statutory probate courts. *See* TEX. GOV'T CODE ANN. § 25.0171(c) (West Supp. 2014). Statutory probate courts have jurisdiction over actions by or against a trustee and actions involving inter vivos trusts. *See* TEX. ESTATES CODE ANN. § 32.006 (West 2014). This jurisdiction is concurrent with the jurisdiction of the district courts. *See* TEX. ESTATES CODE ANN. § 32.007 (West 2014). Statutory probate courts also have

jurisdiction over other matters, such as probate proceedings. *Stauffer v. Nicholson*, 438 S.W.3d 205, 215 (Tex. App.—Dallas 2014, no pet.).

### *Jurisdictional Arguments*

As a threshold matter, we note the arguments presented by Sandra and Landen are unrelated to any grounds presented in Sandra's motion to vacate the arbitration award.[1] Instead, Sandra and Landen argue the probate court was deprived of subject matter jurisdiction both at the time it compelled arbitration and at the time it rendered judgment confirming the arbitration award.[2] In making these jurisdictional arguments, Sandra and Landen acknowledge that the probate court acquired subject matter jurisdiction over Lauren's suit. However, according to Sandra and Landen, prior to compelling arbitration, the probate court lost subject matter jurisdiction either because (1) the trust had terminated or (2) the probate court's plenary power had expired. In response, Lauren and Rogers argue the probate court did not lose subject matter jurisdiction prior to compelling arbitration or prior to confirming the arbitration award.

We will address both jurisdictional theories presented by Sandra and Landen. Under their first theory, that the probate court lost subject matter jurisdiction because of the termination of the trust, Sandra and Landen contend that under the language of the trust agreement, Flores, as trustee,

---

[1] Landen filed a motion for new trial but did not file a motion to vacate the arbitration award.

[2] In appellate cause number 04-13-00518-CV, Sandra and Landen state their issues as follows:

1. Did the trial court's plenary power end on June 9, 2012, which was 30 days after the M[ediated] S[ettlement] A[greement] was approved on May 8, 2012?

2. Did the court lack jurisdiction to compel the parties to arbitration pursuant to an [o]rder dated September 5, 2012?

3. Was the arbitration award void because arbitration was commenced pursuant to a void court order rather than pursuant to a petition for arbitration filed in accordance with the United States Arbitration and Mediation Rules of Arbitration as provided in the Mediated Settlement Agreement?

4. Was the trial court's [j]udgment signed on May 7, 2013, approving a void arbitration award also void?

was authorized to terminate the trust and distribute the trust assets to the income beneficiaries. They further contend that, on or about December 21, 2011, Flores terminated the trust in accordance with the trust agreement, and the termination deprived the probate court of jurisdiction to compel arbitration.

In response, Lauren and Rogers argue the trust was never terminated. This argument is supported by the record. Both the MSA reached by the parties and the arbitration award are premised on the notion that the trust was not terminated. Additionally, Lauren argues that, even if the trust had been terminated, the probate court would not have been deprived of jurisdiction. According to Lauren, the probate court's jurisdiction was invoked when she filed the underlying suit alleging claims for breach of fiduciary duty and failures to comply with the trust agreement. Lauren contends that even if the trust had been terminated on December 21, 2011, her claims would have survived the termination of the trust, and therefore, the probate court would have retained subject matter jurisdiction. We find Lauren and Rogers's arguments convincing. We conclude that the probate court was not deprived of jurisdiction based on the argument that the trust was terminated.

Under their second theory, Sandra and Landen argue that the order compelling arbitration and the judgment confirming the arbitration award are void because they were signed after the probate court's plenary power expired. This argument is based on the theory that the order approving the MSA constituted rendition of a final judgment and the probate court's jurisdiction ended thirty days after it signed the order approving the MSA.

Mere approval of a settlement agreement does not constitute rendition of judgment. *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995). And, as a general rule, "a judgment issued without a conventional trial is final if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a

final judgment." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192-93 (Tex. 2001). Courts determine whether an order amounts to a final judgment from its language and from the record in the case. *Id.* at 195.

> Here, the order approving the MSA provided, in relevant part,

> IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the Court approves the Mediated Settlement Agreement attached to the Motion to Approve Settlement Agreement as Exhibit "A;" that Marcus P. Rogers, Interim Trustee of the Saks Children Family Trust or ATFL&L, is authorized to sign the Mediated Settlement Agreement attached to this Motion.

Thus, the order approving the MSA did not dispose of all claims and parties before the probate court, nor did it state with unmistakable clarity that it was a final judgment. *See Lehmann*, 39 S.W.3d at 192-93. Additionally, nothing in the record indicates that the order approving the MSA was a final judgment. Because the MSA was not a final judgment, the probate court's plenary power did not expire thirty days after the probate court signed the order.

The only case cited by Sandra and Landen that arguably supports their jurisdictional arguments is *Goodman v. Summit at West Rim, Ltd.*, 952 S.W.2d 930 (Tex. App.—Austin 1997, no pet.). In *Goodman*, the executor of a decedent's estate filed suit in the probate court to clear title to property owned by the estate. *Id.* at 932. In response, the defendant brought third-party claims against other entities. *Id.* Initially, the probate court exercised its ancillary jurisdiction over the third-party claims. *Id.* However, once matters concerning the estate were settled, the probate court dismissed all of the claims by and against the estate. *Id.* Thereafter, the third-party defendants moved to dismiss the claims against them on the ground that, once the claims involving the estate were settled, the probate court lacked subject matter jurisdiction to consider the ancillary claims. *Id.* The probate court agreed and dismissed the ancillary claims from the probate court. *Id.* The court of appeals upheld the dismissal, noting that the "probate court had discretion to resolve ancillary claims against third parties only to the extent that such claims were necessary to resolve

claims within its original jurisdiction. . . . The court's discretion undoubtedly vanished with the dismissal of the estate from the probate proceeding." *Id*. at 934.

Sandra and Landen's reliance on *Goodman* is misplaced. *Goodman* involved the probate court's ancillary jurisdiction over a claim related to a decedent's estate. *Id*. at 933. However, unlike *Goodman*, the present case was not a probate proceeding and it did not involve the exercise of ancillary jurisdiction. *See* TEX. ESTATES CODE ANN. § 22.029 (West 2014) (defining probate proceedings as proceedings or matters relating to a decedent's estate). Instead, the present case was an action against a trustee and it involved an inter vivos trust. *See* TEX. ESTATES CODE ANN. § 32.006; *Nicholson*, 438 S.W.3d at 214-15 (acknowledging that a statutory probate court has jurisdiction not only over matters against a trustee or involving an inter vivos trust, but also over probate proceedings). Thus, *Goodman* is inapplicable to the present case.

We conclude the probate court had subject matter jurisdiction at the time it compelled arbitration and at the time it rendered judgment confirming the arbitration award.[3] We, therefore, overrule Sandra and Landen's arguments that the order compelling arbitration and the judgment confirming the arbitration award were void.

### Remaining arguments

Rule 38.1(i) of the Texas Rules of Appellate Procedure requires a brief to contain a "clear and concise argument for the contentions made with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). An appellate issue unsupported by argument or citation to the record or by appropriate legal authority presents nothing for our review. *Blankinship v. Brown*, 399 S.W.3d 303, 307 (Tex. App.—Dallas 2013, pet. denied). "Failure to cite legal authority or to

---

[3]We further note that the Texas Arbitration Act confers jurisdiction on trial courts to confirm arbitration awards at any time. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.082(a) (West 2011) ("The filing with the clerk of the court of an application for an order under this chapter, including a judgment or decree, invokes the jurisdiction of the court."); *see also* §§ 171.081; 171.087 (West 2011).

provide substantive analysis of the legal issues presented results in waiver of the complaint." *In re Estate of Taylor*, 305 S.W.3d 829, 836 (Tex. App.—Texarkana 2010, no pet.). As the reviewing appellate court, we have neither a duty nor a right to perform an independent review of the record and applicable law to determine if there was error. *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.).

In their briefs, Sandra and Landen attempt to raise several other issues concerning the order compelling arbitration and the judgment confirming the arbitration award. However, the arguments made in support of these issues are wholly unsupported by citation to appropriate legal authority. We, therefore, conclude that Sandra and Landen's remaining issues challenging the judgment confirming the arbitration award present nothing for our review. *See* TEX. R. APP. P. 38.1(i).

## ORDER IN AID OF ENFORCEMENT OF JUDGMENT

Next, Sandra and Landen challenge the probate court's order in aid of enforcement of judgment.[4] This order states that Sandra and Landen failed to execute certain conveyance documents as ordered in the judgment confirming the arbitration award and deems these documents executed "by operation of law."

Generally, post-judgment orders made for the purpose of carrying into effect a prior judgment are not subject to appeal because they are not final judgments. *Wagner v. Warnasch*, 295 S.W.2d 890, 893 (Tex. 1956); *Walter v. Marathon Oil Corp.*, 422 S.W.3d 848, 855 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A writ of execution and orders incident to such a writ are generally not appealable. *Qualia v. Qualia*, 37 S.W.3d 128, 129 (Tex. App.—San Antonio 2001, no pet.). However, there are exceptions to this rule. A few types of post-judgment orders, such as

---

[4]Lee Nick McFadin III also filed a notice of appeal in appellate cause number 04-13-00875-CV. Rogers has moved to dismiss McFadin from this appeal because McFadin was not a party below. Because we conclude that we have no jurisdiction over an appeal from the order in aid of enforcement of judgment, Rogers's motion to dismiss McFadin is denied as moot.

those in the nature of a mandatory injunction, are appealable. *Walter*, 422 S.W.3d at 855; *id.*; *see Kennedy v. Hudnall*, 249 S.W.3d 520, 523-24 (Tex. App.—Texarkana 2008, no pet.) (concluding a particular turnover order was not in the nature of a mandatory injunction and therefore was not appealable).

Here, Lauren argues that the general rule applies in this case, and therefore, the appeal from the order in aid of enforcement of judgment must be dismissed. We agree that the order in aid of enforcement of judgment is not an appealable order. It is not in the nature of a mandatory injunction; it merely carries into effect the judgment confirming the arbitration award. Thus, it is not the type of post-judgment order that is reviewable by appeal. The appeal from the order in aid of enforcement of judgment is therefore dismissed for lack of jurisdiction. *See Walter*, 422 S.W.3d at 855-56 (dismissing appeal for lack of jurisdiction when challenged order did not fall within the limited class of appealable, post-judgment orders); *Qualia*, 37 S.W.3d at 129 (dismissing for lack of jurisdiction appeal from an order that simply provided for enforcement of a judgment in Mexico).

## DAMAGES FOR FRIVOLOUS APPEAL

In a cross-issue, Rogers urges this court to impose sanctions against Sandra and Landen for filing frivolous appeals. Rule 45 of the Texas Rules of Appellate Procedure allows an appellate court, after a determination that an appeal is frivolous, to award to the prevailing party "just damages." TEX. R. APP. P. 45. Typically, appellate courts award the amount of attorney's fees incurred by the appellee as proven by testimony or affidavit. *Walker v. Hardin*, No. 04-03-00864-CV, 2005 WL 899926, at \*2 (Tex. App.—San Antonio April 20, 2005, no pet.); *see Smith v. Marshall B. Brown, P.C.*, 51 S.W.3d 376, 382 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (awarding $5,000.00 in appellate attorney's fees which were proven by affidavit). Here, however, Rogers has not provided an affidavit or other proof of his attorney's fees and expenses involved in

responding to these appeals. We, therefore, deny Rogers's request for sanctions against Sandra and Landen for filing frivolous appeals. *See Walker*, 2005 WL 899926, at *2 (declining to award appellee attorney's fees for a frivolous appeal in the absence of proof).

## CONCLUSION

The judgment confirming the arbitration award is affirmed. The appeal from the order in aid of enforcement of judgment is dismissed for lack of jurisdiction.

Karen Angelini, Justice

TAB 8



CAUSE NO. 2013-CI-17001

| | | |
|---|---|---|
| BROADWAY COFFEEHOUSE, LLC | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 73RD JUDICIAL DISTRICT |
| | § | |
| MARCUS ROGERS, AS TRUSTEE FOR | § | |
| THE SAKS CHILDREN TRUST A/K/A | § | |
| ATFL&L, A TEXAS TRUST; ET AL. | § | BEXAR COUNTY, TEXAS |

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

On the 19th day of August, 2014 came on to be considered the Plaintiff's Amended Motion for Partial Summary Judgment, filed herein by Plaintiff, BROADWAY COFFEEHOUSE, LLC. The Court, having considered said Motion, the Responses thereto, Plaintiff's Second Motion for Leave to Supplement Summary Judgment Evidence, and Plaintiff's Objections to Affidavits of Sandra C. Saks, Diana G. Flores, and Lee Nick McFadin, III, finds the following Order appropriate. It is therefore,

ORDERED, ADJUDGED, AND DECREED that Plaintiff, BROADWAY COFFEEHOUSE, LLC, owns an undivided twenty-five (25%) percent interest, and that Defendant MARCUS ROGERS, AS INTERIM TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L, A TEXAS TRUST, owns an undivided seventy-five (75%) percent interest, in the following real property and improvements (the "Property"):

> Lot Four (4), Block Thirty-Three (33), Alamo Heights, City of Alamo Heights, Situated in Bexar County, Texas, according to Plat thereof Recorded in Volume 105, Pages 295-296, Deed and Plat Records of Bexar County, Texas.

It is further

ORDERED, ADJUDGED, AND DECREED that Plaintiff, BROADWAY COFFEEHOUSE, LLC owns twenty-five (25%) percent, and that Defendant MARCUS ROGERS, AS INTERIM TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A

ATFL&L, A TEXAS TRUST, owns seventy-five (75%) percent, of the partnership known as 5321 BROADWAY PARTNERS (the "Partnership"), which was established by the Partnership Agreement dated on or about January 16, 1996, and the Partnership has equitable title to the Property. It is further

ORDERED, ADJUDGED, AND DECREED that Defendants, SANDRA C. SAKS A/K/A SANDRA GARZA DAVIS; DIANA M. FLORES A/K/A DIANA GARZA FLORES; LAUREN SAKS MERRIMAN A/K/A GLORIA LAUREN NICOLE SAKS; MARGARET LANDEN SAKS A/K/A LANDEN SAKS; LEE NICK McFADIN, III; and SAKS BROADWAY, LLC; own no interest in the Property or the Partnership. It is further

ORDERED, ADJUDGED, AND DECREED that the following documents filed by Defendant SANDRA C. SAKS A/K/A SANDRA GARZA DAVIS in the Official Public Records of Bexar County, Texas, be and hereby are void and of no force or effect:

Assignment of Interest in the 5321 Broadway Partners A Texas General Partnership Affidavit of Sandra Saks, with attachment(s), recorded at Volume 15643, Page 525 (Document No. 20120157436) of the Official Public Records of Bexar County, Texas.

Deed 5321 Broadway, San Antonio, Texas, with attachment(s), recorded at Volume 16124, Page 1554 (Document No. 20130103922) of the Official Public Records of Bexar County.

5321 Broadway, Texas, Bexar County, Texas Transfer Conveyance Assignment of Interest in the 5321 Broadway Partners Agreement, with

2

attachment(s) recorded at Volume 16124, Page 1562 (Document No. 20130103925) of the Official Public Records of Bexar County.

It is further.

ORDERED, ADJUDGED, AND DECREED that the Property is ordered sold in a manner to be determined by the Court and in accordance with the Partnership Agreement, and that twenty-five (25%) percent of the net proceeds of the sale shall be paid to Plaintiff, BROADWAY COFFEEHOUSE, LLC, and the remaining seventy-five (75%) percent of the net proceeds of the sale shall be paid to ~~MARCUS ROGERS, AS~~ *into the Court's Registry* ~~INTERIM TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L, A TEXAS~~ ~~TRUST.~~ It is further

ORDERED, ADJUDGED, AND DECREED that the Partnership is ordered wound-up and terminated, effective as of the date of this Order.

SIGNED this 9 day of ~~July~~ *August*, 2014.

_____
JUDGE PRESIDING

3

APPROVED AS TO FORM:

CURL STAHL GEIS
A PROFESSIONAL CORPORATION
700 North St. Mary's Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 226-2182
Telecopier: (210) 226-1691

BY: _____
PAUL T. CURL
State Bar No. 05255200
ptcurl@csg-law.com
BRITTANY M. WEIL
State Bar No. 24051929
bmweil@csg-law.com
HERBERT S. HILL
State Bar No. 24087722
hshill@csg-law.com

ATTORNEYS FOR PLAINTIFF
BROADWAY COFFEEHOUSE, LLC


BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, Texas 78212
Telephone: (210) 224-1819
Telecopier: (210) 224-0141

BY: _____
BENJAMIN R. BINGHAM
State Bar No. 02322350
ben@binghamandlea.com
ROYAL B. LEA, III
State Bar No. 12069680
royal@binghamandlea.com

ATTORNEYS FOR DEFENDANTS
MARCUS P. ROGERS, INTERIM
TRUSTEE FOR THE SAKS
CHILDREN TRUST A/K/A ATFL&L;
5321 BROADWAY PARTNERS;
AND SAKS BROADWAY, LLC

THE SHAW CORPORATION
1100 N.W. Loop 410, Suite 700
San Antonio, Texas 78213
Telephone: (210) 227-3737
Telecopier: (210) 366-0805

BY: _____
RONALD J. SHAW
State Bar No. 18152300
ShawCorporation@aol.com

ATTORNEYS FOR DEFENDANT
DIANA G. FLORES


PHILIP M. ROSS
State Bar No. 17304200
ross_law@hotmail.com
1006 Holbrook Road
San Antonio, Texas 78218
Telephone: (210) 326-2100

ATTORNEYS FOR DEFENDANTS
MARGARET LANDEN SAKS;
SANDRA C. SAKS; AND
LEE NICK MCFADIN, III


LAUREN SAKS MERRIMAN, Pro Se
laurenmerriman@theblackbook-
group.com
825 West Fulton Market, Unit 2
Chicago, Illinois 60607
Telephone: (210) 789-9190

4

TAB 9



2013CI17001 —D073

CAUSE NO. 2013-CI-17001

| | | |
|---|---|---|
| BROADWAY COFFEEHOUSE, LLC | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 73RD JUDICIAL DISTRICT |
| | § | |
| MARCUS ROGERS, AS TRUSTEE FOR | § | |
| THE SAKS CHILDREN TRUST A/K/A | § | |
| ATFL&L, A TEXAS TRUST; ET AL. | § | BEXAR COUNTY, TEXAS |

## JUDGMENT

On the 20th day of October, 2014 came on for trial the above-referenced case, in which BROADWAY COFFEEHOUSE, LLC, is Plaintiff and MARCUS ROGERS, AS TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L, A TEXAS TRUST is Defendant and Cross-Plaintiff; and SAKS BROADWAY, LLC; SANDRA C. SAKS A/K/A SANDRA GARZA DAVIS; DIANE M. FLORES A/K/A DIANA GARZA FLORES; LAUREN SAKS MERRIMAN A/K/A GLORIA LAUREN NICOLE SAKS; MARGARET LANDEN SAKS A/K/A LANDEN SAKS; LEE NICK McFADIN III; and 5321 BROADWAY PARTNERS, are Defendants and/or Cross-Defendants. Having previously granted Partial Summary Judgment in this case, the Court incorporates the Partial Summary Judgment herein. It is therefore,

ORDERED, ADJUDGED, AND DECREED that Plaintiff, BROADWAY COFFEEHOUSE, LLC, owns an undivided twenty-five (25%) percent interest, and that Defendant MARCUS ROGERS, AS INTERIM TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L, A TEXAS TRUST, owns an undivided seventy-five (75%) percent interest, in the following real property and improvements (the "Property"):

> Lot Four (4), Block Thirty-Three (33), Alamo Heights, City of Alamo Heights, Situated in Bexar County, Texas, according to Plat thereof Recorded in Volume 105, Pages 290-296, Deed and Plat Records of Bexar County, Texas.

It is further

ORDERED, ADJUDGED, AND DECREED that Plaintiff, BROADWAY COFFEEHOUSE, LLC owns twenty-five (25%) percent, and that Defendant MARCUS ROGERS, AS INTERIM TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L, A TEXAS TRUST, owns seventy-five (75%) percent, of the partnership known as 5321 BROADWAY PARTNERS (the "Partnership"), which was established by the Partnership Agreement dated on or about January 16, 1996, and the Partnership has equitable title to the Property. It is further

ORDERED, ADJUDGED, AND DECREED that Defendants, SANDRA C. SAKS A/K/A SANDRA GARZA DAVIS; DIANA M. FLORES A/K/A DIANA GARZA FLORES; LAUREN SAKS MERRIMAN A/K/A GLORIA LAUREN NICOLE SAKS; MARGARET LANDEN SAKS A/K/A LANDEN SAKS; LEE NICK McFADIN, III; and SAKS BROADWAY, LLC; own no interest in the Property or the Partnership. It is further

ORDERED, ADJUDGED, AND DECREED that the following documents filed by Defendant SANDRA C. SAKS A/K/A SANDRA GARZA DAVIS in the Official Public Records of Bexar County, Texas, be and hereby are void and of no force or effect:

Assignment of Interest in the 5321 Broadway Partners A Texas General Partnership Affidavit of Sandra Saks, with attachment(s), recorded at Volume 15643, Page 525 (Document No. 20120157436) of the Official Public Records of Bexar County, Texas.

2

Deed 5321 Broadway, San Antonio, Texas, with attachment(s), recorded at Volume 16124, Page 1554 (Document No. 20130103922) of the Official Public Records of Bexar County.

5321 Broadway, Texas, Bexar County, Texas Transfer Conveyance Assignment of Interest in the 5321 Broadway Partners Agreement, with attachment(s) recorded at Volume 16124, Page 1562 (Document No. 20130103925) of the Official Public Records of Bexar County.

It is further

ORDERED, ADJUDGED, AND DECREED that the Property is ordered sold in a manner to be determined by the Court and in accordance with the Partnership Agreement, and that twenty-five (25%) percent of the net proceeds of the sale shall be paid to Plaintiff, BROADWAY COFFEEHOUSE, LLC, and the remaining seventy-five (75%) percent of the net proceeds of the sale shall be paid into the Court's registry. It is further

ORDERED, ADJUDGED, AND DECREED that the Partnership is ordered wound-up and terminated, effective as of the date of the Partial Summary Judgment, August 19, 2014.

The parties advised the Court that the only remaining issue to be tried is the award of attorney's fees, and agreed to try this issue to the Court without a jury. The Court proceeded to hear evidence and arguments on the issue of attorney's fees, and based upon good and sufficient evidence makes its ruling as follows. It is, therefore,

3

ORDERED, ADJUDGED and DECREED that Plaintiff, BROADWAY COFFEEHOUSE, LLC, have and recover of and from Defendants SANDRA C. SAKS A/K/A SANDRA GARZA DAVIS, MARGARET LANDEN SAKS A/K/A LANDEN SAKS, and LEE NICK McFADIN, III, jointly and severally, attorney's fees through trial in the amount of <u>Sixty Six Thousand Six Hundred Twenty Eight</u> and No/100 Dollars ($66,628.00), with interest thereon at the rate of five percent (5.0%) per annum from date of judgment until paid. It is further

ORDERED, ADJUDGED and DECREED that Plaintiff, BROADWAY COFFEEHOUSE, LLC, have and recover of and from Defendants SANDRA C. SAKS A/K/A SANDRA GARZA DAVIS, MARGARET LANDEN SAKS A/K/A LANDEN SAKS, and LEE NICK McFADIN, III, jointly and severally, additional attorney's fees in the amount of Twenty-Four Thousand and No/100 Dollars ($24,000.00) upon any such Defendant's filing a notice of appeal to the Court of Appeals; additional attorney's fees in the amount of Twelve Thousand and No/100 Dollars ($12,000.00) upon any such Defendant's filing a petition for review to the Texas Supreme Court; additional attorney's fees in the amount of Twenty-Four Thousand and No/100 Dollars ($24,000.00) if the Texas Supreme Court requests briefing on the merits; and additional attorney's fees in the amount of Twelve Thousand and No/100 Dollars ($12,000.00) upon the granting of any such Defendant's petition for review to the Texas Supreme Court. If no appeal is taken in this case, or if Plaintiff does not prevail on appeal, then Plaintiff shall recover none of the additional attorney's fees set forth in this paragraph. Interest shall accrue on any additional attorney's fees set forth in this paragraph at the rate of five percent

(5.0%) per annum from the date of each event resulting in additional attorney's fees as referenced in this paragraph. It is further

ORDERED, ADJUDGED and DECREED that Cross-Plaintiff MARCUS ROGERS, AS TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L, A TEXAS TRUST, have and recover of and from Cross-Defendants SANDRA C. SAKS A/K/A SANDRA GARZA DAVIS and LEE NICK McFADIN, III, jointly and severally, attorney's fees through trial in the amount of *Eight Thousand two hundred fifty* and No/100 Dollars ($*8,250.00*), with interest thereon at the rate of five percent (5.0%) per annum from date of judgment until paid. It is further

ORDERED, ADJUDGED and DECREED that Cross-Plaintiff, MARCUS ROGERS, AS TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L, A TEXAS TRUST, have and recover of and from Cross-Defendants SANDRA C. SAKS A/K/A SANDRA GARZA DAVIS and LEE NICK McFADIN, III, jointly and severally, additional attorney's fees in the amount of *Twenty two thousand* and No/100 Dollars ($*22,000.00*) upon either such Cross-Defendant's filing a notice of appeal to the Court of Appeals; additional attorney's fees in the amount of *eleven thousand* and No/100 Dollars ($*11,000.00*) upon either such Cross-Defendant's filing a petition for review to the Texas Supreme Court; additional attorney's fees in the amount of *Twenty two thousand* and No/100 Dollars ($*22,000.00*) if the Texas Supreme Court requests briefing on the merits; and additional attorney's fees in the amount of *eleven thousand* and No/100 Dollars ($*11,000.00*) upon the granting of either such Cross-Defendant's petition for review to the Texas Supreme Court. If no appeal is taken in this case, or if Cross-Plaintiff does not prevail on appeal, then Cross-

5

Plaintiff shall recover none of the additional attorney's fees set forth in this paragraph. Interest shall accrue on any additional attorney's fees set forth in this paragraph at the rate of five percent (5.0%) per annum from the date of each event resulting in additional attorney's fees as referenced in this paragraph. It is further

ORDERED, ADJUDGED and DECREED that Plaintiff, BROADWAY COFFEEHOUSE, LLC, have and recover of and from Defendants SANDRA C. SAKS A/K/A SANDRA GARZA DAVIS, MARGARET LANDEN SAKS A/K/A LANDEN SAKS, and LEE NICK McFADIN, III, jointly and severally, all costs of court, with interest thereon at the rate of five percent per annum from date of judgment until paid.

Plaintiff, BROADWAY COFFEEHOUSE, LLC, and Cross-Plaintiff, MARCUS ROGERS, AS TRUSTEE FOR THE SAKS CHILDREN TRUST A/K/A ATFL&L, A TEXAS TRUST, are allowed such writs and processes as they deem necessary in the enforcement and collection of this judgment.

All relief requested by any party and not expressly granted herein is hereby denied. This is intended to be a final, appealable judgment which disposes of all claims and parties.

SIGNED this 20th day of October, 2014.

HONORABLE ANTONIA ARTEAGA

6

APPROVED AS TO FORM:

CURL STAHL GEIS
A PROFESSIONAL CORPORATION
700 North St. Mary's Street, Suite 1800
San Antonio, Texas 78205
Telephone:  (210) 226-2182
Telecopier:  (210) 226-1691

BY: *Brittany M. Weil*

PAUL T. CURL
State Bar No. 05255200
ptcurl@csg-law.com
BRITTANY M. WEIL
State Bar No. 24051929
bmweil@csg-law.com
HERBERT S. HILL
State Bar No. 24087722
hshill@csg-law.com

ATTORNEYS FOR PLAINTIFF
BROADWAY COFFEEHOUSE, LLC


BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, Texas 78212
Telephone: (210) 224-1819
Telecopier: (210) 224-0141

BY: *[signature]*

BENJAMIN R. BINGHAM
State Bar No. 02322350
ben@binghamandlea.com
ROYAL B. LEA, III
State Bar No. 12069680
royal@binghamandlea.com

ATTORNEYS FOR DEFENDANTS
MARCUS P. ROGERS, INTERIM
TRUSTEE FOR THE SAKS
CHILDREN TRUST A/K/A ATFL&L;
5321 BROADWAY PARTNERS;
AND SAKS BROADWAY, LLC

THE SHAW CORPORATION
1100 N.W. Loop 410, Suite 700
San Antonio, Texas 78213
Telephone: (210) 227-3737
Telecopier: (210) 366-0805


BY:

RONALD J. SHAW
State Bar No. 18152300
ShawCorporation@aol.com

ATTORNEYS FOR DEFENDANT
DIANA G. FLORES


PHILIP M. ROSS
State Bar No. 17304200
ross_law@hotmail.com
1006 Holbrook Road
San Antonio, Texas 78218
Telephone:  (210) 326-2100

ATTORNEYS FOR DEFENDANTS
MARGARET LANDEN SAKS;
SANDRA C. SAKS; AND
LEE NICK MCFADIN, III


LAUREN SAKS MERRIMAN, Pro Se
laurenmerriman@theblackbook-group.com
825 West Fulton Market, Unit 2
Chicago, Illinois 60607
Telephone:  (210) 789-9190

7

TAB 10

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 2. Trial, Judgment, and Appeal
      Subtitle C. Judgments
        Chapter 37. Declaratory Judgments (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 37.004

§ 37.004. Subject Matter of Relief

Effective: June 15, 2007
Currentness

(a) A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

(b) A contract may be construed either before or after there has been a breach.

(c) Notwithstanding Section 22.001, Property Code, a person described by Subsection (a) may obtain a determination under this chapter when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties.

**Credits**
Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 2007, 80th Leg., ch. 305, § 1, eff. June 15, 2007.

Notes of Decisions (469)

V. T. C. A., Civil Practice & Remedies Code § 37.004, TX CIV PRAC & REM § 37.004
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 2. Trial, Judgment, and Appeal
      Subtitle C. Judgments
        Chapter 37. Declaratory Judgments (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 37.009

§ 37.009. Costs

Currentness

In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Notes of Decisions (690)

V. T. C. A., Civil Practice & Remedies Code § 37.009, TX CIV PRAC & REM § 37.009
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

TAB 11



2013CI17001 -D073

CAUSE NO. 2013-CI-17001

| | | |
|---|---|---|
| BROADWAY COFFEEHOUSE LLC | § | IN THE DISTRICT COURT |
| | § | |
| VS | § | |
| | § | |
| MARCUS ROGERS, AS TRUSTEE FOR | § | 73RD JUDICIAL DISTRICT |
| THE SAKS CHILDREN TRUST A/K/A | § | |
| ATTFL&L, A TEXAS TRUST; SAKS | § | |
| BROADWAY, LLC; SANDRA C. SAKS, | § | |
| A/K/A SANDRA GARZA DAVIS; DIANE | § | |
| M. FLORES, A/K/A DIANA GARZA | § | |
| FLORES; LAUREN SAKS MERRIMAN | § | |
| A/K/A GLORIA LAUREN NICOLE SAKS; | § | |
| MARGARET LANDEN SAKS, A/K/A | § | |
| LANDEN SAKS; AND LEE NICK | § | |
| MCFADIN, III | § | BEXAR COUNTY, TEXAS |

ORDER

ON THIS DAY, came on to be heard the Defendants' Amended Motion to set the amount of a supersedeas bond. The Court, having considered the Defendants' *and evidence* motion and the Plaintiff's response, as well as the argument of counsel for the parties finds that the Motion has merit and should be granted. Therefore, it is ORDERED that the amount of the supersedeas bond to suspend the judgment is $170,237.76 ~~for Lee Nick McFadin, III; $~~_____ ~~for Sandra C. Saks and/or $~~_____ ~~for Landen Saks.~~

OCT 31 2014

Hon. Antonia Arteaga
Judge Presiding

1

APPROVED AS TO FORM ONLY:

_____
Philip M. Ross, SBN 17304200
Phone: 210-326-2100
Email: ross_law@hotmail.com

_____
Royal B. Lea, III, SBN 12069680
Phone: 210-224-1891
Email: royal@binghamandlea.com

_____
Paul T. Curl, SBN 05255200
Phone: 210-226-2182
Email: ptcurl@csg-law.com

TAB 12

ACCEPTED
04-14-00734-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/3/2014 4:26:18 PM
KEITH HOTTLE
CLERK

04-14-00734CV

IN THE COURT OF APPEALS FOR
THE FOURTH DISTRICT OF TEXAS
SITTING AT SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/3/2014 4:26:18 PM
KEITH E. HOTTLE
Clerk

SANDRA SAKS, LEE NICK MCFADIN, III
and MARGARET LANDEN SAKS,

Appellants,

v.

BROADWAY COFFEEHOUSE, LLC,

Appellee.

On appeal from District Court, 73rd Judicial District, Bexar County, Texas
Honorable Antonia Arteaga, presiding

APPELLANTS' MOTION TO SUSPEND THE JUDGMENT AND TO REVIEW
ORDER SETTING THE AMOUNT OF SUPERSEDEAS BOND

TO THE HONORABLE JUSTICES OF THE FOURTH COURT OF APPEALS:

Now come, Sandra Saks ("Sandy"), Lee Nick McFadin, III ("McFadin") and

Margaret Landen Saks ("Landen"), collectively ("Movants"), and file this motion

to suspend the Judgment and to review the order setting the amount of the

supersedeas bond pursuant to TRAP Rule 24 as required to suspend the Judgment

entered on October 20, 2014, and in support of their motion they would show:

1       On October 20, 2014, the Court entered a final judgment for partition by

1

sale and termination of a partnership in Cause No. 2013-CI-17001. (A true and correct copy of the Judgment entered on October 20, 2014 is attached hereto and incorporated herein for all purposes).

2      Movants filed a motion to set the amount of a supersedeas bond to suspend the Judgment. Movants filed a notice of appeal from the Judgment in Cause No. 2013-CI-17001.

3      The Court considered the pleadings, evidence and argument on the motion to set the amount of a supersedeas bond at a hearing on October 31, 2014. The Court set the amount of the supersedeas bond according to the evidence of the amount of rent that is anticipated to be collected in the next 18 months.

4      Movants submit that the evidence presented at the hearing showed that the property consists of two tracts, which are each marketable, and the Plaintiff is not likely to suffer any damages due to loss of rent or otherwise during the pendency of this appeal because the two tenants have long term leases, the property produces sufficient rent to remain profitable, and the rental income is not likely to be affected by this appeal or any other conditions during the next 18 months. Certified copies of property tax appraisal records including Plaintiff's rendition of the property value for each tract, which show that the rental income is sufficient to produce a $40,000+ annual net profit, were introduced into evidence at the hearing

on Movants' motion to set the amount of the supersedeas bond. (Certified copies of the Bexar Appraisal District records are attached hereto and incorporated herein for all purposes).

5      Therefore, Movants submit that the trial court abused its discretion by ordering a grossly excessive amount of a supersedeas bond required to maintain the status quo and protect the Plaintiff from any reasonably foreseeable damages during the pendency of the appeal. Movants submit that a nominal amount of security in the range of $500-1,000 should be sufficient to protect the Plaintiff from any reasonably foreseeable risk of damages in the next 18 months.

<u>Argument</u>

6      Movants request the Court to reverse the Order of the trial court and set the amount of a supersedeas bond as required to suspend the enforcement of the judgment. They submit that the subject property is financially stable and profitable, such that the income from the property is sufficient to maintain the status quo without any necessity of posting a substantial bond.

7      Texas Rule of Appellate Procedure 24.2(a)(3) allows a court to set a supersedeas bond pending appeal "[w]hen the judgment is for something other than money or an interest in property." TRAP 24.2(a)(3). The amount of the bond must provide adequate security to "protect the judgment creditor against loss or

damage that the appeal might cause. Id. Essentially, Rule 24 functions to preserve the status quo of the matters in litigation as they existed prior to the issuance of the order or judgment from which an appeal is taken. Alpert v. Riley, 274 S.W.3d 277, 297 (Tex. App. - Houston [1st Dist.] 2008, pet denied); Smith v. Texas Farmers Ins. Co., 82 S.W.3d 580, 585 (Tex. App. - San Antonio 2002, pet. denied) (citing In re Tarrant County, 16 S.W.3d 914, 918 (Tex. App. - Fort Worth 2000, no pet.)).

8       A trial court's determination of the amount of security for the supersedeas bond is reviewed for an abuse of discretion. Rowe v. Watkins, 324 S.W.3d 111, 113 (Tex. App. - El Paso 2010, no pet.). Under an abuse of discretion review, the question is not whether the court of appeals would have come to the same concusion as the trial court, but whether the trial court acted without reference to any guiding rules or principles, or acted arbitrarily or unreasonably. Id.; Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 214-42 (Tex. 1985).

9       In this case the judgment is for partition by sale of rental property, in which the rental income is not likely to be affected by the pending appeal. As noted above, the purpose of a supersedeas bond under Rule 24 is to preserve the status quo of matters in litigation pending appeal. Smith, 82 S.W.3d at 585.

10      It is the judgment creditor's burden to show the reasonable value of rents

likely to accrue. Hart v. Keller Properties, 567 S.W.2d 888, 889 (Tex. Civ. App. —Dallas 1978, no writ). Movants submit that the subject property is comprised of rental units, and the amount of revenue is stable, it is sufficient to cover expenses for maintenance of the Property, and it is not likely to change during the pendency of the appeal of the judgment. Therefore, it is unlikely that the judgment creditor will suffer any substantial financial loss during the pendency of the appeal.

11    Loss or damage to a judgment creditor does not include possible lost profits that may be suffered in the future and a judgment creditor should not be entitled to more protection than a money or a land judgment creditor. Accordingly, a trial court would abuse its discretion by employing a lost profits measure in setting the amount of a supersedeas bond. Culbertson v. Brodsky, 775 S.W.2d 451, 455 (Civ. App. - Fort Worth 1989, rehearing denied).

12    Therefore, the amount of a supersedeas bond in this case should be nominal because there is no substantial likelihood that the value of the property will decrease or that there will be any damages due to lost rents during a temporary delay until a ruling on appeal.

CONCLUSION AND PRAYER

WHEREFORE, Sandy, McFadin and Landen respectfully request the Court of Appeals to temporarily suspend the Judgment, reverse the Order of the trial

court, and set a sufficient amount of a supersedeas bond pursuant to TRAP Rule 24. Sandy, McFadin and Landen also claim such further relief to which they may be justly entitled.

Respectfully submitted,

/s/ Philip M. Ross
Philip M. Ross
State Bar No. 17304200
1006 Holbrook Road
San Antonio, Texas 78218
Phone: 210/326-2100
Email: ross_law@hotmail.com
ATTORNEY FOR APPELLANTS
SANDY SAKS, LEE NICK MCFADIN, III
AND MARGARET LANDEN SAKS

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been e-filed and served on November 3, 2014 by email pursuant to agreement to Paul T. Curl and Royal B. Lea, III.

/s/ Philip M. Ross
Philip M. Ross

TAB 13



# Fourth Court of Appeals
## San Antonio, Texas

November 7, 2014

No. 04-14-00734-CV

Sandra **SAKS**, Lee Nick McFadin, III and Margaret Landen Saks,
Appellants

v.

**BROADWAY COFFEEHOUSE, LLC**,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-17001
Honorable Larry Noll, Judge Presiding

# O R D E R

Appellants' motion to suspend the trial court's judgment and to decrease the amount of the supersedeas bond ordered by the trial court is DENIED.

_____
Catherine Stone, Chief Justice

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said court on this 7th day of November, 2014.

_____
Keith E. Hottle
Clerk of Court

TAB 14

ACCEPTED
04-14-00734-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/16/2014 10:10:01 PM
KEITH HOTTLE
CLERK

04-14-00734-CV

IN THE COURT OF APPEALS FOR
THE FOURTH DISTRICT OF TEXAS
SITTING AT SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/16/2014 10:10:01 PM
KEITH E. HOTTLE
Clerk

SANDRA SAKS, LEE NICK MCFADIN, III
and MARGARET LANDEN SAKS,

Appellants,

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/17/2014 10:10:01 PM
KEITH E. HOTTLE
Clerk

v.

BROADWAY COFFEEHOUSE, LLC,

On appeal from District Court, 73rd Judicial District, Bexar County, Texas
Honorable Antonia Arteaga, presiding

APPELLANTS' MOTION TO RECONSIDER EN BANC MOTION TO
SUSPEND THE JUDGMENT AND TO REVIEW ORDER SETTING THE
AMOUNT OF SUPERSEDEAS BOND

TO THE HONORABLE JUSTICES OF THE FOURTH COURT OF APPEALS:

Now come, Sandra Saks ("Sandy"), Lee Nick McFadin, III ("McFadin") and

Margaret Landen Saks ("Landen"), collectively ("Movants"), and file this motion

to reconsider en banc motion to suspend the Judgment and to review the order

setting the amount of the supersedeas bond pursuant to TRAP Rule 24 as required

to suspend the Judgment entered on October 20, 2014, and in support of their

1

motion they would show:

1 On October 20, 2014, the Court entered a final judgment for partition by sale and termination of a partnership in Cause No. 2013-CI-17001.

2 Movants filed a motion to set the amount of a supersedeas bond to suspend the Judgment. Movants filed a notice of appeal from the Judgment in Cause No. 2013-CI-17001.

3 The Court considered the pleadings, evidence and argument on the motion to set the amount of a supersedeas bond at a hearing on October 31, 2014. The transcript of the evidence including testimony and documentation has been filed of record, and it is incorporated herein by reference for all purposes. The Court set the amount of the supersedeas bond according to the evidence of the amount of rent that is anticipated to be collected in the next 18 months in error because the evidenced showed that there was no reasonable likelihood that Plaintiff would suffer any damages as a result of this appeal.

4 Movants submit that the evidence presented at the hearing showed that the property consists of two tracts, which are each marketable, and the Plaintiff is not likely to suffer any damages due to loss of rent or otherwise during the pendency of this appeal because the two tenants have long term leases, the property produces sufficient rent to remain profitable, and the rental income is not likely to be

2

affected by this appeal or any other conditions during the next 18 months.

Perry Donop, Jr. testified at the hearing on Motion to Set Amount of Supersedeas Bond at page 18, line 17 et seq. of the transcript as follows:

Q. (By Mr. Ross) "Mr. Donop, what is the net annual income for the property?

A. The net annual income is around 85,000.

Q. Okay. And who are the tenants?

A. Starbucks and Nix.

Q. What is the Nix's and Starbucks' Corporate names, if you know?

A. Starbucks Corporation. I can't remember Nix other than Nix -- Nix Healthcare or something along those lines.

Q. Okay. And how long have those tenants leased the property?

A. How long have they leased there?

Q. Yes.

A. Starbucks for about 18 years and Nix probably 15.

Q. And what is the current term on the leases to those two companies?

A. The Starbucks lease has about three years left on it and they have another five-year option. And Nix has two and a half years left and then two three-year options.

Q. Okay. And what evidence do you have with regard to the likelihood of any

3

change in the rental on the property in the next 12 to 18 months?

A.    Well, continue to go out of business, close down.  I don't know.

Q.    Okay.  So is that speculative?

A.    Yeah, it is.

Q.    Okay.  And how is the net income on the property distributed?

A.    It's distributed to the Trust and myself.

Q.    Okay.  Now, what amount of a supersedeas bond do you think would be necessary based on your understanding of what the potential exposure of the department (sic) is through the likelihood of any loss in the next 12 months?

A.    I'd say the fair market value.

Q.    Okay.  You expect to lose the fair market value of the property in the next 12 months?

A.    Who knows what's going to happen.  I don't have a crystal ball."

Transcript of Hearing on October 31, 2014, page18, line 17 through page 20, line 8.

6    Movants submit that the evidence in the record shows that there is no reasonable likelihood that the status quo will change during the pendency of this appeal.

7    Certified copies of property tax appraisal records including Plaintiff's

4

rendition of the property value for each tract, which show that the rental income is sufficient to produce a $40,000+ annual net profit, were introduced into evidence at the hearing on Movants' motion to set the amount of the supersedeas bond. (Certified copies of the Bexar Appraisal District records have been admitted into evidence and are attached to the transcript of the hearing on Defendants' motion to set the amount of supersedeas bond and are incorporated herein for all purposes).

8       Therefore, Movants submit that the trial court abused its discretion by ordering a grossly excessive amount of a supersedeas bond because the evidence in the record shows that only a nominal bond should be required to maintain the status quo and protect the Plaintiff from any reasonably foreseeable damages during the pendency of the appeal.  Movants submit that a nominal amount of security in the range of $500-1,000 should be sufficient to protect the Plaintiff from any reasonably foreseeable risk of damages in the next 18 months.

Argument

9       Movants request the Court to reverse the Order of the trial court and set the amount of a supersedeas bond as required to suspend the enforcement of the judgment.  They submit that the subject property is financially stable and profitable, such that the income from the property is sufficient to maintain the status quo without any necessity of posting a substantial bond.

5

Texas Rule of Appellate Procedure 24.2(a)(3) allows a court to set a supersedeas bond pending appeal "[w]hen the judgment is for something other than money or an interest in property." TRAP 24.2(a)(3). The amount of the bond must provide adequate security to "protect the judgment creditor against loss or damage that the appeal might cause. Id.  Essentially, Rule 24 functions to preserve the status quo of the matters in litigation as they existed prior to the issuance of the order or judgment from which an appeal is taken.  Alpert v. Riley, 274 S.W.3d 277, 297 (Tex. App. - Houston [1st Dist.] 2008, pet denied); Smith v. Texas Farmers Ins. Co., 82 S.W.3d 580, 585 (Tex. App. - San Antonio 2002, pet. denied) (citing In re Tarrant County, 16 S.W.3d 914, 918 (Tex. App. - Fort Worth 2000, no pet.)).

A trial court's determination of the amount of security for the supersedeas bond is reviewed for an abuse of discretion.  Rowe v. Watkins, 324 S.W.3d 111, 113 (Tex. App. - El Paso 2010, no pet.).  Under an abuse of discretion review, the question is not whether the court of appeals would have come to the same concusion as the trial court, but whether the trial court acted without reference to any guiding rules or principles, or acted arbitrarily or unreasonably.  Id.;  Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 214-42 (Tex. 1985).

In this case the judgment is for partition by sale of rental property, in which

the rental income is not likely to be affected by the pending appeal. As noted above, the purpose of a supersedeas bond under Rule 24 is to preserve the status quo of matters in litigation pending appeal. Smith, 82 S.W.3d at 585.

13    It is the judgment creditor's burden to show the reasonable value of rents likely to accrue. Hart v. Keller Properties, 567 S.W.2d 888, 889 (Tex. Civ. App.—Dallas 1978, no writ). Movants submit that the subject property is comprised of two separate tracts, and the amount of revenue is stable, it is sufficient to cover expenses for maintenance of the Property, and it is not likely to change during the pendency of the appeal of the judgment. Therefore, it is unlikely that the judgment creditor will suffer any substantial financial loss during the pendency of the appeal.

14    Loss or damage to a judgment creditor does not include possible lost profits that may be suffered in the future and a judgment creditor should not be entitled to more protection than a money or a land judgment creditor. Accordingly, a trial court would abuse its discretion by employing a lost profits measure in setting the amount of a supersedeas bond. Culbertson v. Brodsky, 775 S.W.2d 451, 455 (Civ. App. - Fort Worth 1989, rehearing denied).

15    Therefore, the amount of a supersedeas bond in this case should be nominal because there is no substantial likelihood that the value of the property will

7

decrease or that there will be any damages due to lost rents during a temporary delay until a ruling on appeal.

## CONCLUSION AND PRAYER

WHEREFORE, Movants respectfully request the Court to reconsider the motion to review the amount of supersedeas bond en banc, temporarily suspend the Judgment, reverse the Order of the trial court, and set a sufficient amount of a supersedeas bond pursuant to TRAP Rule 24. Movants also request such further relief to which they may be justly entitled.

Respectfully submitted,

/s/ Philip M. Ross
Philip M. Ross
State Bar No. 17304200
1006 Holbrook Road
San Antonio, Texas 78218
Phone: 210/326-2100
Email: ross_law@hotmail.com
ATTORNEY FOR APPELLANTS
SANDY SAKS, LEE NICK MCFADIN, III
AND MARGARET LANDEN SAKS

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been e-filed and served on November 17, 2014 by email pursuant to agreement to Paul T. Curl and Royal B. Lea, III.

/s/ Philip M. Ross
Philip M. Ross

TAB 15



# Fourth Court of Appeals
## San Antonio, Texas

November 21, 2014

No. 04-14-00734-CV

Sandra **SAKS**, Lee Nick McFadin, III and Margaret Landen Saks,
Appellants

v.

**BROADWAY COFFEEHOUSE, LLC**,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-17001
Honorable Antonia Arteaga, Judge Presiding

# O R D E R

Sitting:      Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

The court has considered the appellants' motion to reconsider en banc motion to suspend the judgment and to review order setting the amount of supersedeas bond, and the motion is DENIED.

_Catherine Stone_
Catherine Stone, Chief Justice

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said court on this 21st day of November, 2014.

_Keith E. Hottle_
Keith E. Hottle
Clerk of Court

TAB 16

Vernon's Texas Rules Annotated
  Texas Rules of Appellate Procedure
    Section Two. Appeals from Trial Court Judgments and Orders (Refs & Annos)
      Rule 24. Suspension of Enforcement of Judgment Pending Appeal in Civil Cases (Refs & Annos)

TX Rules App.Proc., Rule 24.2

24.2. Amount of Bond, Deposit or Security

Currentness

(a) *Type of Judgment*.

(1) For Recovery of Money. When the judgment is for money, the amount of the bond, deposit, or security must equal the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. But the amount must not exceed the lesser of:

(A) 50 percent of the judgment debtor's current net worth; or

(B) 25 million dollars.

(2) For Recovery of Property. When the judgment is for the recovery of an interest in real or personal property, the trial court will determine the type of security that the judgment debtor must post. The amount of that security must be at least:

(A) the value of the property interest's rent or revenue, if the property interest is real; or

(B) the value of the property interest on the date when the court rendered judgment, if the property interest is personal.

(3) Other Judgment. When the judgment is for something other than money or an interest in property, the trial court must set the amount and type of security that the judgment debtor must post. The security must adequately protect the judgment creditor against loss or damage that the appeal might cause. But the trial court may decline to permit the judgment to be superseded if the judgment creditor posts security ordered by the trial court in an amount and type that will secure the judgment debtor against any loss or damage caused by the relief granted the judgment creditor if an appellate court determines, on final disposition, that that relief was improper.

(4) Conservatorship or Custody. When the judgment involves the conservatorship or custody of a minor or other person under legal disability, enforcement of the judgment will not be suspended, with or without security, unless ordered by the trial court. But upon a proper showing, the appellate court may suspend enforcement of the judgment with or without security.

(5) For a Governmental Entity. When a judgment in favor of a governmental entity in its governmental capacity is one in which the entity has no pecuniary interest, the trial court must determine whether to suspend enforcement, with or without security,

taking into account the harm that is likely to result to the judgment debtor if enforcement is not suspended, and the harm that is likely to result to others if enforcement is suspended. The appellate court may review the trial court's determination and suspend enforcement of the judgment, with or without security, or refuse to suspend the judgment. If security is required, recovery is limited to the governmental entity's actual damages resulting from suspension of the judgment.

(b) *Lesser Amount*. The trial court must lower the amount of security required by (a) to an amount that will not cause the judgment debtor substantial economic harm if, after notice to all parties and a hearing, the court finds that posting a bond, deposit, or security in the amount required by (a) is likely to cause the judgment debtor substantial economic harm.

(c) *Determination of Net Worth.*

(1) Judgment Debtor's Affidavit Required; Contents; Prima Facie Evidence. A judgment debtor who provides a bond, deposit, or security under (a)(1)(A) in an amount based on the debtor's net worth must simultaneously file with the trial court clerk an affidavit that states the debtor's net worth and states complete, detailed information concerning the debtor's assets and liabilities from which net worth can be ascertained. An affidavit that meets these requirements is prima facie evidence of the debtor's net worth for the purpose of establishing the amount of the bond, deposit, or security required to suspend enforcement of the judgment. A trial court clerk must receive and file a net-worth affidavit tendered for filing by a judgment debtor.

(2) Contest; Discovery. A judgment creditor may file a contest to the debtor's claimed net worth. The contest need not be sworn. The creditor may conduct reasonable discovery concerning the judgment debtor's net worth.

(3) Hearing; Burden of Proof; Findings; Additional Security. The trial court must hear a judgment creditor's contest of the judgment debtor's claimed net worth promptly after any discovery has been completed. The judgment debtor has the burden of proving net worth. The trial court must issue an order that states the debtor's net worth and states with particularity the factual basis for that determination. If the trial court orders additional or other security to supersede the judgment, the enforcement of the judgment will be suspended for twenty days after the trial court's order. If the judgment debtor does not comply with the order within that period, the judgment may be enforced against the judgment debtor.

(d) *Injunction*. The trial court may enjoin the judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment, but the trial court may not make any order that interferes with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business.

**Credits**

Eff. Sept. 1, 1997. Amended by Supreme Court Aug. 29, 2003 and Sept. 10, 2003, eff. Sept. 1, 2003; March 10, 2008, and Aug. 20, 2008, eff. Sept. 1, 2008. Approved by Court of Criminal Appeals Sept. 30, 2008, eff. Sept. 30, 2008.

**Editors' Notes**

**NOTES AND COMMENTS**

Comment to 2008 change: Subdivision 24.2(c) is amended to clarify the procedure in determining net worth. A debtor's affidavit of net worth must be detailed, but the clerk must file what is tendered without determining whether it complies with the rule. If the trial court orders that additional or other security be given, the debtor is afforded time to comply. Subdivision 24.4(a) is revised to clarify that a party seeking relief from a supersedeas ruling should file a

motion in the court of appeals that has or presumably will have jurisdiction of the appeal. After the court of appeals has ruled, a party may seek review by filing a petition for writ of mandamus in the Supreme Court. *See In re Smith / In re Main Place Custom Homes, Inc.*, 192 S.W.3d 564, 568 (Tex. 2006) (per curiam).

Notes of Decisions (83)

Rules App. Proc., Rule 24.2, TX R APP Rule 24.2
Current with amendments received through 3/15/2015

---

**End of Document**                                           © 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Rules Annotated
    Texas Rules of Appellate Procedure
        Section Two. Appeals from Trial Court Judgments and Orders (Refs & Annos)
            Rule 24. Suspension of Enforcement of Judgment Pending Appeal in Civil Cases (Refs & Annos)

TX Rules App.Proc., Rule 24.4

24.4. Appellate Review

Currentness

(a) *Motions; Review.* A party may seek review of the trial court's ruling by motion filed in the court of appeals with jurisdiction or potential jurisdiction over the appeal from the judgment in the case. A party may seek review of the court of appeals' ruling on the motion by petition for writ of mandamus in the Supreme Court. The appellate court may review:

(1) the sufficiency or excessiveness of the amount of security, but when the judgment is for money, the appellate court must not modify the amount of security to exceed the limits imposed by Rule 24.2(a)(1);

(2) the sureties on any bond;

(3) the type of security;

(4) the determination whether to permit suspension of enforcement; and

(5) the trial court's exercise of discretion under Rule 24.3(a).

(b) *Grounds of Review.* Review may be based both on conditions as they existed at the time the trial court signed an order, and on changes in those conditions afterward.

(c) *Temporary Orders.* The appellate court may issue any temporary orders necessary to preserve the parties' rights.

(d) *Action by Appellate Court.* The motion must be heard at the earliest practicable time. The appellate court may require that the amount of a bond, deposit, or other security be increased or decreased, and that another bond, deposit, or security be provided and approved by the trial court clerk. The appellate court may require other changes in the trial court order. The appellate court may remand to the trial court for entry of findings of fact or for the taking of evidence.

(e) *Effect of Ruling.* If the appellate court orders additional or other security to supersede the judgment, enforcement will be suspended for 20 days after the appellate court's order. If the judgment debtor does not comply with the order within that period, the judgment may be enforced. When any additional bond, deposit, or security has been filed, the trial court clerk must notify the appellate court. The posting of additional security will not release the previously posted security or affect any alternative security arrangements that the judgment debtor previously made unless specifically ordered by the appellate court.

---

**Credits**

Eff. Sept. 1, 1997. Amended by Supreme Court Aug. 29, 2003, eff. Sept. 1, 2003; March 10, 2008, and Aug. 20, 2008, eff. Sept. 1, 2008. Approved by Court of Criminal Appeals Sept. 30, 2008, eff. Sept. 30, 2008.

**Editors' Notes**

**NOTES AND COMMENTS**

Comment to 2008 change: Subdivision 24.2(c) is amended to clarify the procedure in determining net worth. A debtor's affidavit of net worth must be detailed, but the clerk must file what is tendered without determining whether it complies with the rule. If the trial court orders that additional or other security be given, the debtor is afforded time to comply. Subdivision 24.4(a) is revised to clarify that a party seeking relief from a supersedeas ruling should file a motion in the court of appeals that has or presumably will have jurisdiction of the appeal. After the court of appeals has ruled, a party may seek review by filing a petition for writ of mandamus in the Supreme Court. *See In re Smith / In re Main Place Custom Homes, Inc.*, 192 S.W.3d 564, 568 (Tex. 2006) (per curiam).

Notes of Decisions (15)

Rules App. Proc., Rule 24.4, TX R APP Rule 24.4
Current with amendments received through 3/15/2015

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Rules Annotated
  Texas Rules of Appellate Procedure
    Section Two. Appeals from Trial Court Judgments and Orders (Refs & Annos)
      Rule 26. Time to Perfect Appeal (Refs & Annos)

TX Rules App.Proc., Rule 26.1

26.1. Civil Cases

Currentness

The notice of appeal must be filed within 30 days after the judgment is signed, except as follows:

(a) the notice of appeal must be filed within 90 days after the judgment is signed if any party timely files:

(1) a motion for new trial;

(2) a motion to modify the judgment;

(3) a motion to reinstate under Texas Rule of Civil Procedure 165a; or

(4) a request for findings of fact and conclusions of law if findings and conclusions either are required by the Rules of Civil Procedure or, if not required, could properly be considered by the appellate court;

(b) in an accelerated appeal, the notice of appeal must be filed within 20 days after the judgment or order is signed;

(c) in a restricted appeal, the notice of appeal must be filed within six months after the judgment or order is signed; and

(d) if any party timely files a notice of appeal, another party may file a notice of appeal within the applicable period stated above or 14 days after the first filed notice of appeal, whichever is later.

**Credits**
Eff. Sept. 1, 1997.

Notes of Decisions (432)

Rules App. Proc., Rule 26.1, TX R APP Rule 26.1
Current with amendments received through 3/15/2015

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Rules Annotated
  Texas Rules of Appellate Procedure
    Section Two. Appeals from Trial Court Judgments and Orders (Refs & Annos)
      Rule 38. Requisites of Briefs (Refs & Annos)

TX Rules App.Proc., Rule 38.1

38.1. Appellant's Brief

Currentness

The appellant's brief must, under appropriate headings and in the order here indicated, contain the following:

(a) *Identity of Parties and Counsel.* The brief must give a complete list of all parties to the trial court's judgment or order appealed from, and the names and addresses of all trial and appellate counsel, except as otherwise provided in Rule 9.8.

(b) *Table of Contents.* The brief must have a table of contents with references to the pages of the brief. The table of contents must indicate the subject matter of each issue or point, or group of issues or points.

(c) *Index of Authorities.* The brief must have an index of authorities arranged alphabetically and indicating the pages of the brief where the authorities are cited.

(d) *Statement of the Case.* The brief must state concisely the nature of the case (e.g., whether it is a suit for damages, on a note, or involving a murder prosecution), the course of proceedings, and the trial court's disposition of the case. The statement should be supported by record references, should seldom exceed one-half page, and should not discuss the facts.

(e) *Any Statement Regarding Oral Argument.* The brief may include a statement explaining why oral argument should or should not be permitted. Any such statement must not exceed one page and should address how the court's decisional process would, or would not, be aided by oral argument. As required by Rule 39.7, any party requesting oral argument must note that request on the front cover of the party's brief.

(f) *Issues Presented.* The brief must state concisely all issues or points presented for review. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.

(g) *Statement of Facts.* The brief must state concisely and without argument the facts pertinent to the issues or points presented. In a civil case, the court will accept as true the facts stated unless another party contradicts them. The statement must be supported by record references.

(h) *Summary of the Argument.* The brief must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief. This summary must not merely repeat the issues or points presented for review.

(i) *Argument*. The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.

(j) *Prayer*. The brief must contain a short conclusion that clearly states the nature of the relief sought.

(k) *Appendix in Civil Cases*.

(1) Necessary Contents. Unless voluminous or impracticable, the appendix must contain a copy of:

(A) the trial court's judgment or other appealable order from which relief is sought;

(B) the jury charge and verdict, if any, or the trial court's findings of fact and conclusions of law, if any; and

(C) the text of any rule, regulation, ordinance, statute, constitutional provision, or other law (excluding case law) on which the argument is based, and the text of any contract or other document that is central to the argument.

(2) Optional Contents. The appendix may contain any other item pertinent to the issues or points presented for review, including copies or excerpts of relevant court opinions, laws, documents on which the suit was based, pleadings, excerpts from the reporter's record, and similar material. Items should not be included in the appendix to attempt to avoid the page limits for the brief.

**Credits**
Eff. Sept. 1, 1997. Amended by Supreme Court March 10, 2008, and Aug. 20, 2008, eff. Sept. 1, 2008. Approved by Court of Criminal Appeals Sept. 30, 2008, eff. Sept. 30, 2008.

Notes of Decisions (917)

Rules App. Proc., Rule 38.1, TX R APP Rule 38.1
Current with amendments received through 3/15/2015

**End of Document**                                         © 2015 Thomson Reuters. No claim to original U.S. Government Works.

TAB 17

FILED
2/20/2015 1:59:13 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Cecilia Barbosa

CAUSE NO. 2013-CI-17001

| | | |
|---|---|---|
| BROADWAY COFFEEHOUSE LLC | § | IN THE DISTRICT COURT |
| | § | |
| VS | § | |
| | § | |
| MARCUS ROGERS, AS TRUSTEE FOR | § | 73RD JUDICIAL DISTRICT |
| THE SAKS CHILDREN TRUST A/K/A | § | |
| ATTFL&L, A TEXAS TRUST; SAKS | § | |
| BROADWAY, LLC; SANDRA C. SAKS, | § | |
| A/K/A SANDRA GARZA DAVIS; DIANE | § | |
| M. FLORES, A/K/A DIANA GARZA | § | |
| FLORES; LAUREN SAKS MERRIMAN | § | |
| A/K/A GLORIA LAUREN NICOLE SAKS; | § | |
| MARGARET LANDEN SAKS, A/K/A | § | |
| LANDEN SAKS; AND LEE NICK | § | |
| MCFADIN, III | § | BEXAR COUNTY, TEXAS |

SUPPLEMENT TO NOTICE OF APPEAL

TO THE HONORABLE JUDGE PRESIDING AND TO THE JUSTICES OF THE FOURTH JUDICIAL DISTRICT COURT OF APPEALS:

COME NOW, SANDRA SAKS, LEE NICK MCFADIN, III and MARGARET LANDEN SAKS, by and through undersigned counsel, and file their Supplement to Notice of Appeal pursuant to TRAP Rule 25.1, and would show the Court as follows:

1    SANDRA SAKS, LEE NICK MCFADIN, III and MARGARET LANDEN SAKS filed their Notice of Appeal on October 20, 2014.

2    Appellants identified the Judgment dated October 20, 2014 as the Order appealed from.

1

3    Appellants desire to add the Order granting partial summary judgment, dated August 25, 2014, which was incorporated into the Judgment, as well as the Order, dated October 31, 2014, setting the amount of the supersedeas bond, to the Orders appealed from.

4    The dates of the Orders appealed from are August 25, 2014, October 20, 2014, and October 31, 2014.

3    SANDRA SAKS, LEE NICK MCFADIN, III and MARGARET LANDEN SAKS  desire to appeal.

4    SANDRA SAKS, LEE NICK MCFADIN, III and MARGARET LANDEN SAKS  desire to appeal to the Fourth Court of Appeals, San Antonio,   Texas.

5    SANDRA SAKS, LEE NICK MCFADIN, III and MARGARET LANDEN SAKS are the parties filing this appeal.

6    This Notice of Appeal is being served on all parties to the court's Orders.

WHEREFORE,  SANDRA  SAKS,  LEE  NICK  MCFADIN,  III  and MARGARET LANDEN SAKS hereby file this supplement to their notice of appeal.  They also claim such further relief to which they may be justly entitled.

Respectfully submitted,

Philip M. Ross, SBN 17304200
1006 Holbrook Road
San Antonio, Texas 78218
Phone: 210/326-2100
Email: ross_law@hotmail.com

By:  /s/ Philip M. Ross
     Philip M. Ross
     Attorney for SANDRA SAKS,
     LEE NICK MCFADIN, III and
     MARGARET LANDEN SAKS

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been e-filed and served on February 20, 2015 by email pursuant to agreement to Paul T. Curl and Royal B. Lea, III.

/s/ Philip M. Ross
Philip M. Ross

3

TAB 18



Copyright 2007 Gibbons Surveying & Mapping, Inc.

Gibbons
Surveying &
Mapping, Inc.

P.O. Box 700576,
San Antonio, Texas
78270-0576
(210) 366-4600
(FAX) 366-4673

JOB NO. ____07-3897____

## A Survey of:

Lots 4, Block 33, County Block 4024, Alamo Heights, in the City of Alamo Heights,
an addition in Bexar County, Texas, according to the plat as recorded in Volume 105,
Page 290-296, Deed and Plat Records of Bexar County, Texas.

Joliet Street
(50.0' Public Right-Of-Way)

(Volume 6644, Page 1281)
Concrete Sidewalk
North    73.33'
Concrete Curb

Found 1/2"
Iron Rod

Found 1/2"
Iron Rod

Concrete Curb
Concrete Sidewalk

Concrete
Drive

⑥

Lot 4
Block 33
CB 4024
(15,166 Square Feet)
(0.348 Acres)

Concrete

Bollards

Concrete Curb

West

Concrete Curb

Planter

⑤

②

Concrete
Sidewalk

N81°20'00"E    177.02'

Concrete Sidewalk

Electric
Meter

50.2'

Planter
Concrete Curb

PP↑

Covered
Concrete

Planter

13.3'

15.2'

20.2'

Gas
Meter

50.9'

⑤

NIX

175.00'

One Story Stucco &
Frame Commercial Building
#5321 Broadway

Existing Building

50.9'

Canopy

2.7'

27.3

STARBUCKS

44.6'

Ramp

Planter with
Brick

Planter with
Brick

18.0'

9.0'

Curb

Covered Brick

Brick

Canopy

Concrete Drive

②

②

Stucco
Canopy Support

②

Water
Meter

Concrete

Concrete

④

Found PK
Nail

South    100.00'

Found "X"
Scribed on
Concrete

Meter
PP↑ Pole ○

Water
Meter

Water
Valve

PRO

Fire Hydrant

Stop Sign

Concrete
Drive

Concrete

Broadway

(120.0' Public Right-Of-Way)

Survey field
THE   11th

I hereby co
on the gro
that this p
of survey p
Land Survey

Registered P
G

7H6
RE57
RRCC

BO

TAB 19

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 1. General Provisions (Refs & Annos)
      Chapter 11. Winding up and Termination of Domestic Entity
        Subchapter B. Winding up of Domestic Entity

V.T.C.A., Business Organizations Code § 11.057

§ 11.057. Supplemental Provisions for Domestic General Partnership

Effective: September 1, 2011
Currentness

(a) Unless otherwise provided by the partnership agreement, a voluntary decision to wind up a domestic general partnership, other than a partnership described by Subsection (b), requires the express will of a majority-in-interest of the partners who have not assigned their interests. A voluntary decision to wind up a partnership under this subsection may be revoked in accordance with Sections 11.151 and 152.709(e).

(b) Unless otherwise provided by the partnership agreement, a voluntary decision to wind up a domestic general partnership that has a period of duration or is for a particular undertaking, or in which the partnership agreement provides for the winding up of the partnership on occurrence of a specified event, requires the express will of all of the partners. A voluntary decision to wind up a partnership under this subsection may be revoked in accordance with Sections 11.151 and 152.709(d).

(c) An event requiring the winding up of a domestic general partnership under Section 11.051(4) includes the following:

(1) in a general partnership for a particular undertaking, the completion of the undertaking, unless otherwise provided by the partnership agreement;

(2) an event that makes it illegal for all or substantially all of the partnership business to be continued, but a cure of illegality before the 91st day after the date of notice to the general partnership of the event is effective retroactively to the date of the event for purposes of this subsection; and

(3) the sale of all or substantially all of the property of the general partnership outside the ordinary course of business, unless otherwise provided by the partnership agreement.

(d) In addition to the events specified by Subsection (c), unless otherwise provided by the partnership agreement, if a domestic general partnership does not have a period of duration, is not for a particular undertaking, and is not required under its partnership agreement to wind up the partnership on occurrence of a specified event, an event requiring winding up of the partnership under Section 11.051(4) occurs on the 60th day after the date on which the partnership receives notice of a request for winding up the partnership from a partner, other than a partner who has agreed not to withdraw, or a later date as specified by the request, unless a majority-in-interest of the partners deny the request for winding up or agree to continue the partnership. The continuation of the business by the other partners or by those who habitually acted in the business before the request, other than the partner making the request, without any settlement or liquidation of the partnership business, is prima facie evidence of an agreement to continue the partnership under this subsection.

(e) An event requiring winding up specified in Subsection (c)(1), (c)(3), or (d) may be canceled in accordance with Sections 11.152 and 152.709.

(f) "Majority-in-interest" means, with respect to all or a specified group of partners, partners who own more than 50 percent of the current percentage or other interest in the profits of the partnership that is owned by all of the partners or by the partners in the specified group, as appropriate.

**Credits**

Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006. Amended by Acts 2007, 80th Leg., ch. 688, § 63, eff. Sept. 1, 2007; Acts 2011, 82nd Leg., ch. 139 (S.B. 748), § 18, eff. Sept. 1, 2011.

V. T. C. A., Business Organizations Code § 11.057, TX BUS ORG § 11.057
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>   Business Organizations Code (Refs & Annos)
>     Title 1. General Provisions (Refs & Annos)
>       Chapter 11. Winding up and Termination of Domestic Entity
>         Subchapter G. Judicial Winding up and Termination

V.T.C.A., Business Organizations Code § 11.314

§ 11.314. Involuntary Winding Up and Termination of Partnership or Limited Liability Company

Effective: September 1, 2009
Currentness

A district court in the county in which the registered office or principal place of business in this state of a domestic partnership or limited liability company is located has jurisdiction to order the winding up and termination of the domestic partnership or limited liability company on application by:

(1) a partner in the partnership if the court determines that:

(A) the economic purpose of the partnership is likely to be unreasonably frustrated; or

(B) another partner has engaged in conduct relating to the partnership's business that makes it not reasonably practicable to carry on the business in partnership with that partner; or

(2) an owner of the partnership or limited liability company if the court determines that it is not reasonably practicable to carry on the entity's business in conformity with its governing documents.

**Credits**

Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006. Amended by Acts 2009, 81st Leg., ch. 84, § 25, eff. Sept. 1, 2009.

V. T. C. A., Business Organizations Code § 11.314, TX BUS ORG § 11.314
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.